Action No.: 0201 11097

## IN THE COURT OF QUEEN'S BENCH OF ALBERTA

## JUDICIAL DISTRICT OF CALGARY

BETWEEN:

**NOREX PETROLEUM LIMITED**
and
**ZAO YUGRANEFT CORPORATION**

Plaintiffs

- and -

**CHUBB INSURANCE COMPANY OF CANADA,
INGOSSTRAKH INSURANCE COMPANY LTD.,**
and
**GREAT NORTHERN INSURANCE COMPANY**

Defendants

## STATEMENT OF CLAIM

1. The Plaintiff Norex Petroleum Limited ("Norex") is a corporation organized under the laws of Cyprus and maintains a representative office and carries on business on its own behalf and through affiliates in the City of Calgary, in the Province of Alberta.

2. The Plaintiff ZAO Yugraneft Corporation ("Yugraneft") is a company organized under the laws of the Russian Federation.

3. The Defendant Chubb Insurance Company of Canada ("Chubb") is an insurer, licensed to carry on business in Canada and in the Province of Alberta and has offices in the City of Calgary, in the Province of Alberta.

*I hereby certify this to be a true copy of the original Statement of Claim Dated this 17 day of July, 2002*

*[signature] for Clerk of the Court*

2

4. The Defendant Ingosstrakh Insurance Company Ltd. ("Ingosstrakh"), so far as is known to the Plaintiffs, is an insurance company organized under the laws of the Russian Federation with offices in Moscow.

5. The Defendant, Great Northern Insurance Company ("Great Northern") is a corporation incorporated pursuant to the laws of the State of Minnesota, with offices in the City of Warren, New Jersey, and which carries on business throughout the United States. The Policy of Insurance issued by Ingosstrakh as hereinafter referred to states that "the present policy is the integral part of Great Northern Insurance Co. (Chubb Canada) Insurance Program". The Plaintiffs' claims herein against Great Northern are made pursuant to the Ingosstrakh Policy on the basis that the Ingosstrakh Policy was issued by Ingosstrakh as agent on behalf of Great Northern as principal or, alternatively, that Great Northern is a Co-Insurer with Ingosstrakh upon the Ingosstrakh Policy.

6. On June 29, 2001, and at all material times prior to June 29, 2001, Yugraneft was a partially owned subsidiary of Norex and Norex exercised effective control and management of Yugraneft. Immediately prior to June 29, 2001, Norex held 97.3% of the shares of Yugraneft.

7. Commencing from 1991, Yugraneft acquired and exploited substantial oil and gas properties in the Nizhnevartovsk region of Russia. Yugraneft maintained its corporate headquarters in Nizhnevartovsk and a representative office in Moscow. Prior to June 29, 2001, Norex appointed the managing director of Yugraneft to operate the oil production facilities in Nizhnevartovsk. Norex arranged for the acquisition by Yugraneft of specialized oilfield equipment (the "Oilfield Equipment") having a value of U.S.$11,764,900 which was used by Yugraneft to enhance production from its oil properties in Nizhnevartovsk.

8. On or about June 29, 2001, Norex was a victim of a fraudulent and illegal scheme of corruption and conspiracy designed to enable Tyumen Oil Company ("TNK") and its subsidiaries and affiliates to acquire control of Yugraneft and take over Yugraneft's property and assets including the Oilfield Equipment for the benefit of TNK and it's subsidiaries and affiliates.

3

TNK claimed to have acquired the minority shares of Yugraneft from Norex's partner, Chernogorneft, a company organized under the laws of the Russian Federation, which was stripped of its assets, including its shares of Yugraneft, as the result of a corrupt bankruptcy proceeding instigated by TNK. Norex had a right of first refusal upon the minority shares of Yugraneft held by Chernogorneft which TNK ignored. So far as is known to the Plaintiffs, Chernogorneft was the registered owner of the minority shares of Yugraneft up to June 29, 2001.

9.      TNK implemented the fraudulent and illegal scheme to acquire control of Yugraneft and to take over Yugraneft's property and assets on June 29, 2001, by claiming to have relied upon the legal authority of a purported shareholder's meeting of Yugraneft on June 28, 2001, at which Alexander Berman, an officer of a TNK affiliate, was allegedly elected as general director of Yugraneft. No such meeting took place. On June 29, 2001, Alexander Berman, accompanied by at least 16 thugs wearing military style fatigues and armed with machine guns, invaded Yugraneft's office in Nizhnevartovsk. On July 6, 2001, TNK security guards armed with hand guns and machine guns took over Yugraneft's oilfields and field offices and cut off Yugraneft's telephone and internet services.

10.     Commencing from June 29, 2001, TNK stripped Yugraneft of its assets, including Yugraneft's oil and gas properties, its inventories, its accounts receivable, its Oilfield Equipment, and its bank deposits including U.S.$24 million in dollar denominated accounts. Since June 29, 2001, Norex has been deprived of any access to the records or assets of Yugraneft. Norex has no effective access to the courts or government of the Nizhnevartovsk region as TNK and its principles, subsidiaries, and affiliates effectively control the courts and the government of the Nizhnevartovsk region by the exercise of corruption and bribery.

11.     Participants in the fraudulent and illegal scheme by TNK, which includes the bribery of Russian government officials and money laundering through banks such as Bankers Trust and ABN-Amro, include Access Industries, Inc. and its principal Leonard Blavatnik; Renova, Inc. and its principal, Victor Vekselberg; TNK and its officers and directors, including Simon Kukes and Joseph Bakeleynik; the "Crown Group" and its officers and directors, including Elliot Spitz;

4

the "Alfa Group"; and various shell companies, such as LT Enterprise Limited, Eastmount Properties Limited, and Sandwell Enterprises Limited, located in offshore jurisdictions.

12. Chubb issued a Policy of Insurance dated January 23, 2001, described as International Commercial Insurance Coverage for the period from November 14, 2000 to November 01, 2001, Policy Number 3710 9631 ("the Chubb Policy"). The Chubb Policy named Yugraneft Corporation as first named insured. On November 15, 2000, the Chubb Policy was amended as follows:

> It is hereby understood and agreed that the Named Insured is to read as follows:
>
> Yugraneft Corporation; and/or
> Rexx Management Corporation; and/or
> Logan Personnel Management Inc.; and/or
> Norex Petroleum Limited (Cyprus); and/or
> Noralco International Inc.; and/or
> Pan Stafford (Cyprus) and/or
> all Subsidiary, Associated, and or Affiliated or Controlled companies as now exist or may be hereafter constituted for which the Named Insured has the responsibility of placing insurance and others as their respective rights and interests may appear.

All of the Named Insureds were affiliates of Norex. Norex arranged for the placement of the Chubb Policy through its offices in Calgary. The Chubb Policy was placed through the offices of Marsh Canada Limited in Calgary as insurance brokers.

13. The Chubb Policy provided for coverage to the Named Insureds for "direct physical loss of, or damage to, each Subject of Insurance when a Limit of Insurance is stated in the Declarations, except as stated in limitations or exclusions". None of the limitations or exclusions of the Chubb Policy are relevant to the matters at issue in these proceedings. In accordance with the declarations incorporated as a part of the Chubb Policy, the Subject of Insurance for which insurance was provided was described as "personal property having a limit of insurance of U.S.$11,764,900". The Personal Property was identified by a statement of

values as provided by the Insured comprising the Oilfield Equipment including camp and workshops, office contents, warehouse, laboratory, production equipment, and field units, all of which were specifically identified to an aggregate value of U.S.$11,764,900.

14. At all material times, each of Norex and Yugraneft had an insurable interest in the Oilfield Equipment.

15. By reason of the illegal take over of Yugraneft's assets by TNK as referred to in paragraphs 8-10 hereof, Norex has suffered direct physical loss of or damage to the Personal Property which was the subject of the Chubb insurance in an aggregate amount of $11,764,900 which Norex claims under the terms of the Chubb Policy.

16. In the alternative, by reason of the illegal take over of Yugraneft's assets by TNK as referred to in paragraphs 8-10 hereof, Yugraneft has suffered direct physical loss of or damage to the Personal Property which was the subject of the Chubb insurance in an aggregate amount of $11,764,900 which Yugraneft claims under the terms of the Chubb Policy.

17. Norex provided prompt notice in writing to Chubb of the events referred to in paragraphs 8-10 hereof and of its claim under the Chubb Policy by reason of such events. On July 13, 2001, Chubb notified Yugraneft that the Chubb Policy was cancelled, effective in 90 days. Norex has continued to provide information respecting its loss and the events referred to in paragraphs 8-10 hereof as requested by Chubb.

18. Norex and Yugraneft provided a sworn proof of loss to Chubb as required by the Chubb Policy on or about March 11, 2002 and a revised sworn proof of loss on or about June 25, 2002 in respect of the direct physical loss of, or damages to the Oilfield Equipment as claimed herein.

19. Save for requests for further information, Chubb has not responded to the claims made under the Chubb Policy. So far as is known to the Plaintiffs, Chubb has not investigated the claims nor has Chubb acknowledged or denied coverage under the Chubb Policy.

20. Chubb's conduct in having failed to respond in good faith to the Plaintiffs' claims and in failing to have investigated and to have paid the Plaintiffs' claims in accordance with the Chubb Policy is worthy of the sanction of the Court by an award of punitive damages.

21. The Chubb Policy with respect to Property Insurance was stated to be limited to Differences in Conditions and Differences in Limits coverage. Difference in Conditions is defined by the Chubb Policy as being difference in coverage or limits under the Chubb Policy for loss or damage that is not covered by any CONTROLLED ADMITTED insurance. Differences in Limits is defined by the Chubb Policy as being the difference in limits under the Chubb Policy for loss or damage that is covered under any CONTROLLED ADMITTED insurance to the extent that the limits of any such insurance are insufficient to pay in full such loss or damage. As part of the Differences in Limits coverage, Chubb also agreed to pay for loss or damage under the Chubb Policy if any CONTROLLED ADMITTED insurance the Insured agreed to place in force has not been placed in force.

22. CONTROLLED ADMITTED insurance is defined to include insurance which Chubb or another member company of the Chubb Group of Insurance Companies issues to the insured or any insurance which any AUTHORIZED CORRESPONDENT issues to the insured. An AUTHORIZED CORRESPONDENT is defined to be any privately controlled insurer, other than a member company of the Chubb Group of Insurance Companies, indicated to be Chubb's correspondent but only for each specific insurance transaction as may be authorized by Chubb.

23. The Plaintiffs have no knowledge of whether Ingosstrakh is a member company of the Chubb Group of Insurance Companies or whether Ingosstrakh is an AUTHORIZED CORRESPONDENT of Chubb within the meaning of the Policy. Chubb represented to the Plaintiffs at the time the Chubb Policy was placed that Chubb required that the Named Insured place a first loss policy with Ingosstrakh and that the Chubb Policy would provide excess insurance on the Oilfield Equipment if coverage was not available or not paid on the Ingosstrakh Policy (as that term is defined in paragraph 27 herein). Chubb negotiated with Ingosstrakh the

terms of the Ingosstrakh Binder (as that term is defined in paragraph 24 herein) and the Ingosstrakh Policy and facilitated placement of same.

24. Ingosstrakh agreed to be bound by and provide insurance coverage according to the terms of a binder of insurance identified as Binder No. 2000202688-0 "the Ingosstrakh Binder") to provide coverage from November 15, 2000 to November 1, 2001. The Named Insureds under the Ingosstrakh Binder were defined as follows:

> Yugraneft Corporation and/or Rexx Management Corporation and/or Logan Personnel management Inc. and/or Norex Petroleum Limited (Cyprus) and/or Noralco International Inc. and/or Pan Stafford (Cyprus) and/or all Subsidiary, Associated, and/or Affiliated or Controlled companies as now exist or may be hereafter constituted fro which the Named Insured has the responsibility of placing insurance and others as their respective rights and interests may appear.

All of the Named Insureds were affiliates of Norex. The Ingosstrakh Binder was placed through the offices of Marsh Canada Limited in Calgary as insurance brokers.

25. The Ingosstrakh Binder provided property coverage described as primary coverage. The Property Insured was described as:

> The Insured can either be the Russian or Foreign Juridical and Physical Person that has Legal Interest towards the Property Insured unless specifically described in the insurance policy or by endorsement, Insured Property is that which is fully owned by the Insured. Also, Insured is that Property which purchased by the Insured on Credit and which serves as Collateral to that Credit.

26. The Ingosstrakh Binder provided limits of liability of U.S.$11,764,900 for any one accident or occurrence, U.S.$5 million sub-limit for any one accident or occurrence (contractor's equipment) and U.S.$250,000 per occurrence for expediting and extra expense. The Ingosstrakh Binder insured against "Damages to or Loss of Insured Property caused as a result of a Sudden and Unexpected Event".

8

27.    The Plaintiffs have never received a formal executed Policy of Insurance in substantially in the same terms as the Ingosstrakh Binder. Norex has received an unexecuted reference copy of an Ingosstrakh Policy for property damage insurance, Policy No. 41-000903/01 incorporating Ingosstrakh's General Conditions for Insuring Industrial and Commercial Enterprises (All Risks) (the "Ingosstrakh Policy") through the offices of Marsh Canada Limited in Calgary, who in turn received a copy of the Ingosstrakh Policy from Chubb.

28.    The Plaintiffs have no knowledge as to whether the unexecuted reference copy of the Ingosstrakh Policy was ever issued by Ingosstrakh. The coverage provided in the Ingosstrakh Policy was similar in many respects to the Ingosstrakh Binder, save and except for certain material differences including:

    a. The period of coverage in the Ingosstrakh Policy is from October 1, 2000 to November 1, 2001, whereas the period of coverage in the Ingosstrakh Binder is from November 14, 2000 to November 1, 2001;

    b. The named insured in the Ingosstrakh Policy is Yugraneft Corporation only and does not name Norex or its other affiliates and subsidiaries named in the Ingosstrakh Binder;

    c. The property insured is described as:

> The insured can either be the Russian or foreign juridical and physical person that has legal interest towards the property insured. The present General Conditions are integral part of the insurance policy, but can be amended or changed in certain points while signing the policy as well as during the period of insurance.

    d. The limits of liability in the Ingosstrakh Policy are the same as the limits of liability in the Ingosstrakh Binder, subject to certain exclusions which are not relevant in the circumstances. The Ingosstrakh Policy also provides coverage for reasonable and

purposeful expenses incurred by the insured for the sake of prevention of decrease of losses as well as resulting from attempts to save the insured property;

e. The Sums Insured under Objects of Insurance in the Ingosstrakh Policy refers to "property owned by the insured, property rented or leased by the insured for the total amount USD $11,764,900. (in accordance with Endorsement No. 1)." The Plaintiffs have made attempts to obtain a copy of Endorsement No. 1 referred to in the Ingosstrakh Policy from Ingosstrakh and from Marsh Canada Limited, but have been unable to obtain a copy of such endorsement.

29.  The Plaintiffs state that the Ingosstrakh Binder governs the terms and conditions of coverage with respect to the Oilfield Equipment, or alternatively, the Ingosstrakh Policy governs the terms and conditions with respect to coverage of the Oilfield Equipment to the extent that such terms and conditions do not conflict with the Ingosstrakh Binder.

30.  At all material times, each of Norex and Yugraneft had an insurable interest in property insured by the Ingosstrakh Binder, or alternatively the Ingosstrakh Policy, comprising the Oilfield Equipment having a limit of insurance of U.S.$11,764,900.

31.  By reason of the illegal takeover of Yugraneft's assets by TNK as referred to in paragraphs 8-10 hereof, Norex has suffered Damages to or Loss of Insured Property caused as a result of a Sudden and Unexpected Event in an aggregate amount of U.S.$11,764,900 which Norex claims under the terms of the Ingosstrakh Binder, or alternatively the Ingosstrakh Policy. Norex has also incurred reasonable and purposeful expenses for legal and other fees for the sake of prevention of and/or decrease of losses, as well as resulting from attempts to save the Insured Property, on account of legal fees, travelling and other expenses in the amount of U.S.$2,634,000, or such other amount as may be proven at the trial of this action, for which Norex makes claim under the Ingosstrakh Policy.

32. In the alternative, by reason of the illegal takeover of Yugraneft's assets by TNK as referred to in paragraphs 8-10 hereof, Yugraneft has suffered Damages to or Loss of Insured Property caused as a result of a Sudden and Unexpected Event in an aggregate amount of U.S.$11,764,900 which Yugraneft claims under the terms of the Ingosstrakh Binder, or alternatively the Ingosstrakh Policy.

33. Norex provided prompt notice in writing to Ingosstrakh of the events referred to in paragraphs 8-10 hereof and of its claim under the Ingosstrakh Binder, or alternatively the Ingosstrakh Policy by reason of such events. Ingosstrakh denied coverage and has refused to communicate further with Norex in that connection.

34. Norex and Yugraneft provided a sworn proof of loss to Ingosstrakh on or about June 25, 2002 in respect of the damages to and loss of Insured Property as claimed herein but no response has been received from Ingosstrakh.

35. Ingosstrakh's conduct in having failed to respond in good faith to the Plaintiffs' claims and in failing to have investigated and to have paid the Plaintiffs' claims in accordance with the Ingosstrakh's Policy is worthy of the sanction of the Court by an award of punitive damages.

36. The Plaintiffs propose the trial of this action be held at the Court House, in the City of Calgary, in the Province of Alberta. In the opinion of counsel, this matter is not likely to exceed 25 days to try.

### Prayer for Relief

WHEREFORE THE PLAINTIFFS CLAIM THE FOLLOWING RELIEF:

I. Norex claims against Chubb:

    a. Damages of U.S.$11,764,900, or the Canadian dollar equivalent thereof, for direct physical loss of or damage to declared Personal Property;

11

    b. Punitive damages of $1,000,000;

    c. Interest on the amounts awarded herein at a commercial rate or alternatively pursuant to the *Judgment Interest Act*, S.A. 1984, c. J-0.5;

    d. Costs on a solicitor and his own client basis or such other basis as this Honourable Court may direct;

    e. Such further and other relief as this Honourable Court may deem fit.

II.    In the alternative, Yugraneft claims against Chubb:

    a. Damages of U.S.$11,764,900, or the Canadian dollar equivalent thereof, for direct physical loss of or damage to declared Personal Property;

    b. Punitive damages of $1,000,000;

    c. Interest on the amounts awarded herein at a commercial rate or alternatively pursuant to the *Judgment Interest Act*, S.A. 1984, c. J-0.5;

    d. Costs on a solicitor and his own client basis or such other basis as this Honourable Court may direct;

    e. Such further and other relief as this Honourable Court may deem fit.

III.    Further, Norex claims against Ingosstrakh and Great Northern Insurance Co.:

    a. Damages of U.S.$11,764,900, or the Canadian dollar equivalent thereof, for direct physical loss of or damage to declared Personal Property;

    b. Costs of U.S.$2,634,000, or the Canadian dollar equivalent thereof, or such other amount as may be proven at the trial of this action, reasonably incurred resulting from attempts to save the insured property;

    c. Punitive damages of $1,000,000;

    d. Interest on the amounts awarded herein at a commercial rate or alternatively pursuant to the *Judgment Interest Act*, S.A. 1984, c. J-0.5;

    e. Costs on a solicitor and his own client basis or such other basis as this Honourable Court may direct;

12

f. Such further and other relief as this Honourable Court may deem fit.

IV. In the alternative, Yugraneft claims against Ingosstrakh and Great Northern Insurance Co.:

a. Damages of U.S.$11,764,900, or the Canadian dollar equivalent thereof, for direct physical loss of or damage to declared Personal Property;

b. Costs of U.S.$2,634,000, or the Canadian dollar equivalent thereof, or such other amount as may be proven at the trial of this action, reasonably incurred resulting from attempts to save the insured property;

c. Punitive damages of $1,000,000;

d. Interest on the amounts awarded herein at a commercial rate or alternatively pursuant to the *Judgment Interest Act*, S.A. 1984, c. J-0.5;

e. Costs on a solicitor and his own client basis or such other basis as this Honourable Court may direct;

f. Such further and other relief as this Honourable Court may deem fit.

DATED at the City of Calgary, Province of Alberta, this 28th day of June, 2002, AND DELIVERED by DUNCAN McCACHEN, Barristers and Solicitors, Suite 1600, 520 - Fifth Avenue S.W., Calgary, Alberta, T2P 3R7, Attention: Leslie R. Duncan, Q.C., 294-6702, Solicitors for the Plaintiff, whose address for service is in care of the said Solicitors.

ISSUED out of the Office of the Clerk of the Court of Queen's Bench of Alberta, Judicial District of Calgary, this 28th day of June, 2002.

JIM McLAUGHLIN (COURT SEAL)

## NOTICE

**To the Defendants:**

Chubb Insurance Company of Canada, Ingosstrakh Insurance Company Ltd., and Great Northern Insurance Company

You have been sued. You are the Defendant(s). You have only 15 days to file and serve a Statement of Defence or Demand of Notice. You or your lawyer must file your Statement of Defence or Demand of Notice in the office of the Clerk of the Court of Queen's Bench in Calgary, Alberta. You or your lawyer must also leave a copy of your Statement of Defence or Demand of Notice at the address for service of the Plaintiff named in this Statement of Claim.

**WARNING:** If you do not do both things within 15 days, you may automatically lose the law suit. The Plaintiff may get a Court judgment against you if you do not file, or do not give a copy to the Plaintiff, or do either thing late.

This Statement of Claim is issued by:

DUNCAN McCACHEN
1600, 520 - 5th Avenue S.W.
Calgary, Alberta T2P 3R7
Leslie R. Duncan, Q.C.
294-6700/294-6702

Solicitor for the Plaintiffs whose address for service is in care of the said Solicitors.

The Plaintiffs reside or carry on business in or near Calgary, Alberta, Cyprus and the Russian Federation.

The Defendant, Chubb Insurance Company of Canada, (so far as is known to the Plaintiffs) carries on business and has offices in Calgary, Alberta.
The Defendant, Ingosstrakh Insurance Company Ltd., (so far as is know to the Plaintiffs) carries on business and has offices in or near Moscow in the Russian Federation.
The Defendant, Great Northern Insurance Co., (so far as is known to the Plaintiffs) carries on business and has offices in Warren New Jersey, United States of America.

Action No.: 0201 11097

IN THE COURT OF QUEEN'S BENCH
OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

BETWEEN:

NOREX PETROLEUM LIMITED
and
ZAO YUGRANEFT CORPORATION

Plaintiffs

- and -

CHUBB INSURANCE COMPANY OF CANADA,
INGOSSTRAKH INSURANCE COMPANY LTD.,
and
GREAT NORTHERN INSURANCE COMPANY

Defendants

## STATEMENT OF CLAIM

DUNCAN McCACHEN
Barristers and Solicitors
Suite 1600, 520 - 5th Avenue SW
Calgary, Alberta T2P 3R7

Solicitor: Leslie R. Duncan, Q.C.
Phone: (403) 294-6700/(403) 294-6702
Facsimile: (403) 294-6701
File No.: 1518/001

CLERK OF THE COURT

JUN 2 8 2002

CALGARY, ALBERTA