UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

NOREX PETROLEUM LIMITED,                :

            Plaintiff,                    :          ORDER

      -against-                            :          02 Civ. 1499 (LTS)(KNF)

ACCESS INDUSTRIES, INC., ET AL.,        :

           Defendants.               :
----------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

      In accordance with the order of the Court dated March 14, 2003, plaintiff has provided the Court, in draft form, a subpoena that it wishes to serve upon BP-Amoco ("BP"), an entity that is not a party to the instant litigation, to ensure that BP will preserve certain documents it possesses. The Court has reviewed the proposed subpoena and grants plaintiff's request to serve the subpoena upon BP for the sole purpose of ensuring that the items noted in the subpoena will be preserved for use in the instant litigation should that become necessary and appropriate.

Dated:  New York, New York          SO ORDERED
       March 27, 2003

                                                                  /s/ Kevin Nathaniel Fox
                                                                  KEVIN NATHANIEL FOX
                                                                  UNITED STATES MAGISTRATE JUDGE

**MEMO ENDORSED**

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-293-6330
WWW.SULLCROM.COM

*1701 Pennsylvania Avenue, N.W.*
*Washington, D.C. 20006-5805*

NEW YORK • LOS ANGELES • PALO ALTO
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY


RECEIVED
MAY 21 2003
KEVIN NATHANIEL FOX
U.S. MAGISTRATE JUDGE

May 20, 2003

Honorable Kevin Nathaniel Fox,
   United States Magistrate Judge,
      United States District Court for the Southern District of New York,
         40 Centre Street, Room 540,
            New York, New York 10007.

     Re:   *Norex Petroleum Ltd. v. Access Industries, Inc. et al.,*
            No. 02-CV-1499 (LTS) (KNF)

Dear Judge Fox:

       We regret that we are forced to burden the Court with further correspondence on the scope of plaintiff's document preservation subpoena (the "Subpoena"), but several of the assertions in plaintiff's counsel's May 16 letter need to be addressed briefly.

       First, plaintiff's counsel's suggestion that BP's request to narrow the Subpoena "is not a 'timely motion' per Rule 45(c)3(A)" is disingenuous and dilatory. It is BP's understanding that discovery disputes in this case have routinely been handled by correspondence to the Court; indeed, plaintiff's request to the Court for permission to serve a subpoena on non-party BP and the defendants' oppositions thereto were all accomplished by letter. Moreover, the Court's April 15 Order suggested to BP that the Court was prepared to entertain BP's request to modify the Subpoena and there would appear little to be gained by taxing the Court's resources with further briefing.

       Second, as the Court will recall, BP has already agreed – and taken appropriate steps – to preserve "documents within its possession, custody or control regarding BP's historical transactions with Sidanco and its subsidiaries, including Chernogorneft, that were the subject of an earlier dispute between BP and TNK." (*See, e.g.*, letters dated February 28, March 7, and March 28, 2003). Thus, BP has already ensured preservation of documents fully responsive both to plaintiff's original February 18 request and the Court's March 14 Order ("documents [BP] possesses concerning BP's transactions with Sidanco and its subsidiaries, including Chernogorneft"). It was only

Honorable Kevin Nathaniel Fox                                                                                             -2-

after plaintiffs, without notice to BP, submitted a subpoena that was far broader than the request described to the Court in prior correspondence, that BP immediately objected and asked the Court to limit the Subpoena. (*See* BP's letter to the Court, dated April 8, 2003).

Finally, contrary to plaintiff's self-serving and unsupported suggestion that BP's legitimate concerns raise a "red flag," BP has clearly articulated well-founded reasons why the new requests in the Subpoena – at best barely tangential to plaintiff's claims in this case – are burdensome and potentially injurious to BP's commercial interests. The contours of the proposed strategic partnership between BP and the Alfa Group is currently being negotiated and involves literally hundreds of BP personnel in numerous places around the world. A requirement that BP, a non-party, must preserve all or even most of the documents related to this proposed venture would be extremely burdensome and would handicap BP in those negotiations.

For these reasons, BP respectfully asks the Court to resolve this matter by granting BP's April 8 request to strike Paragraphs 11, 22 and 24 of the Subpoena.

Respectfully submitted,

*Daryl A. Libow* /rcp, II

Daryl A. Libow

cc:   All counsel of record

5/30/03

The Court has considered the arguments made by the parties via correspondence concerning the above-referenced subpoena. The Court finds that paragraphs 11, 22 and 24 of the subpoena require non-party BP to preserve documents that were not addressed in plaintiff's initial request to the Court that it be permitted to serve the subpoena. Furthermore, the relevance to the subject matter of this action of the documents identified at paragraphs 11, 22 and 24 of the subpoena is suspect. Moreover, the Court is persuaded that an unnecessary burden would be visited upon non-party BP if it were required to preserve the material referenced in paragraphs 11, 22 and 24 of the subpoena. Therefore, the subpoena is hereby modified by the deletion of paragraphs 11, 22 and 24. BP is not required to preserve the documents identified in those paragraphs of the subpoena.

SO ORDERED:

/Kevin Nathaniel Fox/
KEVIN NATHANIEL FOX, U.S.M.J.

TOTAL P.03



AO 88 (11/91) Subpoena in Civil Case

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| NOREX PETROLEUM, LIMITED | SUBPOENA IN A CIVIL CASE |
|---|---|
| v. | CASE NUMBER: 02-CV-1499 (LTS) (KNF) |
| ACCESS INDUSTRIS INC., et al. | |

TO: Custodian of Records
BP-Amoco
535 Madison Avenue
NEW YORK, NY 10019

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to preserve the following documents or objects specified below (list documents or objects):

See attached Rider

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (Indicate if attorney for plaintiff or defendant) | DATE April 3, 2003 |
|---|---|
| Harris N. Cogan, Attorney for Plaintiff | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174 (212) 885-5000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse) AO 88 (11/91) Subpoena in Civil Case

115859.00601/6264995v1

**RIDER**

PLEASE TAKE NOTICE that pursuant to the attached Subpoena and Fed. R. Civ. P. 45, BP-Amoco is required to preserve the materials enumerated or described below and which may be required to be produced pursuant to Court order.

### I.   INSTRUCTIONS

A.   The attached Subpoena is continuing in nature and any additional documents subject to the Subpoena should be preserved as instructed hereby. The attached Subpoena shall apply to any documents under the control of BP-Amoco wherever they may be located.

B.   Words used in the singular number shall include the plural number and vice versa. Gender is to be wholly disregarded, the neuter referring as well to the male as the female and the male referring to the female and the neuter.

C.   For any requested document which is being withheld on the basis of a claim of privilege, identify the document, and for each such document state:

    1.   Author (s)

    2.   Designated and Intended Recipient (s)

    3.   Person (s) to whom it was circulated

    4.   Date

    5.   Subject Matter

    6.   Privilege Asserted

D.   The attached Subpoena shall apply to all documents in the possession of BP-Amoco or any and all of its present and former agents, attorneys, assigns, consultants, employees, or successors.

E.   If any document requested by the attached Subpoena is no longer in the possession of or subject to the control of the party upon whom this demand is made, said party shall provide a listing which identifies the present custodian of the document, including in such identification the full name, residence and business address, business affiliation and job title, and states further what and when disposition was made of said document. If all copies of the document have been destroyed, please "identify" the person or persons authorizing the destruction of the document and specify the date of the destruction of the document.

II.   **DEFINITIONS**

1.   "Document" or "documents" mean any and all handwritten, typewritten, printed or otherwise recorded matter of whatever character, or graphic material (however produced or reproduced), tapes or other voice recordings, and all other tangible objects including but not limited to booklets, procedures, pamphlets, circulars, notices, periodicals, papers, contracts, agreements, checks, bills, photographs, agendas, receipts, minutes, memoranda, written instructions, letters, expense accounts, messages, appraisals, analyses, reports, plans, evaluations, financial calculations and representations, diary entries, time sheets, calendars, telephone logs, visitor logs, telephone messages slips, correspondence, e-mails, telegrams, press releases, advertisements, notes, handwritten notes, transcripts, surveys, tabulations, working papers, drawings, schedules, tabulations and projections, surveys, studies, graphs, charts, films, videotapes, microfiche, printouts, all other data whether recorded by electronic or any other means, and including drafts of any of the foregoing and any other data or information in your possession, custody or control and including all items that are in storage anywhere, of any source of authorship. The definition of "document" also includes information and data stored in or retrievable from any equipment or media that includes desktop PCs or workstations, PCs,

workstations, minicomputers, or mainframes used as file servers, application servers, or electronic mail servers, other minicomputers and mainframes, laptop, notebook and other portable computers, whether assigned to individuals or in pools available for shared use, home computers used for work-related purposes, backup disks and tapes, archival disks and tapes, and other forms of off- line storage, whether stored on-site with the computers used to generate them or off-site in another computer facility or by a third party, electronic mail messages, even if available only on backup or archive disks or tapes.  If a document was prepared in several copies or if additional copies where thereafter made, and if any such copies were not identical or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including, without limitation, notations on the front or back of any of the pages thereof, then each such non-identical copy is a separate document and must be produced.

    2.       The words "person" or "persons" or "party" or "parties" mean all individuals and entities including, but not limited to, natural persons, trusts and estates, legal or investment advisors, auditors, directors, employees, trustees, fiduciaries, representatives, delegates, consultants, attorneys, agents, functionaries, or otherwise affiliated individuals, whether serving full-time or part-time, whether paid or unpaid, whether regular or alternate, including any individual having possession, custody or control of documents or information relating to the present law suit.

    3.       The terms "You," "Your," and "BP-Amoco"  include BP-Amoco, BP and any and all of their present and former affiliated companies, agents, attorneys, assigns, consultants, contractors, divisions, employees, parents, predecessors, representatives, subsidiaries or successors.

4. The term "Defendants" includes each of the following persons, alone or in any combination: TYUMEN OIL COMPANY, ACCESS INDUSTRIES, INC., RENOVA, INC., LEONARD BLAVATNIK, VICTOR VEKSELBERG, ALFA GROUP CONSORTIUM, CROWN FINANCE FOUNDATION, CTF HOLDINGS LTD, ALFA FINANCE HOLDINGS, SA, CROWN LUXEMBOURG HOLDINGS SA, ELLIOT SPITZ, SIMON KUKES, JOSEPH BAKALEYNIK, LT ENTERPRISES LIMITED, SANDWELL ENTERPRISES LIMITED, EASTMOUNT PROPERTIES LIMITED, ASTON TRUSTEES LIMITED, as well as any and all of their present and former affiliated companies, agents, attorneys, assigns, consultants, contractors, divisions, employees, parents, predecessors, representatives, subsidiaries or successors.

5. The term "includes" and its other forms means "includes without limitation."

6. The term "referring" or "concerning" or "regarding" or "relating to" means in any way showing, disclosing, advertising, evidencing, constituting, concerning, discussing, evaluating, analyzing, comprising, consisting of, mentioning or revealing either in whole or in part, directly or indirectly.

7. The term "entity" means any existing or predecessor entity, organization, body, group, agency, institution, authority, sole proprietorship, firm, association, company, partnership, joint venture, corporation, whether or not the same are separate legal entities.

III. **DOCUMENTS TO BE PRESERVED**

**Documents Related To The Sources of Proof
Related to the Investigation
of the Bankruptcies of Subsidiaries of Sidanco**

1. All documents identifying all persons involved on behalf of BP-Amoco in the below investigations, including, but not limited to, BP-Amoco personnel and private investigators.

2. All documents identifying all persons interviewed, contacted, or attempted to be contacted during the below investigations.

3. All documents identifying all persons with knowledge of the corruption of or any improprieties related to the bankruptcies of subsidiaries of Sidanco, including, but not limited to, Chernogorneft and Kondpetroleum.

4. All documents identifying all persons with knowledge of the diversion of funds from subsidiaries of Sidanco, including, but not limited to Chernogorneft and Kondpetroleum.

5. All documents identifying the location of documents related to the below investigations, including, but not limited to, documents evidencing the corruption or any improprieties of bankruptcy proceedings of subsidiaries of Sidanco, including, but not limited to, Chernogorneft and Kondpetroleum, and the diversion of funds from subsidiaries of Sidanco, including, but not limited to, Chernogorneft and Kondpetroleum.

**Documents Related to the Sources of Proof
Related to Attempts To Repay
the Debts of Subsidiaries of Sidanco**

5

6. All documents identifying all persons involved on behalf of BP-Amoco in the attempt to repay the debts of subsidiaries of Sidanco, including Chernogorneft and Kondpetroleum, during bankruptcy proceedings.

### Documents Related to the Source of Proof
### Related to Communications Regarding
### the Bankruptcies of Subsidiaries of Sidanco

7. All documents identifying all persons involved on behalf of BP-Amoco in the below communications to the governments of the United States, United Kingdom, or Russia.

8. All documents identifying all persons involved in the communications between or among BP-Amoco and Defendants related to the bankruptcies of subsidiaries of Sidanco, including, but not limited to, Chernogorneft and Kondpetroleum.

### Documents Related to the Sources of Proof
### Related to Communications
### Related to the TPT v. Blavatnik Lawsuit

9. All documents identifying all persons involved in the communications between or among BP-Amoco and other persons related to the TPT Ltd. et al. v. Blavatnik et al. action.

### Documents Related to the Sources of Proof
### Related to the Settlement of the Dispute Regarding
### Bankruptcies of Subsidiaries of Sidanco

10. All documents identifying all persons involved on behalf of BP-Amoco and Defendants in negotiating and concluding the below October 9, 2001 Agreement.

6

### Documents Related to the Sources of Proof
### Related to the "Strategic Partnership"

11. All documents identifying all persons involved on behalf of BP-Amoco or Defendants in negotiating and concluding the below "strategic partnership."

### Documents Related to the Sources of Proof
### Related to Yugraneft

12. All documents identifying all persons with knowledge of the takeover of Yugraneft by Defendants.

13. All documents identifying all persons with knowledge of the proposed or actual transfer of assets of Yugraneft to entities in which BP and/or Defendants maintained an interest.

### Documents Related Related to the Investigation
### of The Bankruptcies of Subsidiaries of Sidanco

14. All documents related to any investigation conducted by BP-Amoco into the bankruptcies of subsidiaries of Sidanco, including, but not limited to, Chernogorneft and Kondpetroleum, including, but not limited, to documents detailing the results of the investigation and all evidence collected

15. All documents related to the any investigation conducted by BP-Amoco of or evidencing the diversion of funds, such as by selling oil at below market prices, from any subsidiaries of Sidanco, including, but not limited to Chernogorneft and Kondpetroleum, during bankruptcy or at any other time.

16. All documents related to an investigation conducted by BP-Amoco of or evidencing the corruption of legal proceedings related to the bankruptcies of subsidiaries of Sidanco, including, but not limited to, Kondpetroleum and

Chernogorneft, including corruption through bribery, extortion, or any other illegal means of court officers including, but limited to, judges and external bankruptcy managers, in the bankruptcies.

### Documents Related to Attempts
### To Repay the Debts of Subsidiaries of Sidanco

17. All documents related to BP-Amoco's attempt to repay the debts of subsidiaries of Sidanco, including Chernogorneft and Kondpetroleum, during bankruptcy proceedings.

### Documents Related to Communications
### Regarding the Bankruptcies of Subsidiaries of Sidanco

18. All documents evidencing communications between BP-Amoco and governments of the United States, United Kingdom, or Russia (including law enforcement agencies and offices of prosecutors, procurators, solicitors general and/or attorneys general) in relation to the bankruptcies of any subsidiaries of Sidanco, including, but not limited to, Chernogorneft and Kondpetroleum.

19. All documents evidencing communications between or among BP-Amoco and Defendants related to the bankruptcies of subsidiaries of Sidanco, including, but not limited to, Chernogorneft and Kondpetroleum.

### Documents Related to the Communications
### Related to the TPT v. Blavatnik Lawsuit

20. All documents evidencing any communications between BP-Amoco and any other person related to the TPT Ltd., et al. v. Blavatnik, et al., action filed by the Latham & Watkins firm in the Supreme Court of New York regarding the

8

bankruptcies of subsidiaries of Sidanco, including, but not limited to, Chernogorneft and Kondpetroleum.

### Documents Related to the Settlement of the Dispute Regarding Bankruptcies of Subsidiaries of Sidanco

21. All documents relating to the October 9, 2001 agreement between BP-Amoco and Defendants by which, *inter alia,* the dispute concerning the bankruptcies of subsidiaries of Sidanco, including Chernogorneft and Kondpetroleum, was resolved.

### Documents Related to the "Strategic Partnership"

22. All documents, including any due diligence or any other investigation conducted by BP-Amoco, related to the "strategic partnership" with "Alfa Group and Access-Renova (AAR)" identified in the BP-Amoco press release annexed hereto as Exhibit 1.

### Documents Related to Yugraneft

23. All documents regarding the takeover of Yugraneft by Defendants as described in the Complaint filed in this matter.

24. All documents regarding the proposed or actual transfer of assets of Yugraneft to entities in which BP and/or Defendants maintained an interest, including any proposed or actual transfer of assets as part of the "strategic partnership" described above.

------------------