Action No.: 0201 11097
Deponent: Igor Leonidovich
Petrukhin
Date Sworn: June 25, 2004

IN THE COURT OF QUEEN'S BENCH OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

BETWEEN:

**NOREX PETROLEUM LIMITED and ZAO YUGRANEFT CORPORATION**

Plaintiffs

- and –

**CHUBB INSURANCE COMPANY OF CANADA, INGOSSTRAKH INSURANCE
COMPANY LTD. and GREAT NORTHERN INSURANCE COMPANY**

Defendants

## AFFIDAVIT

I, Professor Igor Leonidovich Petrukhin, of the City of Moscow, in the
Russian Federation, MAKE OATH AND SAY THAT:

1.  I am the Head of the Judicial System Department of the Institute of State
    and Law of the Russian Academy of Sciences. I am also a Professor of the
    Academic Law School in Moscow and a member of the Moscow City Bar. I

am a citizen of the Russian Federation and a permanent resident of Russia and, as such, I have personal knowledge of the matters hereinafter deposed to except where otherwise stated to be based upon information and belief.

2.    I am informed by counsel for the Defendant, Ingosstrakh Insurance Company Ltd. (hereinafter referred to as "Ingosstrakh"), and do verily believe, that the Plaintiffs have commenced an action, Action No. 0201 11097, in the Court of Queen's Bench, in the Judicial District of Calgary (hereinafter referred to as this "Action") against Ingosstrakh claiming indemnification under an insurance policy issued by Ingosstrakh for damages and losses to property located in the Nizhnevartovsk region of Tyumen oblast of Russia and in Moscow. I have reviewed the Plaintiffs' Statement of Claim in this Action. In this my Affidavit, I will provide my expert opinion on the competency and suitability of the Russian judicial system to adjudicate this Action as I understand that the Plaintiffs may argue that Alberta is the most convenient and proper jurisdiction, in part, because of fears that justice will not be duly served by the Russian courts.

3.    In a recent similar action in the United States, *Base Metal Trading et al. v. Russian Aluminum et al.*, United States District Court, S.D. New York, No. 00 CIV.9627 JGK, I provided an expert opinion regarding the competency and suitability of the Russian judicial system. The New York Court accepted my opinion and the defendants' motion to dismiss for *forum non conveniens* was granted on March 27, 2003.

4.    I have practiced law since my graduation from the Military Academy of Law in 1952. From 1952 until 1957, I worked as a Military Investigator and Prosecutor. From 1957 until 1961, I was a post-graduate student in the Department of Litigation of the Law Faculty of the Military-Political Academy. I completed my Ph.D. dissertation in 1961 and defended my

2

Doctorate Dissertation in 1977, which is the highest scientific degree available in Russia. In 1989, I was awarded the title of Distinguished Jurist of the Russian Federation. In 1991, I received an academic degree of Professor of Law.

5.     I have expert knowledge in the Russian judicial system. In my position as Head of the Judicial System Department of the Institute of State and Law in the Russian Academy of Sciences, I conduct research in the area of court system organization and procedure. I have authored more than 250 academic publications on the subject of the Russian judicial system and on legal procedure.

6.     The Plaintiffs may present their claims in the Russian Arbitrazh Courts. The status and powers of these courts are set forth both in the Federal legislation and in the Constitution of the Russian Federation – Articles 118 and 127. The Plaintiffs may also apply to the competent Russian investigating authorities and prosecutor seeking to impose criminal responsibility on the persons, which allegedly committed criminal actions.

7.     In accordance with the Russian legislation, the Arbitrazh Courts resolve economic disputes, including claims for damages and breaches of obligations where the parties are legal entities and/or individual entrepreneurs and not individuals - Article 27 of the Arbitrazh Procedure Code of the Russian Federation (hereinafter referred to as the "APC RF"). It is my opinion that the Arbitrazh Courts are the most appropriate forum to adjudicate this Action, as both the Plaintiffs and the Defendants are not individuals and they require the resolution of an economic dispute regarding an insurance policy.

8.    In the Russian Federation, as in other states to my knowledge, any complaint is normally filed with the court at the place of the defendant's domicile. In Russia, the applicable article is Article 35 of the APC RF.

9.    In resolving economic disputes, the Arbitrazh Courts apply Russian Law. They may apply foreign law, if applicable, as provided in Article 14 of the APC RF. They also apply international treaties to which the Russian Federation is a party. If the Arbitrazh Courts apply foreign law, they do so in accordance with the interpretation and legal practice of the respective foreign state (paragraph 1 of Article 14 of the APC RF).

10.   In the mid 1990s, the Federal Assembly of the Russian Federation adopted a new Civil Code of the Russian Federation (hereinafter referred to as the "CC RF"). Part I of the CC RF came into effect on January 1, 1995, Part II of the CC RF came into effect on March 1, 1996 and Part III of the CC RF on March 1, 2002. The norms of the Civil Code of the Russian Federation are similar to the principles of commercial law of most industrial Western countries. In particular, Article 1 of the CC RF provides that the main principles of Russian civil law are based on the equality of the participants, the inviolability of the property rights, the freedom of contract, the impermissibility of arbitrary interference by anyone in private affairs, the unhindered exercise of legal rights, and the restoration of violated rights and legal remedies thereof.

11.   Article 12 of the CC RF provides for the means of commercial rights protection, including the following:

- reinstatement of the situation that existed before the violation of the commercial right and the enjoining of the activities that violated or threatened the commercial right;

- enforcement of specific performance;

4

- compensation for damages;

- recovery of a penalty;

- recovery for damages to reputation; and

- declaring decisions of a state agency or municipality to be invalid, in the case that it violates the provisions of the Constitution of the Russian Federation or a statute.

12. Russian civil law provides that legal rights may be violated as a result of breach of a contract, intentional interference with the performance of a contract and fraud (which would include claims for "conversion" of property). Therefore, it is my respectful opinion that the Russian Federation Courts may resolve the claims of the Plaintiffs, which allege breach of the insurance contract. The Arbitrazh Courts of the Russian Federation have ample remedial powers to restore violated rights.

13. In particular, the grounds for making the responsible party liable for breach of its obligation, including the recovery of the whole amount of damages and lost profits from the responsible party, are specified in Article 15, Part 1 of the CC RF as they apply to specific commercial obligations.

14. It is my understanding from reviewing the Statement of Claim that there are issues of not only civil but criminal law as well that may impact on the resolution of this matter, as it relates to the Tyumen Oil Company (TNK). Under Russian Law the Plaintiffs are entitled to:

- bring a civil law claim against TNK with the criminal proceedings for compensation of damages caused by violent fraudulent actions, or a claim for repayment of the amount of unjust enrichment particularly for compensation for damages caused by

the bad faith of the persons unjustly enriched pursuant to Chapter 59 and 60 of the CC RF; and/or,

- request that the relevant competent authorities initiate a criminal investigation of the responsible parties on coercion and fraud charges and then file a civil law suit with the criminal proceeding pursuant to Article 44 of the Criminal Procedure Code of the Russian Federation. The Criminal Procedure Code specifies that a legal entity is covered by the notion of the aggrieved person and may act as a civil law claimant (Articles 42 and 44 of the Criminal Procedure Code of the Russian Federation).

15. Chapters 59 and 60 of the CC RF provide for compensation for damages incurred as a result of illegal actions by legal entities and individuals. In particular the damage incurred due to illegal actions (or inactions) committed by state bodies, officials, law enforcement agencies and courts shall be compensated by the state.

16. Pursuant to Article 1064 of the CC RF, the person responsible for causing damages to property should fully compensate the victim. Pursuant to Articles 1102 and 1107 of the CC RF, a person who has unlawfully acquired or maintained the property of another person must return it to the aggrieved person and compensate him for lost profits. The law, or a contract, may provide for compensation in excess of the actual loss. In other words, if the lawsuit is brought in the Russian Courts, the Plaintiffs may request the same compensation as they seek to receive in the Alberta Court.

17. In regards to the Plaintiffs' potential limitation argument, I advise as follows. The statute of limitations is set forth in Chapter 12 of the CC

6

RF. The statute of limitations applies to claims for damages including those based on breach of contract, fraud, the intentional interference in the performance of contracts, harm-doing and unjust enrichment. According to Russian Law, the statute of limitation is three years however, there are special statutes of limitations, both shorter and longer than the general three-year period. There is a shortened two-year limitation period for claims arising out of property insurance contracts (Art. 966 of the CC RF).

18. Article 200 of the CC RF provides that the period of limitation shall commence from the day when the person came to know or should have known of the violation of his or her right.

19. Article 203 of the CC RF provides for the interruption and reinstatement of limitation period. Pursuant to this article filing of an action by the established procedure interrupts the period of limitation running, while after the interruption, the running starts anew. It should be also mentioned that pursuant to article 199 of the CC RF a request to protect violated rights would be considered by the court regardless of the statute of limitations. The Court may set aside a claim on the grounds of the limitation period expiration if a party to the dispute resorts to the respective defense.

20. Based on my expert opinion, the limitation period for the Plaintiffs' cause of action will not lapse in Russia until the expiration of the two-year limitation period provided that such period shall be calculated from the day the Plaintiffs came to know or should have known of the violation of their rights under the insurance contract policy number 41-000903/01 (hereinafter referred to as the "Policy"). Running of the two-year limitation period applicable in this matter should start anew if the Alberta Court strikes out or dismisses the Plaintiffs' action in Alberta.

21. Furthermore, it is my respectful opinion that foreign companies may bring suits in the State Courts of the Russian Federation pursuant to Par. 5 of Article 27 and Article 247 of the APC RF, which provides that foreign organizations, international organizations, foreign citizens and individuals without citizenship have the right to bring lawsuits in the Arbitrazh Courts to protect their infringed or disputed rights and interests. Foreign entities have the same procedural rights as the organizations and citizens of the Russian Federation. Thus foreign companies such as Norex Petroleum Limited who have enforceable contracts of insurance under the laws of the Russian Federation have the right to initiate an action in a State Court of the Russian Federation.

22. Pursuant to Article 247 of the APC RF the Arbitrazh Courts may resolve disputes involving foreign entities if, among other things, any of the following occurs:

1) the foreign entity's executive body, branch or representative office is located in the Russian Federation;

2) the Defendant is located or domiciled or has property in the Russian Federation;

3) the claim arises from a contract which is to be or was performed in the Russian Federation;

4) in a tort case, an action or another event that is a ground for the damages claimed occurred in the Russian Federation;

5) the claim arises from unjust enrichment which took place in the Russian Federation;

6) the claim arises from circulation of securities issued in the Russian Federation; or

7) in other cases where there is a close connection of the disputed legal relationships with the territory of the Russian Federation.

23. Pursuant to Article 249 of the APC RF, the Arbitrazh Courts may resolve disputes in cases if the parties to the dispute, provided that at least one of the parties is a foreign entity, have agreed in writing on the competence of an arbitrazh court, provided that this agreement does not alter exclusive jurisdiction of a foreign court, if any.

24. It is my respectful opinion that there is no compelling argument or reason to believe that the Russian Judicial System is unable to act independently or adequately in order to determine this litigation.

25. Russian Law declares the impartiality and independence of Russian judges. In Article 120 of the Constitution of the Russian Federation and Article 5 of Federal Constitutional Law No.1-ФКЗ "On the Judicial System of the Russian Federation" of December 31, 1996 as further amended (hereinafter "the Law on Judicial System of the Russian Federation") the Russian Judicial System operates in compliance with the Constitution of the Russian Federation and the law. It is empowered to protect infringed rights of legal entities and individuals for which there are numerous guarantees set forth in Russian civil law, including but not limited to the Civil Code of the Russian Federation.

26. Pursuant to the Constitution of the Russian Federation, the independence and impartiality of judges are guaranteed by their irremovability (Article 121) and immunity (Article 122), as well as the open nature of hearings in

all courts (Article 123). These constitutional provisions are clarified by Russian Federation Law No. 3132-I "On the Status of Judges in the Russian Federation" as of June 26, 1992 as amended further (hereinafter referred to as "the Law on the Status of Judges") and by the Law on the Judicial System of the Russian Federation and in Federal Constitutional Law No.1-ФКЗ "On the Arbitrazh Courts in the Russian Federation" of April 28, 1995 as further amended (hereinafter "the Law on the Arbitrazh Courts").

27. The judges of the Russian Federal Courts are highly qualified professionals capable of resolving the allegations of the Plaintiffs, both properly and impartially. Both Norex and ZAO Yugraneft can have their claim heard in a Russian Court with a possibility of an appeal and supervisory review of any court decision.

28. The Russian judiciary has always had strong academic expertise and experience in civil and commercial law. This has been accomplished through the training of judges who resolve economic disputes in the courts of General Jurisdiction and in the Arbitrazh Courts.

29. Russia's conversion into a free market economy, private business and competition in the sphere of economy induced the lawmakers to pay special attention to the perfection of the commercial (arbitrazh) court system and arbitrazh legal procedure. There were three redactions of APC RF adopted over the last 10 years. The present APC RF in force, adopted on the 24th of July 2002, can be characterized as the most perfect act among the all Russian legislation relating to the sphere of economy.

30. The tendency towards perfection of the Arbitrazh Courts is traced in Federal Constitutional Law No.4-ФКЗ of July 4, 2003 "On Introducing of Alterations and Amendments into the Federal Constitutional Law "On the

Arbitrazh Courts in the Russian Federation". By this Law, the appeal proceedings are withdrawn from the competence of the Arbitrazh Courts of the subjects of the Federation and allotted to a separate system of the Federal Arbitrazh Courts of Appeal. By doing this the lawmakers have emphasized the role of appeal as the best method to discover and rectify judicial errors.

31. After the adoption of the above-mentioned Law, the system of the Arbitrazh Courts evolved into a four-level Court, namely:

1) the first instance - the Federal Arbitrazh Courts in the subjects of the Federation;

2) the second instance - the Federal Arbitrazh Courts of Appeal (two courts for a judicial district, there are 20 Arbitrazh Courts of Appeal, each of them serves several regions). Such court has already been functioning in the Moscow Judicial District since the 1st of January 2004;

3) the third instance - the Cassation Arbitrazh Courts, one for each judicial district (there are 10 such courts in Russia);

4) the supervisory judicial instance – the Supreme Arbitrazh Court of the RF. .

32. The appeal, cassation and supervisory instances resolve disputes collectively (three or more federal judges), while in a court of the first instance both sole and collective (upon request of the parties or in the cases provided by the APC RF) trial of the disputes by a federal judge or by federal judges are possible.

11

33.  If there is a disagreement with the court of the first instance's judgment, parties are entitled to challenge the judgment in the courts of appeal, cassation and supervisory instances. Parties can defend their interests by participating in a court trial of any instance.

34.  It is clear from the above, that the Russian legislation on the Arbitrazh judicial system is harmonious system of guarantees, sufficient for fair and legitimate resolution of economical disputes in the Russian Federation.

35.  I believe that the Respectable Court must also take into account the following important facts about the Russian Arbitrazh Courts:

   1) it is prohibited under the penalty of law to obstruct justice in any way (Articles 9 and 10 of the Law on the Status of Judges);

   2) a judge's tenure is not limited by a specified period of time and is possible until the retirement age (Article 14 of the Law on the Judicial System of the Russian Federation);

   3) a judge's powers may only be terminated on grounds specified by law and by decision of the judiciary collegium (Articles 9, 16 of the Law on the Status of Judges; Articles 15, 16 of the Law on the Judicial System of the Russian Federation and the Russian Federation Law No.30-ФЗ of March 14, 2002 "On the Bodies of Judicial Community in the Russian Federation" as amended further).

36.  There are well-developed guarantees of the parties' procedural rights in the Arbitrazh procedure.  Such guarantees include the following:

1) equality of parties before the law and the court (Article 19 of the Constitution of the Russian Federation, Article 7 of the Law on the Judicial System of the Russian Federation, Article 7 of the APC RF);

2) foreign persons and entities enjoy the same procedural rights and responsibilities as the organizations and citizens of the Russian Federation (Articles 254 of the APC RF). Moreover under par.1 Article 254 of the APC RF, foreign persons and entities may enjoy procedural privileges if provided by international treaties to which the Russian Federation is a party.

3) adversarity and the equality of the parties (Article 123 of the Constitution of the Russian Federation, Articles 8 and 9 of the APC RF, Article 15 of the Criminal Procedure Code of the RF);

4) the court's obligation to notify the parties about the time and place of the hearing (Articles 121, 253 of the APC RF);

5) the prohibition for any court to resolve a dispute in the absence of the party which was not duly notified about the time and place of the hearing (Article 158, par. 4 of Article 270 and par. 4 of Article 288 of the APC RF and the Ruling of the Constitutional Court of the Russian Federation No.6-П of April 14, 1999);

6) the obligation of the parties participating the proceedings in the Arbitrazh Courts to prove all allegations they make and the right of the parties to provide evidence to the court (Articles 65, 66 of the APC RF);

7) the obligation of the witnesses and experts to appear in court upon request and to testify or to provide expert opinions (Articles 55, 56 of the APC RF);

8) the criminal responsibility of witnesses for refusal to testify, evasion of testimony, and perjury (Articles 55, 56 of the APC RF, and Articles 307, 308 of the Criminal Code of the RF);

9) the obligation of organizations and legal entities to produce evidence required by a court (Article 66 of the APC RF);

10) review of cases in the appeal, cassation and supervisory instances (Section VI. Chapters 34, 35 and 36 of the APC RF); and

11) the possibility to review cases due to newly discovered circumstances, including the review to rectify a judicial error (Section VI. Chapter 37 of the APC RF, the Ruling of the Constitutional Court of the Russian Federation No.5-П of February 3, 1998).

37.   In the Russian Federation Courts judgments are binding on all federal and local government agencies as well as on other agencies, organizations, civil servants and citizens on the whole territory of the Russian Federation (Article 6 of the Law on the Judicial System of the Russian Federation). Russian laws provide for enforcement of court decisions, and liability for non-compliance with court judgments (Article 318 of the APC RF and Article 4 of Federal Law No. 119-ФЗ "On Enforcement Proceedings" of July 21, 1997 as amended further).

38.   In my respectful opinion, the Russian legal system and its codes on the whole function properly, I therefore believe that the courts of   Russia   are an adequate forum to fairly adjudicate the Plaintiffs' claims.   If the Plaintiffs can substantiate their claims, the Plaintiffs will receive justice by an adequate remedy in the Russian judicial system.

Case 1:04-mc-00281-CKK   Document 7   Filed 11/18/04   Page 15 of 33

39.  I make this Affidavit in support of an application to set aside the service of
the Statement of Claim on the Defendant, Ingosstrakh Insurance Company
Ltd., or in the alternative to strike out or dismiss this Action on the basis
that Alberta is *forum non conveniens*.


the City of Moscow, the Russian Federation,
June 25, 2004

_____ Igor Leonidovich Petrukhin

15

06/28/2004 13:50   2971-3886      CRT OF Q  NS BENCH          PAGE 02/02
    8-28-04: 2:08PM; BROWNLEE FRYETT                         1/80 424 3254   # 1// 1/
06/25/2004 18:11   2943683          INGOSSTRAKH                   PAGE 48

Deponent: Igor Leonidovich
Petrukhin
Date Sworn: June 25, 2004

**Action No.: 0201 11097**

IN THE COURT OF QUEEN'S
BENCH
OF ALBERTA
JUDICIAL DISTRICT OF CALGARY

BETWEEN:

**NOREX PETROLEUM LIMITED and
ZAO YUGRANEFT CORPORATION**

Plaintiffs

—and—

**CHUBB INSURANCE COMPANY OF
CANADA, INGOSSTRAKH
INSURANCE COMPANY LTD. and
GREAT NORTHERN INSURANCE
COMPANY**

Defendants

**AFFIDAVIT**



**# 63161**

**Brownlee LLP**
Barristers and Solicitors
2200, Commerce Place
10155 - 102 Street
Edmonton, Alberta T5J 4G8

**J. ROBERT BLACK**
Phone: 497 - 4826
Fax: 424 - 3254

File#: 75797-001/JRB

16

Дело №: 0201 11097

Заявитель: Игорь Леонидович Петрухин

Дата подписания: ___25___ июня 2004

## В СУД КОРОЛЕВСКОЙ СКАМЬИ АЛЬБЕРТЫ
## СУДЕБНОГО ОКРУГА КАЛГАРИ

МЕЖДУ:

### НОРЕКС ПЕТРОЛЕУМ ЛИМИТЕД И ЗАО ЮГРАНЕФТЬ КОРПОРЕЙШН

Истцы

и

### ЧАББ ИНШУРАНС КОМПАНИ ОФ КЭНАДА, ИНГОССТРАХ ИНШУРАНС КОМПАНИ ЛТД И ГРЕЙТ НОРФЕН ИНШУРАНС КОМПАНИ

Ответчики

## АФФИДЕВИТ

Я, профессор Игорь Леонидович Петрухин, г. Москва, Российская Федерация, ЗАЯВЛЯЮ ПОД ПРИСЯГОЙ И УТВЕРЖДАЮ, ЧТО:

1.  Я заведую сектором проблем правосудия Института государства и права Российской Академии наук. Одновременно являюсь профессором Академического правового Университета (г. Москва) и адвокатом Московской городской Палаты адвокатов. Я являюсь

гражданином Российской Федерации и постоянно проживаю в России. В этой связи я обладаю персональными познаниями материала, являющегося предметом настоящего заявления, за исключением случаев, когда указано, что изложенное основано на информации и убеждениях.

2.  Я был информирован адвокатом ответчика - Открытого страхового акционерного общества «Ингосстрах» (далее именуемого как «Ингосстрах») о том, что Истцы возбудили иск № 0201 11097 в Суде Королевской Скамьи судебного округа Калгари (далее именуемый как – «Иск») против Ингосстраха с требованием выплаты страхового возмещения по выданному Ингосстрахом страховому полису в связи с ущербом и утратой имущества, расположенного в районе Нижневартовска, Тюменской области и в Москве. Я ознакомился с исковым заявлением по данному делу. В настоящем Аффидевите я дам свое экспертное заключение относительно компетентности и пригодности российской судебной системы для рассмотрения данного Иска, поскольку допускаю, что Истцы могут заявить, что наиболее подходящей и надлежащей юрисдикцией для рассмотрения данного Иска является Альберта, в частности, из-за опасений того, что российские суды не смогут осуществить правосудие надлежащим образом.

3.  Не так давно я предоставил экспертное заключение по вопросу компетентности и пригодности российской судебной системы по подобному делу №00 CIV.9627 JGK *Бейз Метал Трейдинг и др. против Рашн Алюминиум и др.*, которое рассматривалось в Федеральном суде Южного округа Нью-Йорка, Соединенные Штаты Америки. Нью-йоркский суд принял мое заключение и удовлетворил 27 марта 2003г. ходатайство ответчиков об отказе в рассмотрении иска на том

3

основании, что данный суд является неудобным местом для рассмотрения дела (*forum non conveniens*).

4. Я являюсь практикующим юристом с момента окончания Военно-юридической академии в 1952 году. С 1952 по 1957 гг. я работал военным следователем и военным прокурором. С 1957 по 1961 гг. учился в адъюнктуре Кафедры судебного права Юридического факультета Военно-политической академии. В 1961г. я защитил кандидатскую диссертацию, а в 1977г. – докторскую, получив высшую ученую степень, которая присваивается в России. В 1989г. мне было присвоено звание Заслуженного юриста Российской Федерации, а в 1991г. – научное звание профессора.

5. Я являюсь экспертом по российской судебной системе. В качестве Заведующего сектором проблем правосудия Института государства и права Российской академии наук я провожу исследования в области организации и функционирования судебной системы. Имею более 250 научных публикаций на тему судоустройства и судебного процесса в России.

6. Истцы могут заявить свои требования в российских арбитражных судах. Статус и полномочия этих судов изложены в федеральном законодательстве и Конституции Российской Федерации – ст.ст. 118 и 127. Истцы могут также обратиться к компетентным российским следственным органам и прокуратуре с просьбой привлечь к уголовной ответственности лиц, предположительно совершивших преступные действия.

7. В соответствии с российским законодательством арбитражные суды разрешают экономические споры, в том числе о возмещении ущерба и нарушении обязательств, в случаях, когда стороны являются

4

юридическими, а не физическими лицами и/или индивидуальными предпринимателями – ст.27 Арбитражного процессуального кодекса Российской Федерации (далее именуемого как «АПК РФ»). Полагаю, что арбитражные суды являются наиболее подходящим местом для рассмотрения данного Иска, поскольку и Истцы, и Ответчики не являются физическими лицами и ходатайствуют о вынесении решения по экономическому спору, касающемуся вопросов страхования.

8. В Российской Федерации, как и во многих других государствах, насколько мне известно, иск предъявляется по месту постоянного нахождения ответчика. В России это предусмотрено ст. 35 АПК РФ.

9. Рассматривая экономические споры, арбитражные суды применяют российское право. Они могут применить и иностранное право, если оно подлежит применению, что предусмотрено ст.14 АПК РФ. Они также применяют международные договоры Российской Федерации. Применяя нормы иностранного права, арбитражные суды основываются на их толковании и практике применения в соответствующем иностранном государстве (п.1 ст.14 АПК РФ).

10. В середине 1990-х гг. Федеральное Собрание Российской Федерации приняло новый Гражданский кодекс Российской Федерации (далее именуемый как «ГК РФ»). Часть I ГК РФ вступила в силу 1 января 1995г., часть II вступила в силу 1 марта 1996г. и III часть – 1 марта 2002г. Нормы ГК РФ схожи с принципами коммерческого права большинства западных промышленных стран. В частности, ст.1 ГК РФ предусматривает, что гражданское законодательство основывается на принципах равенства участников отношений, неприкосновенности собственности, свободы договора, недопустимости произвольного вмешательства кого-либо в частные

5

дела, беспрепятственного осуществления гражданских прав, обеспечения восстановления нарушенных прав, их судебной защиты.

11. Ст.12 ГК РФ предусматривает, в частности, следующие способы защиты гражданских прав:

- восстановление положения, существовавшего до нарушения права, и пресечение действий, нарушающих право или создающих угрозу его нарушения;
- присуждение к исполнению обязанности в натуре;
- возмещение убытков;
- взыскание неустойки;
- компенсация морального вреда; и
- признание недействительным акта государственного органа или органа местного самоуправления, противоречащего Конституции или закону.

12. Российское гражданское законодательство исходит из того, что права могут быть нарушены в результате несоблюдения договора, воспрепятствования исполнению договора и мошенничества (это касается и исков о неправомерном присвоении чужого имущества (*conversion of property*). Таким образом, по моему убеждению, суды Российской Федерации могут рассмотреть претензии Истцов о предполагаемом нарушении договора страхования. Арбитражные суды Российской Федерации имеют достаточно полномочий для восстановления нарушенных прав.

13. В частности основания привлечения виновной стороны к ответственности за нарушение обязательств, включая полное возмещение ею реального ущерба и упущенной выгоды, определены

6

ст.15 части I ГК РФ и применяются к отдельным коммерческим обязательствам.

14. Изучив исковое заявление, я пришел к выводу, что существуют вопросы не только гражданского, но и уголовного права, относящиеся к Тюменской нефтяной компании («ТНК»), которые могут повлиять на исход данного дела. По российскому законодательству Истцы вправе:

- предъявить к ТНК гражданский иск в уголовном процессе с целью возмещения убытков, причиненных насильственными мошенническими действиями, или иск о возврате суммы неосновательного обогащения, в частности, возмещении убытков, причиненных недобросовестными действиями лиц, приведшими к их неосновательному обогащению, в соответствии с главами 59 и 60 ГК РФ, и/или

- обратиться в соответствующие компетентные органы с ходатайством о возбуждении уголовного преследования в отношении лиц, ответственных за насилие и мошенничество и подать гражданский иск в уголовном процессе в соответствии со ст. 44 Уголовно-процессуального кодекса Российской Федерации. Уголовно-процессуальный кодекс предусматривает, что в качестве потерпевшего и гражданского истца может выступать юридическое лицо (ст.42 и 44 Уголовно-процессуального кодекса Российской Федерации).

15. Главы 59 и 60 ГК РФ предусматривают возмещение убытков, понесенных юридическими и физическими лицами в результате незаконных действий. В частности убытки, понесенные в результате

7

незаконных действий (бездействия) государственных органов, государственных служащих, правоохранительных органов и судов подлежат возмещению государством.

16. В соответствии со ст.1064 ГК РФ лицо, причинившее вред, обязано возместить в полном объеме ущерб, нанесенный имуществу потерпевшего. Согласно ст.ст. 1102 и 1107 ГК РФ лицо, которое незаконным путем приобрело или сберегло имущество другого лица, обязано возвратить его потерпевшему и возместить ему неполученные доходы. Закон либо договор могут предусматривать компенсацию сверх реального ущерба. Иными словами, если иск предъявляется в российском суде, Истцы могут потребовать той же компенсации, которую они рассчитывают получить в суде Альберты.

17. Что касается потенциального аргумента Истцов о возможном применении исковой давности в данном случае, мне бы хотелось заметить следующее. Срок исковой давности предусмотрен главой 12 ГК РФ. Исковая давность применяется к требованиям о возмещении ущерба, в том числе из нарушения договора, мошенничества, преднамеренного вмешательства в исполнение договора, причинения вреда и неосновательного обогащения. По российскому праву срок исковой давности составляет три года, однако существуют специальные сроки исковой давности как длиннее, так и короче общего трехлетнего срока. Для претензий, вытекающих из договоров имущественного страхования, предусмотрен двухлетний срок исковой давности (ст.966 ГК РФ).

18. Согласно статье 200 ГК РФ течение срока исковой давности начинается со дня, когда лицо узнало или должно было узнать о нарушении своего права.

8

19. Статья 203 ГК РФ предусматривает перерыв и восстановление срока исковой давности. В соответствии с этой статьей предъявление иска в установленном порядке прерывает течение срока исковой давности, причем после перерыва течение срока исковой давности начинается заново. Необходимо отметить, что в соответствии со ст. 199 ГК РФ требования о защите нарушенного права принимаются к рассмотрению судом независимо от истечения срока исковой давности. Суд выносит решение об отказе в иске на основании истечения исковой давности только в случае соответствующего заявления стороны в споре.

20. Суммируя вышесказанное, я утверждаю, что исковая давность для предъявления в РФ требований Истцов не истечет до окончания двухгодичного периода, при этом такой период должен исчисляться со дня, когда Истцы узнали или должны были узнать о нарушении своих прав по договору страхования (полису) №41-000903/01 (далее именуемый «Договор страхования»). Течение двухгодичного срока исковой давности, применимого в настоящем случае, начинается заново в случае, если суд Альберты откажет Истцам в иске или прекратит производство по делу.

21. Кроме того, я считаю, что зарубежные компании могут предъявить иск в государственные суды Российской Федерации на основании п.5 ст.27 и ст.247 АПК РФ из которых следует, что иностранные организации, международные организации, иностранные граждане и лица без гражданства имеют право на предъявление иска в арбитражном суде, для защиты их нарушенных или оспариваемых прав и интересов. Иностранные организации имеют тот же объем процессуальных прав, что и организации и граждане Российской Федерации. Таким образом, иностранные компании, такие как Норекс Петролеум Лимитед, имеющие договоры страхования,

9

подлежавшие судебной защите по законодательству Российской Федерации, имеют право на защиту своих прав в государственных судах Российской Федерации.

22.  В соответствии со ст.247 АПК РФ арбитражные суды могут рассматривать споры с участием иностранных лиц, помимо прочего, в любом из ниже перечисленных случаев:

1) орган управления, филиал или представительство иностранного лица находится на территории Российской Федерации;

2) ответчик находится или проживает или имеет имущество на территории Российской Федерации;

3) спор возник из договора, по которому исполнение должно иметь место или имело место на территории Российской Федерации;

4) требование возникло из причинения вреда имуществу действием или иным обстоятельством, имевшими место на территории Российской Федерации;

5) спор возник из неосновательного обогащения, имевшего место на территории Российской Федерации;

6) спор возник из отношений, связанных с обращением ценных бумаг, выпуск которых имел место на территории Российской Федерации; или

7) в других случаях при наличии тесной связи спорного правоотношения с территорией Российской Федерации.

10

23.     В соответствии со ст.249 АПК РФ арбитражные суды могут также рассматривать споры в случае, если стороны в возникшем или могущем возникнуть споре, хотя бы одна из которых является иностранным лицом, заключили соглашение о компетенции арбитражного суда, при условии, что такое соглашение не изменяет исключительную компетенцию иностранного суда, если таковая имеет место.

24.     Полагаю, что отсутствуют убедительные аргументы и основания считать что, что российская судебная система неспособна функционировать адекватно и независимо с тем, чтобы разрешить данный спор надлежащим образом.

25.     Российский закон провозглашает беспристрастность и независимость российских судей. На основании ст. 120 Конституции Российской Федерации и ст.5 Федерального конституционного закона №1-ФКЗ «О судебной системе Российской Федерации» от 31 декабря 1996г. с последующими изменениями (далее «Закон о судебной системе Российской Федерации») российская судебная система действует в соответствии с Конституцией Российской Федерации и законом. Она уполномочена защищать нарушенные права юридических и физических лиц, для чего российское гражданское право предусматривает многочисленные гарантии, содержащиеся в российском гражданском праве, включая, но не ограничиваясь, Гражданским кодексом Российской Федерации.

26.     В соответствии с Конституцией РФ гарантией независимости и беспристрастности судей являются их несменяемость (ст. 121) и неприкосновенность (ст. 122), а также открытое разбирательство дел во всех судах (ст. 123).   Данные конституционные положения

11

раскрываются в российском Федеральном законе № 3132-I «О статусе судей в Российской Федерации» от 26 июня 1992 г. с последующими изменениями (далее «Закон о статусе судей»), в Законе о судебной системе Российской Федерации и в Федеральном конституционном законе №1-ФКЗ «Об арбитражных судах в Российской Федерации» от 28 апреля 1995г., с последующими изменениями (далее «Закон об арбитражных судах»).

27. Судьи федеральных судов Российской Федерации обладают высокой квалификацией, способны должным образом и беспристрастно рассмотреть претензии Истцов. Иски Норекс и ЗАО «Юграфнефть» могут быть рассмотрены российским судом с возможностью апелляционного и кассационного обжалования любого судебного решения.

28. Российская судебная система всегда имела высокий уровень научных знаний и опыта в области гражданского и коммерческого права. Это достигается посредством подготовки судей, которые—разрешают экономические споры в судах общей юрисдикции и в арбитражных судах.

29. Переход России к свободному рынку, предпринимательству и конкуренции в сфере экономики побудил законодателя обратить особое внимание на совершенствование системы хозяйственных (арбитражных) судов и арбитражного процесса. За последние 10 лет было принято три АПК РФ. Действующий ныне АПК РФ, принятый 24 июля 2002г., можно охарактеризовать, как самый совершенный из всех российских правовых актов, относящихся к сфере экономики.

30. Тенденция совершенствования системы арбитражных судов прослеживается в Федеральном конституционном законе от 4 июля

12

2003 г. N 4-ФКЗ «О внесении изменений и дополнений в Федеральный конституционный закон «Об арбитражных судах в Российской Федерации». Этим законом апелляционное производство изъято из компетенции арбитражных судов субъектов федерации и выделено в самостоятельную систему федеральных арбитражных апелляционных судов. Делая это, законодатель подчеркнул роль апелляции, как лучшего способа обнаружения и исправления судебных ошибок.

31. После принятия указанного закона система арбитражных судов стала четырехзвенной, а именно:

1) первая инстанция – федеральные арбитражные суды в субъектах федерации;

2) вторая инстанция - федеральные арбитражные апелляционные суды (по два суда на судебный округ, общей численностью 20 арбитражных апелляционных судов, каждый из которых обслуживает несколько регионов). Такой суд уже функционирует в Московском судебном округе с 1 января 2004;

3) третья инстанция – кассационные арбитражные суды, по одному на каждый судебный округ (всего 10 таких судов в России);

4) надзорная судебная инстанция – Высший арбитражный суд РФ.

32. Апелляционная, кассационная и надзорная инстанции рассматривают дела коллегиально (трое и более федеральных судей), а в суде первой инстанции возможно как единоличное, так и коллегиальное (по ходатайству сторон или в случаях прямо предусмотренных АПК РФ) рассмотрение дел федеральным судьей или федеральными судьями.

33. При несогласии с решением суда первой инстанции стороны вправе обжаловать его последовательно в суды апелляционной, кассационной и надзорной инстанций. Стороны могут защищать свои интересы, участвуя в рассмотрении дела в суде любой инстанции.

34. Из сказанного видно, что российское законодательство об арбитражной судебной системе позволяет говорить о наличии в России стройной системы гарантий, достаточной для законного и справедливого разрешения экономических споров.

35. Полагаю, что Уважаемый Суд должен также принять во внимание следующие важные моменты, характеризующие российские арбитражные суды:

1) запрет под угрозой преследования по закону любого вмешательства в деятельность по осуществлению правосудия (ст.ст. 9 и 10 Закона о статусе судей);

2) полномочия судей не ограничены определенным сроком, пребывание в должности возможно до достижения пенсионного возраста (ст.14 Закона о судебной системе Российской Федерации»);

3) полномочия судьи могут быть прекращены только на основании закона и решения квалификационной коллегии судей (ст.ст. 9, 16 Закона о статусе судей; ст.ст. 15 и 16 Закона о судебной системе Российской Федерации и Федерального закона №30-ФЗ «Об органах судейского сообщества в Российской Федерации» от 14 марта 2002 с последующими изменениями).

14

36.   В арбитражном процессе предусмотрен значительный объем процессуальных гарантий для сторон. К этим гарантиям относятся:

1) равенство сторон перед законом и судом (ст.19 Конституции Российской Федерации, ст.7 Закона о судебной системе Российской Федерации и ст.7 АПК РФ);

2) иностранные физические и юридические лица пользуются процессуальными правами и несут процессуальные обязанности в том же объеме, что и российские организации и граждане (ст.254 АПК РФ). Более того, согласно п.1 ст.254 АПК РФ иностранным лицам могут предоставляться процессуальные льготы, если международные договоры РФ предусматривают такие льготы;

3) состязательность и равноправие сторон (ст.123 Конституции Российской Федерации, ст.ст. 8 и 9 АПК РФ, ст.15 Уголовно-процессуального кодекса РФ);

4) обязанность суда уведомить стороны о времени и месте судебного заседания (ст.ст. 121 и 253 АПК РФ);

5) запрет суду рассматривать дело в отсутствие стороны, не уведомленной должным образом о времени и месте судебного заседания (ст. 158, п.4 ст. 270 и п.4 ст.288 АПК РФ, Постановление Конституционного суда РФ №6-П от 14 апреля 1999);

15

6) обязанность участников арбитражного процесса доказать все обстоятельства, на которые они ссылаются, и право сторон представлять суду доказательства (ст.ст. 65, 66 АПК РФ);

7) обязанность свидетелей и экспертов являться в суд по вызову, давать свидетельские показания либо экспертные заключения (ст.ст. 55, 56 АПК РФ);

8) уголовная ответственность свидетелей за отказ давать показания, уклонение от дачи показаний и лжесвидетельство (ст.ст. 55, 56 АПК РФ и ст.307, 308 Уголовного кодекса РФ);

9) обязанность организаций и лиц представить затребованные судом доказательства (ст. 66 АПК РФ);

10) пересмотр дел в апелляционной, кассационной и надзорной инстанциях (Раздел VI. главы 34, 35 и 36 АПК РФ); и

11) возможность пересмотра дел по вновь открывшимся обстоятельствам, в том числе с целью исправления судебной ошибки (Раздел VI. глава 37 АПК РФ и Постановление Конституционного Суда РФ №5-П от 3 февраля 1998 г.)

37.   В Российской Федерации вступившие в законную силу судебные решения являются обязательными для всех государственных органов и органов местного самоуправления, а также иных органов, организаций, государственных служащих и граждан на всей территории Российской Федерации (ст.6 Закона о судебной системе Российской Федерации). Российское законодательство предусматривает возможность принудительного исполнения судебных решений и ответственность за их несоблюдение (ст. 318

16

АПК РФ и ст.4 Федерального закона № 119-ФЗ «Об исполнительном производстве» от 21 июля 1997г. с последующими изменениями).

38.  По моему мнению, функционирование российской правовой системы и применение её законодательства в целом осуществляются надлежащим образом, поэтому я полагаю, что российские суды являются надлежащим форумом для вынесения справедливого решения по искам Истцов. В случае если Истцы смогут обосновать свои требования, в их отношении российской судебной системой будет осуществлено правосудие и они получат адекватную судебную защиту.

39.  Я представляю данный Аффидевит в поддержку ходатайства об отмене уведомления о вручении искового заявления ответчику, ОСАО «Ингосстрах», либо, в качестве альтернативы, в поддержку ходатайства об отказе в рассмотрении иска, или его отклонении на том основании, что Альберта является неудобным местом для рассмотрения данного дела (*forum non conveniens*).

Город Москва, Российская Федерация,

_____ день июня 2004г.

_____  Игорь Леонидович Петрухин

Исполнен под присягой в моем присутствии
Город Москва, Российская Федерация

_____ день июня 2004г.

_____  Нита Чиббер, Вице-Консул

Заявитель: Игорь Леонидович Петрухин

Дата подписания: 05 июня 2004 г.

Дело №: 0201 11097

В СУД КОРОЛЕВСКОЙ СКАМЬИ АЛЬБЕРТЫ СУДЕБНОГО ОКРУГА КАЛГАРИ

МЕЖДУ:

**НОРЕКС ПЕТРОЛЕУМ ЛИМИТЕД и ЗАО ЮГРАНЕФТЬ КОРПОРЕЙШН**

Истцы

и

**ЧАВВ ИНШУРАНС КОМПАНИ ОФ КЭНАДА, ИНГОССТРАХ ИНШУРАНС КОМПАНИ ЛТД и ГРЫЙТ НОРФЕН ИНШУРАНС КОМПАНИ**

Ответчики

**АФФИДЕВИТ**

*Brownlee LLP*
Barristers and Solicitors
2200, Commerce Place
10155 - 102 Street
Edmonton, Alberta T5J 4G8

**J. ROBERT BLACK**
Phone: 497 - 4826
Fax: 424 - 3254

File#: 75797-001/JRB



# 63169.