

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

DEC -2 PM 11: 08

MAYER-WHITTINGTON
CLERK

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NOREX PETROLEUM LIMITED,<br><br>    Petitioner,<br><br>  v.<br><br>CHUBB INSURANCE CO. OF<br>CANADA, et al.,<br><br>    Respondents. | Case No. 1:04-mc-00281-CKK<br>(U.S.D.C. for the District of Columbia)<br><br>For:<br><br>Case No. 0201 11097<br>(Court of Queen's Bench of Alberta,<br>Judicial District of Calgary, Canada) |

## NON-PARTY BP AMERICA INC.'S STATEMENT OF POINTS OF LAW
## AND AUTHORITY IN OPPOSITION TO NOREX PETROLEUM
## LIMITED'S MOTION TO COMPEL AND IN SUPPORT OF
## BP AMERICA INC.'S CROSS-MOTION TO QUASH

Daryl A. Libow (D.C. Bar # 446314)
Joseph J. Reilly (D.C. Bar # 480824)
Telephone:  (202) 956-7500
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC  20006-5085

Attorneys for Non-Party
BP America Inc.
1776 I Street, N.W.
Suite 1000
Washington, D.C. 20006

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................2

    A.    Events in Russia ...............................................................................2

    B.    Norex's Failed Attempts to Acquire the Same Documents in the U.S.
        District Court for the Southern District of New York .........................................4

    C.    The Canadian Case ...........................................................................7

    D.    The CPI Litigation ............................................................................9

ARGUMENT....................................................................................................10

I.    THE SUBPOENA SHOULD BE QUASHED BECAUSE NOREX HAS
    VIOLATED FUNDAMENTAL DUE PROCESS PRINCIPLES AND
    OBTAINED THE SUBPOENA WITHOUT FULL DISCLOSURE TO THIS
    COURT...................................................................................................10

II.    THE FACTORS THAT GUIDE A COURT'S DISCRETION UNDER
    § 1782 AND RULE 45 WEIGH OVERWHELMINGLY AGAINST
    ENFORCEMENT OF THE SUBPOENA ....................................................13

    A.    In § 1782 Cases, the Choice of Whether to Order Discovery is
        Always Within the Discretion of the District Court ............................13

    B.    The *Burka* Balancing Test for Rule 45 Subpoenas Compels
        Denial of Norex's Motion....................................................................14

        1.    Norex's Relevancy Arguments are Meritless .........................15

        2.    The Last Three *Burka* Factors Also Demonstrate that the
            Motion Should be Denied.......................................................16

        3.    The Canadian Court May Never Even Consider the Merits
            of Norex's Claims..................................................................17

    C.    Evidence that Norex is Proceeding Other Than in Good Faith
        Provides a Wholly Independent Reason for Declining to Enforce
        the Subpoena .. ....................................................................................18

**Page**

III.     SECTION 1782 DOES NOT AUTHORIZE THE PRODUCTION OF
         DOCUMENTS LOCATED OUTSIDE OF THE UNITED STATES . .........................19

IV.      NOREX'S SUBPOENA SHOULD BE QUASHED ON THE GROUNDS SET
         FORTH IN PARAGRAPHS 9-16 OF BP AMERICA'S WRITTEN OBJECTIONS,
         WHICH IDENTIFY A HOST OF GENERIC DEFECTS IN THE SUBPOENA
         THAT MAKE IT OVERLY BROAD AND UNDULY BURDENSOME....................22

CONCLUSION .........................................................................................................................23

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*Al Fayed* v. *United States,* 210 F.3d 421 (4th Cir. 2000) ...................................................... 12, 13

*Burka* v. *U.S. Dep't of Health and Human Servs.,* 87 F.3d 508 (D.C. Cir. 1996)................ 14, 15

*Compaq Computer* v. *Packard Bell Elecs.,* 163 F.R.D. 329 (N.D. Cal. 1995) ........................... 15

*Euromepa S.A.* v. *R. Esmerian, Inc.,* 51 F.3d 1095 (2d Cir. 1995) ............................................ 18

*Four Pillars Enterps.* v. *Avery Dennison Corp.,* 308 F.3d 1075 (9th Cir. 2002) ....................... 21

*Gerling Int'l Ins. Co.* v. *CIR,* 839 F.2d 131 (3d Cir. 1988) ........................................................ 22

*In re Application of Sarrio, S.A.,* 1995 WL 598988 (S.D.N.Y. Oct. 11, 1995), *remanded for reconsideration on other grounds,* 119 F.3d 143 (2d Cir. 1997) ......................................... 21

*In re Letter of Request from the Crown Prosecution Service of the United Kingdom,* 870 F.2d 686 (D.C. Cir. 1989)................................................................................................. 10

*In re Letters Rogatory from the Tokyo District,* 539 F.2d 1216 (9th Cir. 1976) ........................ 11

*In re Merck & Co.,* 197 F.R.D. 267 (M.D.N.C. 2000) ......................................................... 11, 12

*Intel Corp.* v. *Advanced Micro Devices,* 124 S. Ct. 2466 (2004) ......................................... *passim*

*Kestrel Coal Pty.* v. *Joy Global, Inc.,* 362 F.3d 401 (7th Cir. 2004)............................... 14, 17, 22

*Norex Petroleum Ltd.* v. *Access Industries, Inc.,* 304 F. Supp. 2d 570 (S.D.N.Y. 2004) ........................................................................... 4, 19

*Norex Petroleum Ltd.* v. *Access Industries,* 2003 WL 1484269 (S.D.N.Y. Mar. 21, 2003) ...................................................... 5, 6, 16, 19

*Norex Petroleum Ltd.* v. *Access Industries,* 2003 WL 21872389 (S.D.N.Y. Aug. 7, 2003) ......................................................................... 7

*Piper Aircraft* v. *Reno,* 454 U.S. 235 (1981) .............................................................................. 5

*Schlagenhauf* v. *Holder,* 379 U.S. 104 (1964) ......................................................................... 18

*Tuite* v. *Henry,* 98 F.3d 1411 (D.C. Cir. 1996)................................................................... 13, 22

**Page**

*United Kingdom* v. *United States*, 238 F.3d 1312 (11th Cir. 2001) ......................................13, 15


## STATUTES AND LEGISLATIVE HISTORY

28 U.S.C. § 1782................................................................................................................*passim*

Fed. R. Civ. P. 45.................................................................................................................9, 22

Fed. R. Civ. P. 45, 1991 advisory committee note ............................................................14, 18

S. Rep. No. 1580 (1964), *reprinted at* 1964 U.S.C.C.A.N 3782.........................................14, 21


## OTHER AUTHORITIES

Hans Smit, *American Assistance to Litigation in Foreign and International*
   *Tribunals: § 1782 of Title 28 of the U.S.C. Revisited,*
   25 Syracuse J. Int'l L. & Com. 1 (1998) .........................................................10, 11, 20, 21

9 MOORE'S FEDERAL PRACTICE § 45.04 (2004)...................................................................14, 15

## INTRODUCTION

In May of this year, Petitioner, Norex Petroleum Limited ("Norex"), filed a petition asking this Court to approve the issuance of a Subpoena to non-party BP America Inc. ("BP America") pursuant to the terms of 28 U.S.C. § 1782(a), which "authorizes, *but does not require*, a federal district court to provide judicial assistance to" litigants in foreign proceedings. *Intel Corp.* v. *Advanced Micro Devices*, 124 S. Ct. 2466, 2473 (2004) (emphasis added). The Subpoena sought various documents relating to "allegations that" a business partner of BP America's overseas affiliates, Tyumen Oil Company ("TNK"), has engaged in misconduct in "Russia generally." These documents assertedly bear some relation to a Canadian insurance coverage dispute instituted by Norex two years ago to which neither BP America nor TNK is a party. BP America objected to the Subpoena, and Norex now has brought a Motion to Compel (the "Motion").

As set forth in more detail below, judicial enforcement of the Subpoena would not be an appropriate exercise of this Court's discretion under 28 U.S.C. § 1782 because, *inter alia* (1) the documents sought by the Motion concern events several years prior to and not connected with the theory of liability asserted in the Canadian litigation; (2) a U.S. court recently denied Norex access to many of the same BP America documents in a lawsuit brought by Norex in New York — a fact that Norex did not disclose to this Court in its § 1782 petition and that Norex obscures even in the pending Motion; (3) contrary to fundamental principles of due process, Norex provided no notice of its § 1782 petition to BP America, in spite of the fact that it could reasonably have expected from its previously unsuccessful attempt to obtain the documents that BP America would oppose the Subpoena — a tactical ploy that is now requiring this Court to revisit all the issues raised in the

petition; (4) Norex is seeking to require BP America, *not a party to any relevant litigation*, to produce documents that are mainly located in the United Kingdom, Russia and other locations outside of the permissible reach of § 1782; and (5) it is fundamentally inequitable to require a non-party like BP America to provide discovery for a foreign proceeding where a *forum non conveniens* motion to dismiss has been asserted by the primary defendant, thus placing the future course of the entire litigation in doubt. Indeed, a similar *forum non conveniens* argument resulted in the dismissal of the New York case where Norex first sought — and was denied discovery of — BP America's documents.

## BACKGROUND

### A. Events in Russia

A brief description of events in Russia is necessary to understand Norex's argument for why this Court should order BP America to produce documents, and to understand why that argument is fatally flawed.

In 1997, BP America's U.K.-based parent, BP p.l.c., purchased an indirect interest in a Russian firm called Chernogorneft, which subsequently slipped into bankruptcy. The Motion's section entitled "BP's Knowledge of TNK's Corruption" is devoted *exclusively* to an episode in 1999 involving that bankruptcy. (Motion at 4-5; *see also id.* at 2, 12.) The Motion contends that the 1999 Chernogorneft bankruptcy proceedings caused a dispute between TNK and BP p.l.c. The Motion, however, also reflects that TNK and BP p.l.c. settled their differences over the bankruptcy proceedings at the end of 1999, and subsequently entered into a joint venture in Russia. (Motion at 4-5.)

The chronology in this case is important because even a cursory review of the complaint in the Canadian case reveals that it is centered on an entirely different event in

Russia, which occurred roughly two years *after* the 1999 Chernogorneft bankruptcy. The Canadian complaint's theory of liability is that Norex is entitled to insurance proceeds for injuries "caused as a result of a Sudden and Unexpected Event" under the terms of an insurance policy. (Motion, Ex. C ¶¶ 31-32.) This "Sudden and Unexpected Event" is said to be the illegal takeover by TNK in *June and July of 2001* of a Norex-controlled entity, ZAO Yugraneft Corporation ("Yugraneft"). (*Id.*)

The Canadian complaint leaves no doubt that this "Sudden and Unexpected Event" occurred long after the 1999 Chernogorneft bankruptcy dispute. To begin with, the coverage period for the insurance begins in October or November of 2000, nearly a year after the Chernogorneft bankruptcy dispute. (*Id.* ¶¶ 12, 24.) The complaint also reports that "TNK implemented the fraudulent and illegal scheme to acquire control of Yugraneft and to take over Yugraneft's property and assets *on June 29, 2001*." (*Id.* ¶ 9 (emphasis added).) A physical takeover of Yugraneft's main office by the newly elected general director also took place "[o]n June 29, 2001." (*Id.* ¶ 9.) Other offices allegedly were seized about one week later. (*Id.* ¶ 9.)

Nor are the 1999 Chernogorneft bankruptcy and the 2001 "takeover" *causally* related in any meaningful sense, even if one accepts every allegation in the Canadian complaint as true. In its 36-paragraph pleading, Norex included only one, half-paragraph reference to the bankruptcy:

> [In a 2001 lawsuit,] TNK claimed to have acquired the
> minority shares of Yugraneft from Norex's partner,
> Chernogorneft, ... which was stripped of its assets, including
> [a 2.7% interest in] Yugraneft, as the result of a corrupt
> bankruptcy proceeding instigated by TNK. Norex had a right
> of first refusal upon the minority shares of Yugraneft held by
> Chernogorneft which TNK ignored.

(Motion, Ex. C ¶ 8.)  Even if all of this is correct, Norex admits that immediately before the

"illegal takeover" two years later, it still held 97.3% of the shares of Yugraneft and

"exercised effective control and management of" the Russian firm.  (*Id.* ¶ 6.)  The question

of how Norex lost its shares and its control therefore must be answered by reference to

events in June and July of 2001.

        In sum, the Motion attempts to conflate 1999 Chernogorneft bankruptcy and

the alleged "illegal takeover" of Yugraneft in 2001 because Norex understands that unless

they are conflated it has no hope of justifying its attempt to obtain the documents it seeks.

Norex's real purpose is to go on a fishing expedition through BP America's files for what

even Norex calls "allegations" of misconduct by TNK.

**B.**    **Norex's Failed Attempts to Acquire the Same Documents in the U.S.**
        **District Court for the Southern District of New York**

        In 2002, when Norex instituted the Canadian litigation, Norex also sued TNK

and related entities and persons in the U.S. District Court for the Southern District of New

York under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §

1601 *et seq.*  In February 2004, Judge Swain granted the defendants' motion to dismiss the

complaint on *forum non conveniens* grounds.  He concluded that "Russia provides an

adequate alternate forum," and that both public and private interest factors "strongly favor

the Russian forum." *Norex Petroleum Ltd.* v. *Access Indus.*, 304 F. Supp. 2d 570, 584

(S.D.N.Y. 2004) ("*Norex III*") (attached as Exhibit 1).  The U.S. Court of Appeals for the

Second Circuit heard oral argument on Norex's appeal on October 26, 2004, and has not yet

rendered a decision.

        Unlike the Canadian case, which focuses on a "Sudden and Unexpected

Event" within a relatively recent insurance policy period, the New York case makes highly

detailed allegations of misconduct stretching back for many years.  Indeed, in an effort to

establish a "pattern of racketeering activity" under the RICO statute, Norex specifically

charged TNK with numerous acts of misconduct during the course of the 1999

Chernogorneft bankruptcy.  *See* Plaintiff's RICO Statement in *Norex Petroleum* v. *Access

Indus.*, No. 02 Civ 1499 (LTS)(KN) (S.D.N.Y.) dated Aug. 16, 2002 at 74, 89-90, 106-07

(attached as Exhibit 2).  Thus, while the documents sought by the Motion are entirely

peripheral to the Canadian case, they at least arguably would be relevant to the *merits* of the

New York case in the event that the merits are actually litigated; yet as discussed more fully

below, even in the New York case Norex's requests to require non-party BP America to

produce documents were denied by the court.

   After the New York court stayed discovery pending a decision on defendants'

motions to dismiss on *forum non conveniens* and other grounds, Norex moved to lift the stay

to obtain documents concerning allegations of corruption and bribery of Russian

government officials from a variety of sources, including BP America.  Previewing one of

the flawed arguments it is advancing in this Court, Norex claimed that documents on those

topics were needed to oppose the *forum non conveniens* motion.  The court rejected *all* of

Norex's document requests, holding that they ran "afoul of the proscription against

permitting a party to engage in extensive discovery that develops details going to the entire

case when a motion to dismiss for forum non conveniens" is pending.  *Norex Petroleum Ltd.*

v. *Access Indus.*, 2003 WL 1484269, at **1-2 (S.D.N.Y. Mar. 21, 2003) ("*Norex I*")

(attached as Exhibit 3) (citing *Piper Aircraft* v. *Reno*, 454 U.S. 235, 258 (1981)).  Just as

significantly, though, the court questioned the good faith of Norex's argument that the

documents related to the pending motion to dismiss.  "[I]t appears to the Court, from the

scope of the discovery demanded, that Norex is seeking to do indirectly what it cannot do
directly: obtain discovery germane to the merits of the underlying action." *Id.* at *2; *see
also id.* at *3 (describing Norex's requests for discovery on *res judicata* issues as "curious").
Now, Norex is masking its real motives again in this Court by contending that the same
documents are needed to defend the *forum non conveniens* motion in Canada.

Worse yet, Norex also has repeatedly obscured the fact that the New York
court specifically denied Norex's request for those documents. This fact was not reported in
the § 1782 petition that led the Court to authorize issuance of the Subpoena. And, even after
BP America pointed out the omission in its Written Objections, Norex continues to act
without full candor, stating in the Motion only that the New York "court granted Norex's
discovery requests in part and compelled BP to preserve certain documents." (Motion at 5.)

The facts reveal otherwise, of course. On February 18, 2003, Norex's
counsel delivered a letter request to the New York court for "leave to serve a subpoena *to
obtain documents from* BP-Amoco, Inc." (and, in the alternative, for leave to serve a
subpoena to preserve documents).[1] (Letter to Magistrate Judge Fox from Bruce Marks dated
Feb. 18, 2003, attached as Exhibit 4 (emphasis added).) Notably for purposes of the instant
Motion, the letter request nowhere suggests that BP America would have documents
relevant to the "illegal takeover" of Yugraneft in 2001. As noted above, this document
request and those directed at the parties to the litigation all were *denied*.

---

[1]    BP America is the parent of the corporation that used to be named "BP Amoco
Corporation." To avoid confusion, "BP America" is used here to refer to both
entities.

On a *voluntary* basis, however, BP America offered to preserve the documents. (Letter to Magistrate Judge Fox from Kim Koopersmith dated Feb. 28, 2003, attached as Exhibit 5.)  The court ruled that "given BP's apparent willingness to preserve [the documents], the issuance of a preservation subpoena seems reasonable." (Order, Mar. 14, 2003, attached as Exhibit 6.)  Norex then continued its efforts to over-reach by serving a subpoena that in the court's words "require non-party BP to preserve documents that were *not* addressed in plaintiff's initial request to the Court that it be permitted to serve the subpoena." (Handwritten Order at Motion, Ex. M (emphasis added).)  "Furthermore," the court continued, "the relevance" of the preservation demands to the New York case was "suspect."  (*Id.*)  Thus, the court was forced to modify even this preservation subpoena.[2] (*Id.*)

### C.     The Canadian Case

Norex filed the Canadian case in June 2002.  Thus, inconsistent with its current assertion that BP America's documents are "directly at issue" on "the face of the Canadian litigation pleadings," (Motion at 13), Norex waited *two years* before seeking the documents, and acted only after its attempts to obtain documents in New York were rebuffed and the New York litigation was dismissed.  The belated nature of this attempt to obtain discovery against BP America raises questions as to the real purpose of Norex's request.

---

[2]     The discovery rulings were made by a magistrate judge, but Judge Swain affirmed them all in an opinion where he concluded that Norex's discovery requests were "not in accordance with applicable law."  *Norex Petroleum Ltd.* v. *Access Indus.*, 2003 WL 21872389, at *2 (S.D.N.Y. Aug. 7, 2003) ("*Norex II*") (attached as Exhibit 7).

Norex's motives, in fact, have been questioned in the Canadian litigation from the beginning. In its Statement of Defence, defendant Chubb Insurance Company of Canada ("Chubb") reveals that "Norex and Norex controlled-Yugraneft did on at least one previous occasion bring claim against insurance coverage issued to them by Chubb and [its co-defendant, Ingosstrakh Insurance Company Ltd. ("Ingosstrakh")], *for the admitted and sole purpose of attempting to bring pressure to bear on TNK in an effort to resolve civil differences with TNK*, and not as a valid insurance claim." (Motion, Ex. D ¶ 18 (emphasis added).) "Now," Chubb continued, "Norex has been frustrated in its attempts to resolve its differences with TNK concerning the takeover of Yugraneft and brings this action merely in a further attempt to bring pressure to bear on TNK, and not as a valid insurance claim." (Motion, Ex. D ¶ 19.) Similarly, Norex's current attempt to trawl through a non-party's documents concerning a business partner that is also a non-party appears to be merely a further attempt to harass TNK.

In any case, Ingosstrakh, the defendant that according to Norex provided "first loss" or "primary coverage," (Motion, Ex. C ¶¶ 23, 25), has filed a motion to dismiss the claims against it on *forum non conveniens* grounds. (Motion, Ex. E.) The other relevant defendant, Chubb, provided only "excess insurance" according to Norex, in the event that "coverage was not available or not paid on the Ingosstrakh Policy." (Motion, Ex. C ¶ 23.) Chubb has not moved to dismiss yet, but it has raised several defenses that, if upheld, would dispose entirely of the Canadian litigation on grounds not relevant to whether TNK engaged in misconduct in Russia and thus do not implicate materials sought from non-party BP America. Those defenses are discussed in more detail in §§ II.B.3 and II.C, *infra*.

**D.     The CPI Litigation**

In September 2000, the Center for Public Integrity ("CPI") published an article about *inter alia* the 1999 Chernogorneft bankruptcy.  (Motion, Ex. N.)  The article included a number of allegations of improper and even illegal activity by individuals affiliated with TNK.  (Motion, Ex. N.)  Those individuals sued CPI for libel.  In early 2001, CPI served a subpoena on BP America on the theory that because of the 1999 dispute between BP p.l.c. and TNK over that bankruptcy, BP America might possess documents helpful in establishing the veracity of some of the article's propositions.  CPI was provided with approximately 350 pages of responsive materials pursuant to a confidentiality agreement that protected the material from further disclosure including, in some cases, disclosure even to the parties to the CPI litigation (as opposed to their counsel).[3]  (Motion, Ex. O.)  The last of these documents were turned over in May 2001, at least a month before the alleged "illegal takeover" of Yugraneft began.[4]

---

[3]     Of course, if this Court does order the production of any documents to Norex, BP America will seek to negotiate a confidentiality agreement similar to that agreed to in the CPI litigation and, in the event that negotiations fail, will seek a protective order from the Court.  *See* Fed. R. Civ. P. 45(c)(3)(B)(i).

[4]     Norex has also served CPI with a Subpoena pursuant to the § 1782 petition.  All of the reasons set forth as to why Norex's Motion to Compel should be denied also apply to production of the BP America documents in the possession of CPI.

## ARGUMENT

**I.    The Subpoena Should be Quashed Because Norex Has Violated Fundamental Due Process Principles and Obtained the Subpoena Without Full Disclosure to This Court**

As a threshold matter, Norex's Motion should be denied and the Subpoena quashed due to Norex's failure to provide notice of the § 1782 application that it filed with this Court over five months ago, on May 27, 2004.  BP America was entirely unaware of Norex's invocation of § 1782 with respect to discovery of BP America in connection with the Canadian lawsuit until BP America received the Subpoena several months later.  And even then, Norex failed to provide the § 1782 petition to BP America.  Nor did Norex indicate in any way that the petition existed or that this Court has issued an order affecting BP America's rights.

In the view of Professor Hans Smit, "the dominant drafter of, and commentator on" § 1782, *In re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689 (D.C. Cir. 1989) (Ruth Bader Ginsburg, *J.*), the filing of a § 1782 petition without notice to "the person who is to produce the evidence" is an "unconstitutional error."[5]  Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals:  § 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. &

---

[5]    Professor Smit "acted as the Reporter to the United States Commission on International Rules of Judicial Procedure, a body created by Congress first to study United States rules relating to litigation with international aspects, then to propose appropriate legislative reforms," including the modern version of § 1782.  *In re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d at 690 n.2.  All of the Commission's proposals were "accepted by Congress without change."  *Id.*  Professor Smit's influence remains very strong today:  in the § 1782 case decided by the Supreme Court earlier this year, *Intel Corp.* v. *Advanced Micro Devices*, 124 S. Ct. 2466, there are 19 citations to his work.

Com. 1, 16 (1998) [hereinafter "Smit, *American Assistance*"]. According to Professor Smit,

the error requires this Court to "consider assessing costs and attorney's fees against the party

that made the original application." *Id.*

   While it is correct, as Norex asserts (Motion at 9), that some courts have

ruled on *ex parte* applications under § 1782, they have refused to do so in circumstances

akin to this case. Because of Norex's experience with BP America in the New York

litigation, Norex could have reasonably anticipated BP America would resist the Subpoena

in the Canadian case. The question then is what, exactly, was the point of requiring this

Court to devote time to the application when in all likelihood the Court would have to revisit

the entire situation in the context of a motion to compel? In *In re Merck & Co.*, 197 F.R.D.

267 (M.D.N.C. 2000), the court recognized the inappropriateness of the *ex parte* approach

where the subpoena is likely to be contested, and firmly rejected the petitioner's arguments

"that every application made pursuant to 28 U.S.C. § 1782 is an *ex parte* matter in which no

other party or person may participate" and that "anyone wishing to contest [proposed

subpoenas] could only do so by filing a motion to quash the subpoenas after issuance." *Id.*

at 269. "Nothing in Section 1782 states that the application is to be made *ex parte*," the

court explained.[6]  *Id.* at 270. To the contrary, providing notice and an opportunity to be

---

[6]  Indeed, Norex cites only one case where a court explicitly endorsed the *ex parte*
  issuance of subpoenas under § 1782, and that case concerned letters rogatory issued
  in a *criminal* case by a foreign *court* — not a petition by a private party. *In re*
  *Letters Rogatory from the Tokyo District,* 539 F.2d 1216 (9th Cir. 1976).

heard to all interested persons when a subpoena is likely to be contested is necessary "to reduce disruption and conserve judicial resources."[7]  *Id.* at 271.

In addition, suppose that this Court denied the application after reviewing it. Would the Court of Appeals also have to consider the application *ex parte*, with the prospect of hearing it all over again in the event of a remand and subsequent issuance of the subpoena?  In *Al Fayed* v. *United States*, 210 F.3d 421 (4th Cir. 2000), the Court of Appeals for the Fourth Circuit nearly faced precisely the situation described by this hypothetical. The petitioner in that case applied *ex parte* to the district court for the issuance of a subpoena to a non-party, the United States.  Following denial of the application, the United States learned about the proceeding and intervened in the appellate court.  The appellate opinion illustrates the abusive potential posed by *ex parte* applications, on facts that appear strikingly similar to Norex's attempt to obscure its prior, unsuccessful attempt to obtain BP America's documents.  As the Fourth Circuit explained, upon intervening, the United States "informed us of a fact that [the § 1782 petitioner] *had failed to mention.*"  *Id.* at 423 (emphasis added).  This fact — that the government had already denied a Freedom of Information Act request by the petitioner "asking for precisely the same material as [the

---

[7]     The petitioner's behavior in *In re Merck* actually was less egregious than that of Norex here.  The *In re Merck* petitioner *did* at least provide notice of the petition to the non-party target of the subpoena.  *Id.* at 269.  The issue was whether the target and "interested parties" in the foreign litigation should be allowed any time to contest the petition itself, or whether those parties' only option would be to file a motion to quash after the subpoena was issued.  *Id.* at 269-71.

petitioner] now seeks under § 1782" — obviated the need to consider whether a remand was necessary on other grounds.[8] *Id.* at 423.

## II.    The Factors That Guide a Court's Discretion Under § 1782 and Rule 45 Weigh Overwhelmingly Against Enforcement of the Subpoena

### A.    In § 1782 Cases, the Choice of Whether to Order Discovery is Always Within the Discretion of the District Court

The Motion takes up 21 pages without ever explaining the legal standard that governs this Court's consideration of requests for discovery under § 1782.  In fact, the Supreme Court recently instructed district courts that they are "not required to grant a § 1782(a) discovery application" even when they "ha[ve] the authority to do so." *Intel Corp.* v. *Advanced Micro Devices*, 124 S. Ct. 2466, 2482 (2004); *see also id.* at 2473 (§ 1782(a) "authorizes, but does not require, a federal district court to provide judicial assistance to" litigants in foreign proceedings).  Instead, the questions of "[w]hether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court."[9]  *United Kingdom* v. *United States*, 238 F.3d 1312,

---

[8]    Even if this Court declines to adopt Professor Smit's suggestion that Norex be ordered to pay attorneys' fees for failing to notify a non-party that it could reasonably have expected would oppose the application, BP America believes that Norex should be required to notify its adversaries in the Canadian lawsuit that they are entitled to reconsider their position on the application with the benefit of BP America's submissions.  The district judge in North Carolina took a similar approach, requiring the petitioner to submit an amended application and allowing all interested parties time to respond. *In re Merck*, 197 F.R.D. at 274.

[9]    Accordingly, appellate review of a denial of a motion to compel under § 1782 "is extremely limited and highly deferential." *United Kingdom* v. *United States*, 238 F.3d at 1319; *cf. Tuite* v. *Henry*, 98 F.3d 1411, 1415 (D.C. Cir. 1996) (district court's rulings on discovery for domestic litigation may be reversed only for abuse of discretion).

1318-19 (11th Cir. 2001) (cited in *Intel*, 124 S. Ct. at 2482-83); *see also* S. REP. NO. 1580

(1964), *reprinted at* 1964 U.S.C.C.A.N. 3782, 3788 (explaining that the statute "leaves the

issuance of an appropriate order to the discretion of the court which, in proper cases, may

refuse to issue an order").  Moreover, the court may exercise its power to compel discovery

under the statute only for "a good reason." *Kestrel Coal Pty.* v. *Joy Global, Inc.*, 362 F.3d

401, 406 (7th Cir. 2004) (Easterbrook, *J.*).

Section 1782 incorporates "the Federal Rules of Civil Procedure" to the

extent that those rules do not conflict with the statute's terms.  § 1782(a).  As discussed

immediately below, both the discovery principles under Rule 45 — governing subpoenas to

non-parties in domestic litigation — and considerations unique to § 1782 discovery weigh

overwhelmingly against enforcement of the Subpoena.

### B.    The Burka Balancing Test for Rule 45 Subpoenas Compels Denial of Norex's Motion

*Burka* v. *U.S. Dep't of Health & Human Servs.*, 87 F.3d 508 (D.C. Cir. 1996)

describes the standard for evaluating whether to quash a subpoena under Rule 45 of the

Federal Rules of Civil Procedure.[10]  The case requires the district court to balance (1) the

"relevance" of the requested information "to the litigation at hand," (2) "the requester's need

for the information from this particular source," *i.e.*, the target of the subpoena, (3) "the

---

[10]    Though *Burka* literally refers to a motion for a protective order by a *party* under Rule 26(c), caselaw under that Rule is fully applicable to Motions to Quash by non-parties under Rule 45. *See* Fed. R. Civ. P. 45(c)(3), 1991 advisory committee's note (explaining that provisions allowing a court to quash a subpoena under Rule 45 "track[] the provisions of Rule 26(c)"); 9 MOORE'S FEDERAL PRACTICE § 45.04[3][a] (2004).  Of course, if anything, Rule 45 requires courts to be even more protective of non-parties than parties.

burden of producing the sought-after material," and (4) "the harm which disclosure would cause to the party seeking to protect the information." *Id.* at 517. As discussed in the next section *infra*, a Court also may deny enforcement solely on the ground that the subpoena was issued other than in good faith.

With regard to the first *Burka* factor, the documents simply are not relevant to the Canadian complaint on its face, for the reasons stated in the Background section, *supra*, at 2-4. Norex's attempts to ameliorate this fatal defect in the Motion are unavailing.

### 1.    Norex's Relevancy Arguments are Meritless

Norex's threshold argument on relevance is to assert erroneously that BP America simply has no standing to object on this ground.[11] (Motion at 10.) Norex next tries to establish the relevancy of the documents by attempting to tie them to its complaint by highlighting one phrase from the pleading, which charges that in 1999 the Chernogorneft firm was stripped of its assets "**as a result of a corrupt bankruptcy proceeding instigated by TNK**." (Motion at 12 (emphasis in original).) As explained in the Background section, *supra*, at 2-4, the reference to the 1999 bankruptcy is peripheral — since it affected less than 3% of Yugraneft's shares — and has practically nothing to do with the theory of liability set forth in the Canadian litigation.

---

[11]     Thus, this argument simply demonstrates Norex's recognition that it cannot meet a relevance challenge on the merits. "[R]elevance," of course, "is *obviously* a consideration" in a § 1782 case where documents are sought from a non-party like BP America. *United Kingdom* v. *United States*, 238 F.3d at 1320 (emphasis added). This is also the rule in a standard Rule 45 case. 9 MOORE'S FEDERAL PRACTICE § 45.04[3][a]. The statement by the Pennsylvania district court cases cited by Norex is *dictum* that has been rejected specifically. *Compaq Computer* v. *Packard Bell Elecs.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).

Norex further claims that the documents are "germane" to the defense it intends to mount against Ingosstrakh's motion to dismiss on *forum non conveniens* grounds. (Motion at 13.) As previously detailed (*see supra,* at 5-6), Norex tried unsuccessfully to assert precisely the same argument in the New York action when a *forum non conveniens* motion was pending there, and the New York court dismissed the argument as a veiled attempt to collect discovery on the merits of that much broader case. Finally, Norex posits that the documents are "relevant for cross-examination" of Ingosstrakh's experts on the *forum non conveniens* motion. Norex again fails to disclose that this precise argument, too, was rejected by the New York court. *See Norex I*, 2003 WL 1484269, at *2-3 (ruling that Norex was entitled to only the basic disclosures concerning the experts' background and other items outlined in Fed. R. Civ. P. 26(a)(2), "Disclosure of Expert Testimony").

### 2.   The Last Three *Burka* Factors Also Demonstrate that the Motion Should be Denied

The last three *Burka* factors — the requester's need for the information "from this particular source," the burden imposed on the target, and the harm which disclosure would cause to the target — also weigh strongly against enforcing any Subpoena against non-party BP America. Norex, which itself has had extensive dealings in Russia and a long history of interaction with TNK, has offered absolutely no reason for why it might have a "need" for documents from BP America in "particular." *Cf. Norex I*, 2003 WL 1484269, at *4 (noting that Norex must itself possess "factual information ... upon which it can show that the Russian judicial system does not" adjudicate disputes fairly, since it had to have a "good faith basis for asserting" that proposition in its complaint). And BP America would be both burdened and harmed by an order permitting a fishing expedition through its files for "allegations" of misconduct by one of its business partners.

### 3. The Canadian Court May Never Even Consider the Merits of Norex's Claims

While one of Chubb's defenses is that TNK's actions all were in accordance with Russian law, (Motion, Ex. D ¶ 16), Chubb raises many other defenses that do not turn at all on the issue of what TNK did or did not do — the only issue to which BP America's documents are asserted to be relevant. (Motion at 12-14.) Some of these other asserted defenses could be the basis for a disposition that would require *no* inquiry into Norex's allegations about TNK's behavior. In light of "the character of the proceedings underway abroad," *Intel*, 124 S. Ct. at 2483, therefore, it is at best premature to consider a document request to a non-party like BP America.[12] *Cf. Kestrel Coal Pty.*, 362 F.3d at 406 (holding that where the foreign court has determined that there is no *current* need for the documents, the § 1782 application in the United States for the documents must be denied, and noting that "[i]f, however, the documents become important later," the § 1782 process may be renewed).

Chubb's most significant "non-merits" defense is based on the fact that Ingosstrakh provided Norex with the "primary" or "first loss" coverage, whereas Chubb is merely an excess carrier. Thus, Chubb argues that Norex is "obligated to vigorously pursue recovery from. . . Ingosstrakh Coverage *ahead of the Chubb Policy*.". (Motion, Ex. D ¶¶ 3(g), 27-28 (emphasis added).) Norex, in fact, appears to concede the strength of this contention when it admits in its complaint that Chubb only provided "excess insurance" in

---

[12]    As it did with respect to the New York litigation, BP America has directed its employees to ensure that the documents requested by the Subpoena are properly preserved until the conclusion of the Canadian litigation and, on a voluntary basis, its parent, BP p.l.c., a U.K. company, has directed employees of BP America's overseas affiliates to do the same.

-17-

the event that "coverage was not available or not paid on the Ingosstrakh Policy." (Motion, Ex. C ¶ 23). In any case, it seems that if Ingosstrakh is dismissed on *forum non conveniens* grounds, then Chubb might be able to secure dismissal as well — or at least a stay — pending the outcome of any proceeding Norex chooses to institute against Ingosstrakh in Russia. Accordingly, this Court should conclude — as the New York court did — that it would be inequitable to subject a non-party such as BP America to burdensome discovery before resolution of threshold issues in the Canadian case.

### C.    Evidence that Norex is Proceeding Other Than in Good Faith Provides a Wholly Independent Reason for Declining to Enforce the Subpoena

Independent of the *Burka* factors discussed above, this Court, of course, is "free to deny the application in toto" if it determines that Norex's "application under section 1782 [was] made in bad faith ... or unreasonably seeks ... irrelevant materials." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995); *see Schlagenhauf* v. *Holder*, 379 U.S. 104, 117 (1964) (explaining that courts may "terminate" the "use of discovery devices so as to prevent ... their use in bad faith"); Fed. R. Civ. P. 45(c)(3), 1991 advisory committee's note ("Paragraph (c)(3) explicitly authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power."). There is clearly a basis for cynicism as to Norex's motives and conduct in this matter, and the Supreme Court has recently explained that § 1782 cases should be dismissed where the foreign litigation is a "pretext[]" for obtaining documents under the statute. *Intel*, 124 S. Ct. at 2484. The Court should note:

- Norex waited two years to seek documents from BP America that it now claims are "directly at issue ... on the face of the Canadian litigation pleadings." (Motion at 13).

-18-

- Norex submitted a similar request for documents in the New York case on BP America and others purportedly aimed at *forum non conveniens* issues, when in fact, as the New York court found, Norex's veiled motive was to obtain discovery on the merits of that case. *Norex I*, 2003 WL 1484269, at **2-3.

- Norex then served a retention subpoena on BP America that, in the New York court's opinion, was inconsistent with representations by Norex to the court and identified documents whose relevance was "suspect." (Handwritten order at Motion, Ex. M.)

- Norex submitted an application to this Court under § 1782 without notice to BP America even though it could reasonably have expected that BP America would oppose it, and without informing this Court that the New York court already had refused to order production of requested documents.

- Chubb has alleged in the Canadian litigation that Norex "did on at least one previous occasion" make an insurance claim "for the admitted and sole purpose of attempting to bring pressure to bear on TNK in an effort to resolve civil differences with TNK," and Chubb believes that the Canadian case is "merely [a] further attempt to bring pressure to bear on TNK," not "a valid insurance claim." (Motion, Ex. D ¶¶ 18-19.)

- Chubb has cited additional evidence of what it describes as "Norex['s] Bad Faith": Norex has "prevented Chubb from completing a full or sufficient investigation of the alleged loss" and failed "to provide Chubb with access to all" records and reports pertinent to Norex's claim. (Motion, Ex. D ¶¶ 7-9, 18-20, 22.) Chubb has asserted in the Canadian litigation that this failure to cooperate "preclude[s]" Norex "from maintaining [the insurance] action," regardless of what TNK did or did not do. (Motion, Ex. D ¶ 8.)[13]

## III.    Section 1782 Does Not Authorize the Production of Documents Located Outside of the United States

Norex has failed to cite a single case in which a court permitted the use of

§ 1782 to obtain documents located outside of the United States — a clear reflection of the

---

[13]    Though less is known about Norex's involvement in judicial proceedings in Russia, the New York court revealed that Norex made a "strategic choice" by declining "to participate in" the Russian judicial proceedings that decided the fate of its allegedly misappropriated property, "even to contest the court's jurisdiction," and filed the New York case two days after time to appeal had expired. In Judge Swain's words, "Clearly," Norex had an adequate "forum and waited for it to become unavailable." *Norex III*, 304 F. Supp. 2d at 575, 578-79.

fact that the "drafters of Section 1782 did not anticipate recourse to Section 1782 for this

purpose." Smit, *American Assistance*, *supra*, at 11.  Indeed, all of the cases cited by Norex

to support its view that no territorial limits apply to the statute actually involve discovery in

support of *domestic* litigation, not discovery under § 1782.  (Motion at 16.)  Professor Smit

has explained, in detail worthy of an extended quotation, the "potent" policy reasons for

limiting the statute's territorial reach, as well as the rationale for why those limits should be

different from those imposed on discovery in support of domestic litigation:

> First, the evident purpose of Section 1782 is to make available
> to foreign and international tribunals and litigants evidence to
> be obtained in the United States.  Thus, a harmonious scheme
> is established: Evidence in Spain is obtained through
> proceedings in Spain, evidence in Great Britain is obtained
> through proceedings in Great Britain, and evidence in the
> United States is obtained through proceedings in the United
> States. ...

> [Next,] if Section 1782 could be used for [non-U.S.
> discovery], American courts would become clearing houses
> for requests for information from courts and litigants all over
> the world in search of evidence to be obtained all over the
> world.  And the burden to produce that information would be
> imposed on persons in the United States who have operations
> abroad. ... Federal courts and American business should not
> be saddled with such significant burdens in the absence of a
> legislative intent clearly expressed.

> [Finally,] if American courts were to assume the role of
> clearing houses for world-wide information gathering,
> conflicts with foreign countries would inevitably arise.  These
> conflicts have already arisen when American courts and
> litigants seek information abroad for use in American courts.
> They would be substantially aggravated if American courts
> were to seek to impose their information gathering procedures,
> generally unknown in foreign countries that do not belong to
> the family of common law systems.  It is one thing for
> American court to insist that its procedures be used in aid of
> American litigation but quite another to impose them on
> actions brought in foreign courts.

Smit, *American Assistance*, *supra*, at 11-12 (internal footnotes omitted). The Supreme Court's recent opinion on § 1782 reinforces the importance of avoiding interference with the discovery practices — not to mention the sovereignty — of countries like the United Kingdom and the Russian Federation, where Norex hopes to find responsive documents. *Intel*, 124 S. Ct. at 2483 (instructing district courts to "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country").

For these reasons, when the question of § 1782's extraterritorial effect was squarely presented in *In re Application of Sarrio, S.A.*, 1995 WL 598988 (S.D.N.Y. Oct. 11, 1995), Judge Patterson held that the statute may not be used to collect evidence located abroad. *Id.* at *2, *remanded for reconsideration on other grounds*, 119 F.3d 143, 147 (2d Cir. 1997) (finding it unnecessary to reach this issue because of a "change of circumstances on appeal," but noting the persuasiveness of Professor Smit's position and opining that "there is reason to think that Congress" held the same view); *see also Four Pillars Enterps. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079-80 (9th Cir. 2002) (affirming the district court's refusal to allow non-U.S. discovery under § 1782, since there was no evidence that the target of the subpoena "was evading § 1782 by spiriting materials out of the United States"). *Sarrio* correctly noted that its holding finds strong support in § 1782's legislative history, which explains that the purpose of the law is to assist foreign litigants "in obtaining oral and documentary evidence *in the United States*." S. REP. NO. 1580, *reprinted at* 1964 U.S.C.C.A.N. at 3788 (emphasis added). [14]

---

[14]    Moreover, documents located outside of the United States are in the custody of BP America's overseas corporate affiliates, not BP America. As Judge Easterbrook

(continued ...)

## IV. Norex's Subpoena Should be Quashed on the Grounds Set Forth in Paragraphs 9-16 of BP America's Written Objections, Which Identify a Host of Generic Defects in the Subpoena That Make It Overly Broad and Unduly Burdensome

Paragraphs 9-16 of BP America's Written Objections identify a series of

unreasonable definitions and instructions, each one of which independently renders the

Subpoena unenforceable as either overly broad or unduly burdensome (or both).  (Motion,

Ex. B ¶¶ 9-16.)  To take just one example, the Subpoena does not identify a date before

which documents may be deemed non-responsive — or even a cut-off date, for that matter,

since Instruction A purports to impose a continuing obligation to collect materials.[15]

---

(... continued)

recently explained in a § 1782 case, even courts "managing international discovery" for use in domestic litigation have recognized the "legal distinctness" of non-U.S. entities within an international holding company's structure, and accordingly have refused to hold a U.S. corporation responsible for producing documents held in the custody of a foreign affiliate absent evidence that the corporate veil should be pierced or other unique circumstances.  *Kestrel Coal Pty*, 362 F.3d at 405 (citing *Gerling Int'l Ins. Co.* v. *CIR*, 839 F.2d 131, 141 (3d Cir. 1988) (holding that a Delaware corporation could not be required to produce to the Internal Revenue Service documents in the custody of a Swiss corporation even though both corporations were presumed to be under the common control of a U.S. citizen)).  This rule is all the more applicable in a § 1782 proceeding (particularly one involving a non-party) where unique policy reasons disfavor extraterritorial discovery as a general matter.  *See Kestrel Coal Pty.*, 362 F.3d at 405.

[15]  The Written Objections also object to the Subpoena to the extent that it would require the production of documents that are protected by the attorney-client privilege or work-product doctrine.  (Motion, Ex. B ¶ 7; *see* § 1782 (prohibiting discovery "in violation of any legally applicable privilege"); Fed. R. Civ. P. 45(c)(3)(A)(iii).  Norex argues fallaciously that BP America waived any claim of privilege because the Written Objections did not include the privilege log described in Fed. R. Civ. P. 45(d)(2).  (Motion at 17.)  The D.C. Circuit has squarely rejected this argument, holding that "[c]ommon sense and the purpose of [Rule 45] dictate that" the privilege log required by Rule 45(d)(2) need not "be provided at the time [of] the initial objection."  *Tuite* v. *Henry*, 98 F.3d 1411, 1416-17 (D.C. Cir. 1996).  The log, instead, must be filed "within *a reasonable time*."  *Id.* (emphasis in original).  BP America will, of course, provide a privilege log if and when this Court orders the production of any documents.

## CONCLUSION

For the reasons set forth above, non-party BP America requests that this Court

deny Norex's Motion to Compel compliance with the Subpoena and grant BP America's

Cross-Motion to Quash.

Dated:  December 2, 2004

_____
Daryl A. Libow (D.C. Bar # 446314)
Joseph J. Reilly (D.C. Bar # 480824)

SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC  20006-5085
Telephone:  (202) 956-7500

Attorneys for Non-Party
BP America Inc.
1776 I Street, N.W.
Suite 1000
Washington, D.C. 20006

## CERTIFICATE OF SERVICE

I, Joseph J. Reilly, hereby certify that I have, this 2nd day of December,

2004, caused the foregoing Response to Norex Petroleum Limited's Motion to Compel

and Cross-Motion to Quash or Modify to be served via first class mail upon:

Bruce Marks, Esq.
Marks & Sokolov, LLC
1835 Market Street, 28th Floor
Philadelphia, PA  19103

J. Robert Black, Q.C.
Brownlee LLP
Suite 2200, Commerce Place
10155 - 102 Street
Edmunton, AB Canada T5J 4GB

Havelock B. Madill, Q.C.
Brownlee LLP
Suite 2200, Commerce Place
10155 - 102 Street
Edmunton, AB Canada T5J 4GB

Gene J. Bodnar, Q.C.
Macleod Dixon LLP
3700 Canterra Tower
400 Third Avenue SW
Calgary, Alberta
Canada T2P 4H2

_Joseph Reilly_
Joseph J. Reilly