FROM MARKS & SOKOLOV                    (TUE) 2.18'03 16:51/ST. 16:49/NO. 4864984581 P 2

# MARKS & SOKOLOV, LLC

ATTORNEYS AT LAW

1835 MARKET STREET, 28TH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
TELEPHONE (215) 569—8901
FAX (215) 569—8912

BRUCE S. MARKS ESQUIRE
LICENSED IN PENNSYLVANIA, NEW JERSEY AND S.D. NEW YORK
EMAIL ADDRESS: MARKS@MSLAW.CC
WWW.MARKS-SOKOLOV.COM

February 18, 2003

**VIA FACSIMILE (to Chambers w/o Exhibits) & OVERNIGHT DELIVERY**

Honorable Kevin Nathaniel Fox
United States Magistrate Judge
c/o Clerk of the District Court
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007-1581

      Re:    Norex Petroleum Limited v. Access Industries, Inc., et al
               Civ. Act. No. 02-CV-1499 (LTS) (KNF)

Dear Judge Fox:

      I am writing on behalf of Plaintiff Norex Petroleum Limited to supplement our prior request for discovery related to the forum non conveniens issue and the location of witnesses and documents based on newly obtained information. Specifically, we ask leave to serve a subpoena to obtain documents from BP-Amoco, Inc., which is now a 50% shareholder of Defendant Tyumen Oil Co. ("TNK"); alternatively, if the Court does not grant leave to serve the subpoena to obtain the documents, we ask leave to serve a subpoena to preserve the documents.

      By letter dated October 19, 2001, Norex requested documents related to Defendants from the U.S. Export Import Bank (the "Ex-Im Bank") through the Freedom on Information Act, 5 U.S.C. §552. Finally, after numerous delays, the Ex-Im Bank provided a substantial number of documents in early February, 2003. We have now reviewed these documents and uncovered letters from the Michael Townshend, Director of International Affairs, in BP-Amoco Corp.'s Washington, DC office, to the Ex-Im Bank regarding TNK's illegal conduct. A copy of one letter dated October 1, 1999 is attached (Exhibit A).

      As Your Honor may recall, the Complaint alleges that TNK, along with various American Defendants, including Access Industries, Inc., Renova, Inc., Leonard Blavatnik, and Victor Vekselberg, corrupted legal proceedings in Russia, including the bankruptcies of companies which were subsidiaries of Sidanco, in which BP-Amoco had an interest. One of these subsidiaries was Nizhnivartovsk Nefte Gas ("NNG"), which owed oil to Yugraneft. As a result of this illegal

:OM MARKS & SOKOLOV                              (TUE) 2.18'03 16:51/ST. 16:49/NO. 4864984581 P 3

# MARKS & SOKOLOV, LLC

TORNEYS AT LAW

e Honorable Kevin Nathaniel Fox
bruary 18, 2003
ge 2

conduct, by letter dated December 21, 1999 (Exhibit B), Secretary of State Madeline Albright instructed the Ex-Im Bank not to issue loan guaranties benefiting TNK until the matter was resolved. Ultimately, some of the purloined assets were returned and the loan guaranties were issued. Complaint, ¶¶ 9, 175-79.

Mr. Townshend's letter states, as follows:

> As part of our own investigation we have collected considerable data detailing the diversion of funds from Sidanco subsidiaries under external management ... I would be happy to share this information with you, or your staff at your convenience.

Based on Mr. Townshend's letter, we believe that BP-Amoco has substantial documents which support Plaintiff's claims. The subpoena would seek, inter alia, documents in BP-Amoco's possession regarding Defendants' involvement with Sidanco and its subsidiaries, including NNG, and any illegal conduct or diversion of funds from these companies involving Defendants.

These documents are almost certainly in English and are likely to identify witnesses in either the United States or England with personal knowledge of TNK's illegal conduct. The location of witnesses and documents is directly relevant to the "private interest" factors set forth in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947). As set forth in the news article dated February 12, 2003, BP-Amoco just announced a purchase of 50% of TNK for US $6.75 billion. (Exhibit C). Given its now close association with Defendant TNK, BP-Amoco cannot be considered as an entirely separate party wholly unrelated to the instant action. Therefore, as has been extensively briefed previously, the Plaintiff should be allowed to obtain the documents in possession of BP-Amoco in the course of the forum non conveniens discovery.

Alternatively, if the Court does not grant the request to serve the subpoena to produce documents at this time, Plaintiff requests leave to serve a subpoena to preserve all documents in BP-Amoco's possession relevant to the instant litigation, to be subsequently produced during general discovery. This relief is permitted by the Federal Rules of Civil Procedure. See 8 Wright & Miller, Federal Practice and Procedure, §2046.1, at 592 ("[t]he moratorium [on discovery prior to Rule 26(f) conference] may be removed by court order ... [upon] some showing of good cause"). This court has repeatedly granted similar relief. For instance, in Trump v. Hyatt Corp., 1994 U.S. Dist. Lexis 5624 (S.D.N.Y. April 29, 1994), the court held that

> [while] the totality of circumstances persuades [the court] that it is the better course to stay enforcement of th[e] nonparty subpoenas until subject matter jurisdiction has been clarified and ... the dispositive motions have been decided[,] [i]n order that there be no possibility of prejudice, ... all recipients of the non-party

1835 MARKET STREET, 28TH FLOOR, PHILADELPHIA, PA. 19103, USA
1 CHURCH ROAD, SUITE 105, CHERRY HILL, NJ 08002, USA   ❖   6 KRASNOPRESNENSKAYA NAB. 5TH FLOOR, 123100 MOSCOW, RUSSIA

ROM MARKS & SOKOLOV					(TUE) 2. 18' 03 16:51/ST. 16:49/NO. 4864984581 P 4

# MARKS & SOKOLOV, LLC

ATTORNEYS AT LAW

The Honorable Kevin Nathaniel Fox
February 18, 2003
Page 3

    subpoenas [must] preserve from destruction and faithfully retain all documents covered by the subpoenas.

Id. at * 7[1]. Similarly, leave to serve preservation subpoenas is routinely granted in securities litigations. See, e.g., In re Emex Corp. Sec. Litig., 2001 U.S. Dist. Lexis 19785 (S.D.N.Y. Nov. 30, 2001) (granting plaintiff's motion to serve document preservation subpoenas on four non-parties "in view of the desirability of ensuring that potentially relevant documents are not destroyed during the pendency of defendants' dismissal motion"); Novak v. Kasaks, 1996 U.S. Dist. Lexis 11778 (S.D.N.Y. Aug. 16, 1996) (staying discovery after filing of motion to dismiss pursuant to Private Securities Litigation Reform Act, but ordering third parties to preserve documents). The documents that BP-Amoco has in its possession constitute important evidence necessary for the proper adjudication of the instant case. A preservation subpoena will ensure that discoverable material is preserved and any possible prejudice to Plaintiff which could potentially be caused by destruction of relevant evidence is avoided. Moreover, such preservation subpoena will not prejudice Defendants or unnecessarily inconvenience BP-Amoco. See, e.g, In re Grand Casinos, Inc. Securities Litigation, 988 F. Supp. 1270, 1272 (D. Minn. 1997) (allowing service of preservation subpoenas and noting that they would not subject third-parties to "intrusive investigation"). We should note that in the Base Metal Trading S.A. v. Russian Aluminum litigation to which Defendants constantly refer, Judge Koeltl granted Plaintiffs' requests to serve preservation subpoenas on numerous third parties. See April 2, 2001 Order of Hon. John G. Koeltl (Exhibit E).

    For the above reasons, the Court should grant Plaintiff leave to serve a subpoena on BP-Amoco to produce, or, at a minimum, to preserve, the relevant documents in its possession.

                            Respectfully submitted,

                            Bruce S. Marks
                            David A. Niles
                            For: Marks & Sokolov, LLC

                            Harris N. Cogan
                            For: Blank Rome LLP
                            Attorneys for Plaintiff

c:    Hon. Kevin Nathaniel Fox (courtesy copy to chambers, via overnight delivery)
       All Defense Counsel of Record (via facsimile & regular mail)

---

Copies of all unpublished opinions cited herein are attached as Exhibit D.

---