**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

**NOREX PETROLEUM LIMITED**

        **Petitioner,**

        **v.**                **No. 1:04-MC-00281-CKK**

**CHUBB INSURANCE COMPANY**
**OF CANADA, et al.**

        **Respondents.**

_____

**NOREX PETROLEUM LIMITED'S**
**STATEMENT OF POINTS OF LAW AND AUTHORITY**
**IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND**
**OPPOSITION TO BP AMERICA INC.' S CROSS-MOTION TO QUASH SUBPOENA**

Bruce S. Marks, Esq.
Gene M. Burd, Esq.
MARKS & SOKOLOV, LLC
1835 Market Street
28th Floor
Philadelphia, PA 19103
215-569-8901

Attorneys for Petitioner
Norex Petroleum Limited

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................1

**BACKGROUND** ......................................................................................3

    A.    BP'S UNDISPUTABLE RELEVANT KNOWLEDGE ............................3

    B.    THE IRRELEVANT NEW YORK DECISION .........................................4

    C.    THE CANADIAN CASE ..........................................................................5

    D.    THE CPI LITIGATION.............................................................................7

**ARGUMENT IN SUPPORT OF MOTION TO COMPEL AND IN OPPOSITION
TO THE CROSS MOTION** ...................................................................8

I.    THE SUBPOENA WAS PROPERLY ISSUED WITH ALL PROPER
DISCLOSURE ............................................................................................8

    A.    NOREX WAS NOT REQUIRED TO SERVE BP WITH THE
PETITION...................................................................................................8

    B.    NOREX WAS NOT REQUIRED TO DISCLOSE THE
IRRELEVANT NEW YORK DISCOVERY DECISIONS .....................10

II.    ALL RELEVANT FACTORS SUPPORT ENFORCING THE SUBPOENA
PURSUANT TO THE UNDERLYING POLICIES OF §1782 ...........................11

    A.    THE MOTION SHOULD BE GRANTED BECAUSE THE
DOCUMENTS ARE CRITICAL TO THE CANADIAN CASE.............13

        1.    BP Has No Standing To Contest Relevance...................................13

        2.    BP Has Not Met Its Burden of Establishing That the
Documents Are Irrelevant ..............................................14

            (a) The Documents Are Relevant to Ingosstrakh's *Forum
Non* Motion..............................................................16
            (b) The Documents Are Relevant to the Merits of the Case .........16
            (c) The Canadian Court Will Hear the Merits of the Case...........17

        3.    BP Has Unique Knowledge .........................................17

        4.    No Burden Is Imposed On BP .....................................18

5. No Harm Will Be Imposed On BP ...................................................18

B. NOREX HAS PROCEEDED WITH COMPLETE GOOD FAITH .........19

III. §1782 PERMITS THIS COURT TO COMPEL PRODUCTION OF DOCUMENTS LOCATED OUTSIDE OF THE UNITED STATES WHICH BP CONTROLS ......................................................................................19

A. PRODUCTION OF DOCUMENTS UNDER BP'S CONTROL OUTSIDE OF THE UNITED STATES SHOULD BE COMPELLED UNDER RULE 45........................................................................................20

B. PRODUCTION OF DOCUMENT UNDER BP'S CONTROL OUTSIDE OF THE UNITED STATES SHOULD BE COMPELLED BASED ON THE POLICIES UNDERLYING §1782 ..............................21

IV. BP'S TECHNICAL OBJECTIONS ARE WITHOUT MERIT AND INTERPOSED IN BAD FAITH ...........................................................................22

V. BP'S CROSS-MOTION TO QUASH IS UNTIMELY ........................................24

**CONCLUSION** ..........................................................................................26

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

**NOREX PETROLEUM LIMITED**

      **Petitioner,**

      **v.**                        **No. 1:04-MC-00281-CKK**

**CHUBB INSURANCE COMPANY**
**OF CANADA, et al.**

      **Respondents.**

_____

**NOREX PETROLEUM LIMITED'S**
**STATEMENT OF POINTS OF LAW AND AUTHORITY**
**IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND**
**OPPOSITION TO BP AMERICA INC.' S CROSS-MOTION TO QUASH SUBPOENA**

**PRELIMINARY STATEMENT**

Pursuant to 28 U.S.C. §1782, this Court granted Norex Petroleum Limited's ("Norex")

petition to issue narrowly drawn subpoenas to obtain documents from three entities, including

BP America Inc. ("BP"), related to the Tyumen Oil Company's ("TNK") corruption of Russian

proceedings, including those involving its fraudulent and illegal scheme to seize oil field

equipment in which Norex had an insurable interest. (Norex's Motion to Compel (the

"Motion"), Ex. A, Rider at 1-2.)  Norex also seeks documents to establish the value of this

equipment. (Motion, Ex. A, Rider at 2.)

BP is uniquely situated to provide this information because it conducted an extensive,

highly publicized investigation of TNK's conduct from 1998 onward and now is the owner of the

equipment through its 50% interest in TNK-BP, a joint venture formed in 2003. These

documents, which include documents produced or preserved in U.S. litigation, are highly

relevant to the Canadian litigation and can easily be produced.   In opposition (the "BP

Opposition"), BP resorts to wild accusations of "unconstitutional error", bad faith, and distortions of the record to avoid compliance, apparently fearing embarrassment by the facts uncovered by its investigation.  BP's view of the law and facts is simply wrong.

BP was hardly "deprived" of "fundamental principles of due process" because it was not served with the underlying petition.   Neither 28 U.S.C. §1782 nor Fed.R.Civ.P. 45 require a litigant to supply a third party with the underlying pleadings; the pleadings are public record and, obviously, were obtained by BP.   Rule 45's regime by which a third party may serve objections or move to quash, which occurred instantly, satisfies due process concerns.  Nor is it "fundamentally inequitable" to require BP to produce documents simply because Ingosstrakh, the *minor* defendant in Canada, made a belated *forum non* motion.   These documents are relevant to opposing the *forum non* motion by showing how Russian courts can be corrupted and proving the merits of claims which will proceed against Chubb Insurance Co. of Canada, no matter how the Ingostrakh motion is decided.

In full accord with the twin purposes of §1782 to encourage foreign litigants to obtain discovery though American courts and foreign court to provide reciprocal assistance, the documents sought (1) are highly relevant to the Canadian proceeding, (2) situated uniquely in BP because of its extensive investigation of TNK's misconduct and ownership of TNK-BP, (3) easily produced by BP, in part because it has already preserved or produced these documents in other litigation in the United States; and (4) impose no recognizable harm to BP.  The Court should grant Norex's motion and deny BP's untimely cross-motion.[1]

---

[1] Contrary to BP's assertion, the discovery rulings in the *Norex Petroleum Limited v. Access Industries, et al.* proceeding in New York are completely irrelevant to the instant petition.  In New York, *all* defendants moved to dismiss for *forum non* and obtained a stay of discovery.   In this litigation, no Canadian defendant opposes this or any other discovery.

**BACKGROUND**

**A. BP'S UNDISPUTABLE RELEVANT KNOWLEDGE**

BP cannot seriously dispute that it possesses documents of clear relevance to the

Canadian Litigation, whether related to TNK's corruption or Russian proceedings or the value of

the equipment.

As set forth in the Norex's Petition for Discovery (the "Petition"), as supplemented by

the Declaration of Alex Rotzang (the "Rotzang Decl."), Norex's chairman and principal, BP was

an investor in and managed Sidanco, an oil company which controlled Chernogorneft, another

oil company of which Sidanco was the majority owner.  (Petition, ¶ 25; Rotzang Decl. ¶ 3).

TNK took control over Chernogorneft through a corrupted bankruptcy in 1999, initially

siphoning off its profits and, ultimately, acquiring its assets for a song through an illegal auction.

(Petition, Ex. H.)[2]   BP's allegations of the corruption of these proceedings received worldwide

attention.  (Motion, Ex. F, H, J.) It was through these very same corrupted proceedings that TNK

obtained Chernogorneft's interest in Yugraneft in 2000, reduced Norex's interest in Yugraneft

from 98.6% to 60% in 2001, and, ultimately, took over Yugraneft through corrupted proceedings

and physical force in order to seize the oil equipment in which Norex has an insurable interest in

2001. (Rotzang Decl. ¶ 41.)

Contrary to BP's unsupported allegations, BP did not resolve its dispute with TNK in

1999.  (Rotzang Decl. ¶¶ 8-9.)  Rather, the assets which TNK purloined from Chernogorneft

were not returned until late 2001, and a final agreement by which BP became a 50% owner of

TNK-BP was not effected until July, 2003.  Declaration of Gene M. Burd (the "Burd Decl."), Ex.

---

[2] It is almost comical that BP would state that Chernogorneft "slipped into bankruptcy" in its
opposition while accusing TNK of misconduct when the events occurred.  (BP Opposition at 2,
Petition, Ex. H.)

A.  BP's implied assertion that its investigation of TNK did not continue beyond 1999 is simply false.  Rather, when it served its interests, BP's investigation of TNK included cooperation with Norex well through 2001; even though BP made its Faustian bargain with TNK in 2003, one could reasonably presume it continued to conduct due diligence, given that TNK was required to indemnify BP for loss resulting from Norex's claims.  (Rotzang Decl. at 14.)

In addition, BP mischaracterizes Norex's claims in the Canadian litigation.  (BP Opposition at 8, 17-18.)  While the claim under the Ingostrakh policy is premised on loss caused by a "Sudden and Unexpected Event", this includes *both* the corruption of the Russian court and the illegal seizure through physical force in 2001.  (Rotzang Decl., ¶ 38)  The claims against Chubb are based on "direct physical loss of or damage to" property in which Norex has an insurable interest through a fraudulent and illegal scheme.  (Motion, Ex. C ¶ 13, Rotzang Decl., ¶ 39-40.)  The Canadian Statement of Claim asserts that the corruption of the Chernogorneft bankruptcy, which included events affecting BP, was an integral part of this scheme. (Motion, Ex. C ¶¶ 8-10, Rotzang Decl., ¶ 41.)  The means by which TNK corrupted the Chernogorneft bankruptcy affecting BP are directly relevant to showing how TNK corrupted the *same* proceedings affecting Norex.

## B.  THE IRRELEVANT NEW YORK DECISION

As BP notes, in the *Norex v. Access* matter in New York, the magistrate judge denied Norex's motion to lift the stay of discovery in order to obtain documents from BP and merely permitted their preservation.  (BP Opposition at 4-7.)  This decision was based on the magistrate judge's erroneous conclusion that a party should not be permitted "extensive discovery that develops details going to the entire case when a motion to dismiss for *forum non conveniens*" is

pending.  (Burd Decl. Ex. B, at 4.)[3]  After some wrangling between Norex and BP, an

accommodation was reached by which numerous documents including documents responsive to

the instant subpoena were preserved.  (BP Opposition at 6-7.)

As explained below, putting aside that the later record in the Second Circuit establishes

the magistrate judge's decision was in error, it is irrelevant to the instant matter for a number of

reasons, including (1) the Canadian respondents do not object to discovery here; (2) the

documents are relevant to opposing Ingosstrakh's *forum non* motion for which discovery has

commenced in Canada; (3) the documents are relevant to proving merits for which discovery has

commenced in Canada; and (4) the Alberta Court will hear Norex's claims against main

defendant Chubb, regardless of any procedural issues.

### C.  THE CANADIAN CASE

BP makes the wild allegation, without support, that Norex has somehow delayed seeking

the instant documents, and, thus, the "belated nature" of the requests somehow establish some

sinister motive on Norex's behalf.  (BP Opposition at 7.)  BP then quotes unsupported

allegations by Chubb that the "sole purpose" of the Canadian litigation is to "bring pressure to

bear on TNK" and "not as a valid insurance claim."  (BP Opposition at 8.)  It falsely attempts to

portray Ingostrakh as the main Canadian defendant, stating that Chubb "provided only excess

insurance."  (BP Opposition at 8.)  BP also implies that Norex's claims against Chubb could be

resolved prior to a merits hearing.  (BP Opposition at 17-18.)  BP seriously misrepresents the

procedural posture of the Canadian litigation.

First, as set forth in the Declaration of Alex Rotzang, although the Canadian action was

filed on June 28, 2002, Ingostrakh did not file its belated *forum non conveniens* motion until June

---

[3] This decision was affirmed by the district court judge, who did not find the magistrate judge
abused his discretion. (Burd Decl., Ex. C.)

28, 2004, and Chubb did not produce its documents until April, 2004.  (Rotzang Dec. ¶ 23-28.)

Norex filed the Petition in May, 2004, just a month later, which hardly reflects a "belated

nature".

Second, Chubb's wild accusation that this is not a "valid insurance claim", (BP

Opposition at 8), is both unsupported by anything of record in Canada and wholly illogical.

Norex has made a claim for $11 million and wants to get paid.  (Motion, Ex. C at 10-12.)  It is

hard to conceive how this claim puts any pressure on TNK.  In any case, this assertion can be put

to rest because Norex will accept payment of its claim in full to end the Canadian litigation,

eliminating whatever perceived pressures Chubb's creative litigators believe are being put on

TNK.  (Rotzang Dec. ¶ 48.)

Third, the suggestion that Ingostrakh is the main defendant (BP Opposition at 8.) is

incorrect.  Norex brings claims against Ingostrakh to satisfy Chubb's policy requirement that it

vigorously pursue Ingostrakh, the first insurer.  (Rotzang Dec. ¶ 38.)  This condition is satisfied

regardless of how the *forum non conveniens* motion in Canada is resolved; if denied, Norex will

continue its claim against Ingostrakh in Alberta; if granted, Norex will take the position that the

required effort has been made.  (Rotzang Dec. ¶ 43-44.)   Norex never agreed to litigate against

Ingostrakh in Russia where its personnel were held-up at gun point and false criminal charges

have been brought against its principal, Alex Rotzang.[4]  (Rotzang Dec. ¶ 45.)

Finally, the notion that the action against Chubb will be resolved before the merits phase

is fanciful.  As set forth in the Declaration of Thomas H. Ferguson, Q.C., (the "Ferguson Decl."),

an Alberta solicitor with over 28 years of experience, the Alberta court will proceed first to

---

[4] The concern of the improper use of criminal proceedings in Russia is not unique to Norex.  The media reports that the American executives of the Yukos Oil Company, which recently filed bankruptcy in Texas, are unwilling to return to Russia for fear of false arrest.  (Burd Decl., Ex. D, at 3.)

complete discovery and then resolve the merits.  (Ferguson Decl.  ¶ 5.)  There is no conceivable

basis to suggest that merits discovery will be impeded.  In addition, as Mr. Ferguson states, the

hardly unsurprising procedure in Alberta is for the claimant to prove the merits and for the

defendant to contest plaintiff's evidence and establish its affirmative defenses.  (Ferguson Decl.

¶¶ 13.)  Thus, at the end of the day, the Alberta court will hear the case on the merits as against

Chubb, regardless of how the Ingostrakh motion is decided and regardless of any affirmative

defenses asserted by Chubb.  (Ferguson Decl. ¶ 14.)

### D.  THE CPI LITIGATION

As BP admits, principals of TNK brought litigation against the Center for Public Integrity

in this District.  (BP Opposition at 9.)  BP admits it produced 350 pages of documents in

response to CPI's subpoena relating to allegations of corruption and other illegal activities by

persons controlling TNK.  (BP Opposition at 9).  Plainly, these documents are located in the

United States and can be produced with no burden.[5]

---

[5] BP states that if the Court compels the production of documents, it will seek a protective order
to maintain their confidentiality.   BP fails to disclose that Norex offered to resolve this dispute
and was willing to consider such an agreement.   Instead, BP refused to produce any documents.
Given the expense and delay that BP has imposed on Norex, as well as its failure to seek a
protective order in its untimely cross-motion, the court should refuse to consider any future
requests in this regard.

### ARGUMENT IN SUPPORT OF MOTION TO COMPEL
### AND IN OPPOSITION TO THE CROSS MOTION

## I.   THE SUBPOENA WAS PROPERLY ISSUED WITH ALL PROPER DISCLOSURE

### A.  NOREX WAS NOT REQUIRED TO SERVE BP WITH THE PETITION

BP's principal argument is that the subpoena should be quashed because BP was not served with Norex's Petition is simply wrong.

First, as BP implicitly admits, nothing in §1782 requires a petitioner to serve the petition on the proposed subpoena recipient.   Moreover, BP itself argues that discovery under §1782 should take place pursuant to the Federal Rules of Procedure and cites Rule 45 as the appropriate procedure.  (BP Opposition at 14.)  Of course, nothing in Rule 45 requires the party serving the subpoenas to also serve the pleadings on the recipient.

Second, BP's chopped-up quote from Hans Smit's article is hardly persuasive authority.[6] The suggestion that the issuance of a subpoena without the participation of the recipient somehow constitutes "unconstitutional error" (whatever that might be), (BP Opposition at 10), shows a fundamental misunderstanding of the Rule 45 process; Professor Smit fails to distinguish between an order which authorizes the service of a subpoena from an order compelling production.[7]  Subpoenas are issued every day in federal litigation on the signature of counsel.   Rule 45 provides full due process protection to recipients by permitting them to serve

---

[6] BP's cite to *In re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686 (D.C. Cir. 1989) is misleading.  This decision simply recognized Professor Smit's role in drafting §1782; the decision in no way supports the argument that the recipient must be served with the petition.

[7] Professor Smit's misunderstanding of the process is compounded by his misunderstanding on the award of costs and attorney fees.  BP Opposition at 11.  Nothing in the Federal Rules permits an award of costs and attorney fees against a petitioner who obtained an order under §1782 without serving the petition on the subpoena recipient.

objections and/or file motions to quash.  *See* 9A WRIGHT & MILLER, FEDERAL PRACTICE AND

PROCEDURE: CIVIL 2D § 2463.  Moreover, the case cited by Hans Smit in purported support of

his proposition reaches exactly opposite result – the court refused to grant motion to quash. *See*

Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section*

*1782 of Title 28 of the U.S.C. Revisited*, 25 SYRACUSE J. INT'L L. & COM. 1, n.75 (1998), *citing In*

*re Letter Rogatory from Justice Court, Dist. of Montreal*, 523 F.2d 562 (6th Cir.1975) In short,

this argument is nonsense.

  Third, *In re Merck & Co.,* 197 F.R.D. 267 (M.D.N.C. 2000) hardly supports BP.  (BP

Opposition at 11, 12.)  Unlike the instant matter in which the Canadian Defendants were served

with Norex's petition, the foreign party defendants in *Merck* were not notified of the petition

seeking documents and depositions.   More importantly, the *Merck* application sought to impose

"certain special practices and procedures" in regard to document production and deposition

procedure which affected the foreign defendants and American deponents, such as the law and

procedures to be applied at the depositions.  In contrast, Norex merely obtained permission to

serve a "vanilla" subpoena under Rule 45 which provides its own due process regime.

  Finally, BP's reliance upon *Al Fayed v. United States*, 210 F.3d 421 (4th Cir. 2000) is

truly misplaced.  (BP Opposition at 12, 13.)  In this case, Mohamed Al Fayed made a §1782

application for discovery of the National Security Agency ("NSA") regarding the Paris

automobile crash involving Diana, Princess of Wales, and his son, Dodi.  The district court

"declined to issue a subpoena under [1782] for documents that had already been identified by

NSA as containing sensitive information pertinent to the national security," viewing the

application as an attempt "to make an end run around FOIA."  *Id.* at 423.  On appeal, an issue

arose as to whether the documents sought by Al Fayed were the same as those for which the

NSA denied a FOIA request.  The United States, as an intervenor, established such and the appeal was denied.

*Al Fayed* hardly evidences the "abusive potential" of ex parte applications.  If the application had been granted, the NSA could have raised the same issues either by serving objections or filing a motion to quash.    In fact, as *Al Fayed* sets forth, this *exact same procedure* was employed in regard to an application made by Al Fayed for discovery from the C.I.A.   "The district court in that case initially issued a subpoena, and the Government moved for a protective order.  The court … quashed the subpoena."  *Al Fayed*, 210 F.3d at 425 (citing *In re Fayed*, 91 F.Supp.2d 137 (D.D.C. 2000)).   Norex's point could not be better proved.

## B.  NOREX WAS NOT REQUIRED TO DISCLOSE THE IRRELEVANT NEW YORK DISCOVERY DECISIONS

For unfathomable reasons, BP asserts that Norex had some duty to disclose decisions regarding discovery in the *Norex v. Access* action in New York.  (BP Opposition at 6).  These non-binding decisions plainly have no relevance to the instant matter.

First, as BP admits, in the New York action, the defendants obtained a stay of discovery, pending resolution of the motion to dismiss.  (BP Opposition at 5)  Instantly, discovery has not been stayed in Canada and is proceeding on all fronts, i.e. as relevant to opposition to the *forum non* motion as well as to the merits.  (Rotzang Decl. ¶¶ 33-42.)  Now is the time in which Norex must obtain evidence.

Second, in New York, the magistrate judge denied Norex's request to lift the discovery stay because the documents relevant to opposing defendants' *forum  non conveniens* motion were also "germane to the merits of the underlying action."  (Burd Decl., Ex. B, at 4.)  Subsequently, however, through a Freedom of Information Act request, Norex obtained a "secret" document from the CIA which set forth that Simon Kukes, TNK's then president,

admitted bribing Russian government officials.  (Motion, Ex. I.)   It is believed that this

information came from BP, (Rotzang Decl. ¶10); if other documents had been produced by BP,

the district court's decision well could have been different.

More importantly, through continued private investigation, Norex obtained evidence that

TNK paid bribes to Russian officials in order to participate in the lucrative Cuban "Oil for

Sugar" and "REZ" programs and the corrupted Iraq "Oil for Food" program.[8]  (Burd Decl., Ex.

G at 5-11).  BP fails to disclose that the Second Circuit permitted Norex to supplement the record

on appeal to include these highly relevant materials, despite defendants' objection. (Burd Decl.,

Ex. E.)   Plainly, the Second Circuit recognized the error of precluding such evidence from

Norex through the discovery process, which, fortuitously, was otherwise obtained.

Finally, procedural wrangling over what documents BP would be required to preserve in

New York has nothing to do with what documents BP should be required to produce in regard to

the Canadian litigation.

## II.  ALL RELEVANT FACTORS SUPPORT ENFORCING THE SUBPOENA PURSUANT TO THE UNDERLYING POLICIES OF §1782

"The goals of [§1782], which dates back to 1855, are to provide 'equitable and

efficacious' discovery procedures in United States courts 'for the benefit of tribunals and

litigants involved in litigation with international aspects,'"  *Lancaster Factoring Co. v. Mangone*,

90 F.3d 38, 41 (2d Cir. 1996) (*quoting*  S. Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964)), and to

"encourage foreign countries by example to provide similar means of assistance to our courts,"

*In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992), *cert. denied*, 506 U.S. 861

(1992). In pursuit of these twin goals, the section has, over the years, been given "increasingly

---

[8] In the "Cuba REZ" program TNK's American managers were involved in providing funds to
Cuba as rent for a surveillance facility used to spy on the United States in the late 1990's in
violation of the Trading with the Enemy Act, 50 U.S.C. Appx. §1 *et seq*.

broad applicability." *In re Application of Aldunate*, 3 F.3d 54, 57 (2d Cir. Conn. 1993), *cert.*

*denied*, 510 U.S. 965 (1993).   As recognized in this Court's decision granting the petition, all

relevant factors are satisfied.[9]

First, while BP notes that it is not a party to the Canadian Litigation, *see* BP Opposition

at 1, the Supreme Court has instructed that the need for discovery under §1782 from a non-party

is greater than from a party under the jurisdiction of the foreign tribunal.  *Intel Corp. v. Advanced*

*Micro Devices, Inc.*, 124 S. Ct. 2466, 2483 (2004) ("When the person who is to produce the

evidence is a party to the foreign proceedings, the foreign or international tribunal can exercise

its own jurisdiction to order production of the evidence.  In contrast, nonparticipants in the

foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their

evidence, available in the United States, may be unobtainable absent § 1782(a) aid.")(internal

citations and quotations omitted).

Second, the Supreme Court has pointed out that "a court presented with a § 1782(a)

request may take into account the nature of the foreign tribunal, the character of the proceedings

underway abroad, and the receptivity of the foreign government or the court or agency abroad to

U. S. federal-court judicial assistance."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 124 S. Ct.

2466, 2483 (2004).  Given the nature of the Canadian Litigation, which is no different than

insurance coverage disputes raised in American courts, granting of the §1782 discovery request

was warranted.  U.S. courts have frequently granted discovery requests for Canadian proceedings

and none of these decisions indicates that the Canadian government would be offended by the

American court's assistance.  *See, e.g., John Deere, Ltd. v. Sperry Corp.*, 754 F.2d 132 (3d

---

[9] Norex notes that subpoenas were also authorized to be served on Palmetto Group (f/k/a Hooper Owen Gould & Winburn) and CPI.  Wilson Associates LLC, founder of which Charles Wilson was a principle of the Hooper Owen Gould & Winburn, produced over 180 documents; CPI has not produced documents based on its interpretation of its confidentiality agreement with BP.

Cir.1985)(reversing the district court decision denying §1782 discovery); *In re Letter Rogatory from Justice Court, Dist. of Montreal*, 523 F.2d 562 (6th Cir. 1975)(upholding district court's refusal to quash a subpoena *duces tecum*).

Third, clearly Norex is not trying to make end run against a Canadian court order or rules prohibiting discovery.  As set forth in the Declarations of Rotzang and Declaration of Ferguson, the case is now in the discovery stage and parties are entitled to obtain documents to be used in the proceedings.  (Rotzang Decl. ¶ 32, Ferguson Decl. ¶¶ 5-9.)  The Supreme Court has admonished courts against declining §1782 requests which do not "conceal [or] attempt to circumvent foreign proof-gathering restrictions or other polices of a foreign country."  *Intel, supra,* at 2483.  Accordingly, this court properly granted the petition and BP fails to meet its burden of proof in opposing the subpoena.

## A.  THE MOTION SHOULD BE GRANTED BECAUSE THE DOCUMENTS ARE CRITICAL TO THE CANADIAN CASE

### 1.  BP Has No Standing To Contest Relevance

As BP implicitly concedes, §1782 does not require the Court to determine whether the evidence is relevant in the foreign proceeding; obviously, this task is best left to the foreign court to decide, or, at a minimum, to the Canadian respondents to raise.  *See Intel, supra, at 2481*. Notably, the Canadian respondents have not asserted that BP's documents are not relevant, either in Canada or here.   This is the reason that courts have held that a third party has no standing to object to a subpoena based on relevancy.  *See Shore Acres Nursing Home, Inc. v. Continental Medical Sys.*, Docket No. 91-0067, 1991 U.S. Dist. LEXIS 4425, at *7-8 (E.D. Pa. Apr. 2, 1991) ("when a subpoena duces tecum is issued to *a person not party to the action* there is *no standing* on his part to raise … *questions of relevancy and materiality*") *quoting Cooney v. Sun Shipbuilding & Drydock Co.*, 288 F.Supp. 708, 717 (E.D.Pa. 1968) (emphasis added); *Ghandi v.*

*Police Dept. of City of Detroit*, 74 F.R.D. 115, 123 (E.D.Mich. 1977) ("the Court has serious reservations about the propriety of a non-party deponent moving to quash a subpoena *duces tecum* on the ground that the information sought is not relevant to the pending action").

While BP has submitted no evidence that the documents are irrelevant to the Canadian Litigation, Norex has gone the extra step and provided the expert Declaration of Thomas H. Ferguson, Q.C., a Canadian litigator with over 28 years of experience, who opines that the BP documents could be relevant both to opposing Ingosstrakh's *forum non conveniens* motion and proving the merits of Norex's liability and damages claims. (Ferguson Decl., ¶10-13.)

**2. BP Has Not Met Its Burden of Establishing That the Documents Are Irrelevant**

Assuming, *arguendo*, the federal standard of relevance applies, as BP argues, (BP Opposition at 14), Norex is entitled to discovery regarding "any matter … relevant to the claim or defense of any party … Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(1).

First, BP has the burden to prove that the information sought is irrelevant or burdensome, 9 MOORE'S FEDERAL PRACTICE, §45.04 (3d ed. 2004) ("The burden of proof lies with the person seeking to have the subpoena quashed or modified.") (collecting cases including *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 402 (D.C. Cir. 1984)), *see also* 9A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2457 (2d ed. 1994) (same).[10]

---

[10] BP relies upon *Burka v. U.S. Dep't Health & Human Services*, 87 F.3d 508 (D.C.Cir. 1996) as the appropriate standard to analyze a Rule 45(3)(c)(A) motion to quash. However, *Burka* concerns Exemption 5 of the Freedom of Information Act and looked to the standards of Rule 26(c)(7) which permits a protective order for trade secrets. BP has not established, or even claimed, that the requested documents contain trade secrets. To the contrary, BP has divulged these documents in its lobbying efforts in the Sidanco dispute and produced them in the CPI litigation.

Second, "[b]y incorporating reference to Fed. R. Civ. P. 26(b), … Rule 45(d)(1) applies an 'exceedingly broad' standard of relevancy to a subpoena seeking material from a non-party." *Cofield v. City of LaGrange*, 913 F. Supp. 608, 614 (D.D.C. 1996) (footnote omitted);  *See* Advisory Committee Notes to Subdivision (d) of Rule 45 of 1991 Amendments; 9A WRIGHT & MILLER, *supra,* § 2459, at 42. "The relevancy threshold is not high: material sought need not be admissible at trial, but must be relevant to the subject matter of the litigation and reasonably calculated to lead to admissible evidence." *Cofield* at 614; *See* 9A WRIGHT & MILLER, *supra,* §2459, at 45; *see also* 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2008, at 101 & n.7 (2d ed. 1994) ("The proposition stated in the text is now so well settled that the cases cited are only illustrative of many others.").

Under Rule 26(b), Norex is entitled to review the documents of BP if they are merely "reasonably calculated to lead to the discovery of admissible evidence."  6 MOORE'S FEDERAL PRACTICE, §26.41 (3d ed.), 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2007 (2d ed. 1994).  "The term 'relevant' in the rule is to be construed broadly to encompass any matter that bears on, or that reasonably could lead to any other matter that bears on, any issue that is or may be in the case." 8 WRIGHT, MILLER & MARCUS, *supra,* § 2007, n.5, *citing Rossbach v. Rundle*, 128 F.Supp.2d 1348 (D.C. Fla. 2000).   BP cannot defeat this narrow and warranted discovery request by a mere cry of "fishing expedition." *See* 8 WRIGHT, MILLER & MARCUS, *supra,* § 2007 (collecting cases); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Staley Continental, Inc. v. Drexel Burnham Lambert, Inc.*, 1988 Fed. Sec. L. Rep. (CCH) P93, 698 (D.D.C. Apr. 8, 1988).  After all, "local courts whose only connection with a case is the supervision of the taking of [discovery] ancillary to an action elsewhere should be especially

hesitant to pass judgment on what constitutes relevant evidence thereunder." *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961).

For the following reasons, BP should be compelled to produce the responsive documents because it plainly has not satisfied its burden of establishing the documents as irrelevant.

### (a) The Documents Are Relevant to Ingosstrakh's *Forum Non* Motion

Evidence that TNK corrupted court proceedings in Russia is plainly relevant to Norex showing that Russian courts are inadequate.   In response, BP cites only to the decision in the New York matter denying Norex discovery.  (BP Opposition at 4-7.)  This decision is easily distinguishable given that the Canadian Respondents have not objected to this discovery, and, as evidenced by later events before the Second Circuit, the decision was wrong, as described above.

### (b) The Documents Are Relevant to the Merits of the Case

Norex has alleged a fraudulent and illegal scheme by which TNK ultimately seized oil equipment in which it had an insurable interest.  (Motion, Ex. C, ¶8-11.)  Norex's statement of claim asserts that this scheme began no earlier than 1999 and continues through the current date. (Motion, Ex. C, ¶11.)  The corrupted proceedings include the Chernogorneft bankruptcy proceedings in which BP was involved.  (Motion, Ex. C, ¶ 8, Rotzang Decl. ¶¶3, 6.)  It is hard to conceived of documents which are more relevant to proving Norex's claims than BP's evidence of TNK's misconduct.  In addition, Norex alleges that the oil equipment has value in excess of the $11 million limit of the Chubb and Ingostrakh policies.  (Motion, Ex. C, ¶ 13.)  Documents under BP's control evidencing the value of this equipment are plainly related to providing damages.

### (c)  The Canadian Court Will Hear the Merits of the Case

BP argues that the Canadian court may not proceed to the merits of the case and, thus, BP's documents may never be needed.  (BP Opposition at 2, 17-18.)  While BP has offered nothing to support its conjecture, Norex again goes the extra step and provides the expert Declaration of Thomas Ferguson in response.

First, as is obvious, these documents will be used to oppose the *forum non* motion, including cross-examination of Ingosstrakh expert witnesses in early 2005.  (Ferguson Decl., ¶ 12.)

Second, not surprisingly, Canadian discovery procedures are essentially the same as ours. After the pleadings, the parties are given a period to take discovery.  (Ferguson Decl., ¶¶ 5-7. Such is the instant situation.  Now is the time that Norex must obtain the BP documents.

Third, not surprisingly, Canadian trial procedures are essentially the same as ours. (Ferguson Decl., ¶¶ 5-9, 13.)  Whatever the merits of the Canadian Respondents' affirmative defenses, Norex's case will be heard first.  (Ferguson Decl. ¶ 13) Thus, even if the affirmative defenses had merit, Norex would still need the BP documents to establish its liability and damage claims.

### 3.  BP Has Unique Knowledge

BP argues that Norex has not shown a "need" for the documents from BP in "particular." (BP Opposition at 16.)  It is hard to take this argument seriously.

BP cannot dispute that it has conducted a thorough investigation of TNK's misconduct. There is probably no entity in the world whose investigation compares to that conducted by BP. While Norex may have its own factual information supporting the Canadian Litigation, it is certainly entitled to obtain additional information which BP has developed.

### 4.   No Burden Is Imposed On BP

In a total of one sentence, BP argues that it would be "burdened" by producing responsive documents.  (BP Opposition at 16.)  "The burden of proving that a subpoena is oppressive is on the party moving to quash. … The burden is particularly heavy to support a motion to quash". *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984) (internal citations omitted).  As is obvious, there is no burden for BP to produce the documents which it has preserved in response to the New York subpoena or which it produced in the CPI litigation.  BP offers no evidence that it would be burdensome to produce any other responsive documents which it may have.  Its bare allegation of burden is insufficient as a matter of law.

### 5.   No Harm Will Be Imposed On BP

In the same sentence that it alleges burden, BP alleges that it would be "harmed" by the production of documents evidencing "misconduct" by TNK, one of its business partners.  (BP Opposition at 16.)  BP cites to no caselaw supporting the allegation that mere embarrassment constitutes harm sufficient to avoid production; rather, caselaw is clear that this type of "harm" is insufficient to justify non-production.  "The sensitivity of a witness who anticipates embarrassment and oppression from any question that might be phrased, is one too delicate to be recognized." *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 426 (1st Cir. 1961). *See also In re Letter Rogatory from Justice Court, Dist. of Montreal, Canada* 523 F.2d 562, 566 (6th Cir. 1975) (compelling discovery of bank documents pursuant to the Canadian court request and rejecting the witness's "bald assertion of potential harm.").

Moreover, BP has published allegations that TNK committed misconduct worldwide. (Motion, Ex. F, H, J.)  Once BP let the "cat out of the bag … [it] can never get  the cat back in

the bag.  The secret is out for good." *United States v. Bayer*, 331 U.S. 532, 540 (1947).  There is no cognizable harm to BP.

## B.   NOREX HAS PROCEEDED WITH COMPLETE GOOD FAITH

BP's assertions that Norex has proceeded in bad faith are noxious.  (BP Opposition at 18-19.)  While Norex does not wish to burden the Court by repeating its above statements, suffice to say:

- Norex did not "wait two years" to file its petition, (BP Opposition at 18); rather, Norex filed its petition in good faith after Chubb finally produced its documents in April, 2004, (Rotzang Decl. ¶¶ 28, 29);

- Norex seeks discovery to oppose the *forum non conveniens* motion and on the merits of its case in Canada in good faith, (Rotzang Decl. ¶¶33-42);

- Norex was permitted to serve the preservation subpoena on BP in New York, (BP Opposition at 7);

- Norex was not required to serve the petition on BP;

- Chubb's unsupported and self-serving allegations are irrelevant and only evidence its bad faith in refusing to pay Norex's claim.

BP's attempt to divert the Court's attention from the merits of the matter by falsely accusing Norex of bad faith should be rejected.

## III. §1782 PERMITS THIS COURT TO COMPEL PRODUCTION OF DOCUMENTS LOCATED OUTSIDE OF THE UNITED STATES WHICH BP CONTROLS

As BP implicitly admits, there is nothing in §1782 which precludes this Court from compelling the production of documents located outside of the United States which BP controls. (BP Opposition at 19-21.  To the contrary, BP takes the position that proceedings under §1782 shall be governed by the Federal Rules and specifically Rule 45 regarding subpoenas, which plainly permits the court to compel production of documents outside of the United States under

control of the subpoena recipient.  (BP Opposition at 14).   Under either Rule 45 or the policies

underlying §1782, production should be compelled.

## A. PRODUCTION OF DOCUMENTS UNDER BP'S CONTROL OUTSIDE OF THE UNITED STATES SHOULD BE COMPELLED UNDER RULE 45

BP does not dispute that Rule 45 encompasses documents in the "custody, possession and

control" of the entity subject to the subpoena, including documents located overseas.   Nor does

BP dispute that it exercised control of and utilized the requested documents located overseas

through its intense lobbying and public relations campaign here which included, but was not

limited to, documents provided to the C.I.A., the Department of State and the Export-Import

Bank.[11]   Moreover, BP admits that the overseas documents are in the "custody" of BP's

corporate affiliates and does not deny "control" of these documents.  (BP Opposition at 7 and Ex.

5 at 1-2.)  A Rule 45 subpoena plainly encompasses documents an entity controls and "applies

where discovery is sought from one corporation regarding materials which are in the

physical possession of another, affiliated corporation."  *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D.

469, 471 (S.D.N.Y. 2000) (citations omitted).  *See also United States v. Int'l Union of Petroleum*

*and Indus. Workers*, *AFL-CIO,* 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must

produce documents possessed by a subsidiary that the parent corporation owns or wholly

controls.").

In short, BP *admit*s "possession, custody and control" of requested documents as it has

"directed its employees to ensure that the documents requested by the Subpoena are properly

preserved and, on a voluntary basis, its ultimate parent, B.P. p.l.c. a U.K. company, has directed

employees of BP America's overseas affiliate to do the same."  (BP Objections at 3.)  In

addition, BP acknowledged the continued preservation of documents sought by Norex in the

---

[11] See Motion, Ex. F, G, and H.

*Access Industries* matter.  (BP Objections at 5.)  Obviously, such preservation is not possible without having control over the documents.

Finally, BP's U. S. presence is not some small remote subsidiary doing the bidding of a distant foreign parent; rather its American operations, deriving from its merger with Amoco, are the core of the company with 42,000 U.S. based employees, $40 billion of fixed assets in the U.S., and 15,000 retail gas stations; it is the sixth largest company by market capitalization on the New York Stock Exchange.  (Burd Decl., Ex. F.)  There is no unfairness in compelling BP to obtain the very documents used to support its lobbying and public relations campaigns.

## B.  PRODUCTION OF DOCUMENT UNDER BP'S CONTROL OUTSIDE OF THE UNITED STATES SHOULD BE COMPELLED BASED ON THE POLICIES UNDERLYING §1782

§1782 does not set a geographical limitation of the documents in the "possession, custody or control" of the entity subject to the subpoena; in fact, it contemplates discovery taking place pursuant to the Federal Rules. 28 U.S.C. §1782. "[T]he starting point for interpreting a statute is the language of the statute itself.  Absent a clearly expressed legislative intention to the contrary, that language must be ordinarily regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).  As such, no geographical restriction should be grafted onto the statute.  *See Intel Corp. v. Advanced Micro Devices*, 124 S.Ct. 2466 (2004) (rejecting judicially imposed limitations on the statute such as that the materials must be discoverable under foreign law or that only "litigants" may utilize the statute).[12]

---

[12] No case cited by BP sets an absolute geographic limit to documents only located in the United States.  *See In re Sarrio, S.A.*, 1995 U.S. Dist. LEXIS 14822 (S.D.N.Y. Oct. 10, 1995) *remanded* 119 F.3d 143, 147 (2d Cir. 1997) ("[I]t is unnecessary for us to decide the … the geographic reach of §1782"); *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1080 (2d Cir. 2002) ("We need not rule, however, on the question whether §1782 can ever support discovery of materials outside of the United States").

In *Edelman v. Taittinger (In re Edelman)*, 295 F.3d 171 (2d Cir. 2002), the court trenchantly noted the statute's clear difference on the territorial limitations imposed on depositions, but not document discovery:

> Unlike documentary evidence, § 1782(a) contains an express geographic restriction on access to testimonial evidence. The statute states that a person may be subject to a § 1782(a) order only if he "resides or is found" in the district in which the issuing court sits. We need look no further therefore than the words of the statute to discern a geographic limitation with respect to testimonial evidence. Documentary evidence is another matter because a subpoena is served on a person who has custody of or access to the documents, not on the papers themselves.

*Id.* at 177.

Norex also notes that there are strong policy interests favoring its position in the instant case.   BP's presence in the United States is not limited to some representative office.   For all intents and purposes, even though B.P. p.l.c. may be incorporated in the U.K., it is effectively an American company, with more employees, gas stations, and assets located here than any other jurisdiction.   Judicial economy would hardly be served by requiring Norex to guess which of BP's foreign affiliates may have documents and then institute new actions in other countries, such as England and Russia, when BP's American office can easily obtain these documents through a telephone call or email.

## IV. BP'S TECHNICAL OBJECTIONS ARE WITHOUT MERIT AND INTERPOSED IN BAD FAITH

BP's dedication of two sentences and a footnote in support of its technical objections demonstrate their lack of merit.  (BP Opposition at 22.)  For example, BP has no support for its objection based upon "confidential commercial information."  (Motion, Ex. B, ¶ 8.)  BP's argument that the Subpoena is "overly broad or unduly burdensome" because there is no cut-off

date, (BP Opposition at 22), is nonsense because all relevant information gathered by BP is requested.  Therefore, no cutoff date is applicable.

As relegated to footnote 15, (BP Opposition at 22), in its opposition, BP made no showing that any of the documents subject to the Subpoena are protected by the attorney-client privilege or attorney work product doctrine.  BP ignores its deliberate failure to submit a privilege log while ignoring its privilege claims are squarely before this Court.  This Circuit has held a litigant:

> must demonstrate that documents were created 'with a specific claim supported by concrete facts which would likely lead to litigation in mind,' not merely assembled in the ordinary course of business or for other nonlitigation purposes.

*Linde Thomson Langworthy Kohn & Van Dyke v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C. Cir. 1993)(citations omitted).  *See Amicus Communs., L.P. v. Hewlett-Packard Co.*, Docket No. 99-0284, 1999 U.S. Dist. LEXIS 20901, at *8 (D.D.C. Dec. 3, 1999) ("Non-Party Cahn, by his sweeping conclusion that the subpoena seeks protected work product, has not even attempted to make such showing.")  This rule is in line with Rule 45(d)(2) which states:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Rule 45(d)(2). BP relies upon *Tuite v. Henry*, 98 F.3d 1411 (D.C. Cir. 1996) that a privilege log must be filed within a reasonable time.  (BP Opposition at 22.)  Accepting this point *arguendo*, and notwithstanding numerous subsequent district decisions which hold the privilege is waived if not submitted at the time of objection,[13] in *Tuite*, the Court found the "reasonable time" to be when the privilege log was served "in response to appellant's motion to comply." *Tuite* at  1417.

---

[13] *See Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1, 5 (D.D.C. 1999); *First American Corp. v. Al-Nahyan*, 2 F. Supp. 2d 58, 63 (D.D.C. 1998) ; *Bregman v. District of Columbia*, 182 F.R.D. 352, 363 (D.D.C. 1998).

Here, BP did not serve a privilege log with its opposition to Norex's motion to compel. Following *Tuite,* BP's objection based upon the attorney-client privilege/attorney work product doctrine should be overruled.[14]

Finally, although not addressed by BP, its publication of documents in the CPI litigation or to the Department of State, Export/Import Bank and public relations agencies through its campaign, (Petition, Ex. F-H), waived any claim of attorney client or work product privilege as to these document. *In re Sealed Case*, 676 F.2d 793, 817 (D.C. Cir. 1982) ("[A] party waives its work product protection in civil litigation if it discloses the privileged material to anyone without "common interests in developing legal theories and analyses of documents").

## V.  BP'S CROSS-MOTION TO QUASH IS UNTIMELY

Pursuant to Rule 45(c)(3)(A), a motion to quash a subpoena must be filed "timely." "[C[ourts have read 'timely' to mean within the time set in the subpoena for compliance." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of America*, 238 F. Supp. 2d 270, 278 (D.D.C. 2002).  *E.g., Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) ("motion to quash should be brought before the noticed date"), *Israel v. Carpenter*, 2002 U.S. Dist Lexis 11792, at *3 (S.D.N.Y. June 28, 2002) (denying motion to quash filed after return date as untimely); *Dexter v. Cosan Chem. Corp.*, 2000 LEXIS 22134, at*10  (D.N.J. Oct. 24, 2000)  (denying motion to quash filed two days after return date as untimely).

---

[14] "[T]o sustain a claim of privilege, this circuit requires: (1) a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege based upon actual personal consideration by that official; and (3) a detailed specification of  the information for which the privilege is claimed with an explanation why it properly falls within the scope of the privilege." *Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C.Cir. 1996).

Instantly, BP's motion to quash was filed on December 12, 2004, almost three months after the September 17, 2004 agreed upon deadline set for compliance with the Subpoena.   It was therefore untimely and should be denied.

## CONCLUSION

Based on the foregoing reasons, Norex's motion to compel BP to produce the documents requested by the Subpoena within ten days should be granted and BP's cross-motion to quash should be denied.

By: /s/ Bruce S. Marks
   Bruce S. Marks, Esq.
   Gene M. Burd, Esq.
   MARKS & SOKOLOV, LLC
   1835 Market Street
   28th Floor
   Philadelphia, PA 19103
   215-569-8901

   Attorneys for Petitioner
Dated: December 21, 2004 Norex Petroleum Limited

## CERTIFICATE OF SERVICE

I, Maria Temkin, hereby certify that a true and correct copy of the Petitioner Norex Petroleum Limited's Statement of Points of Law and Authority In Support of Motion to Compel the Production of Documents Pursuant to Subpoena Directed to BP America, Inc. and Opposition to BP America, Inc.'s Cross-Motion to Quash Subpoena along with supporting exhibits and Proposed Order were served on December 21, 2004, via first class mail upon the following persons:

Gene J. Bodnar, Esquire
Macleod Dixon LLP
3700 Canterra Tower
400 Third Avenue SW
Calgary, Alberta
Canada T2P 4H2

J. Robert Black, Esquire
Havelock B. Madill, Esquire
BROWNLEE, LLP
Suite 2200, Commerce Place
10155 –102nd Street
Edmonton, AB, Canada T5J 4G8

CHUBB INSURANCE COMPANY OF
CANADA
One Financial Place, 16th Floor,
1 Adelaide Street East,
Toronto, ON, M5C 2V9 Canada

INGOSSTRAKH INSURANCE
COMPANY LTD,
12, Pjatnitskaja Street,
115998, Moscow, M-35 Russia

GREAT NORTHERN INSURANCE COMPANY
15 Mountain View Road
P.O. Box 1615
Warren, NJ 07061-1615 USA

Daryl A. Libow
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue N.W.
Suite 800
Washington, D.C. 20006

MARKS & SOKOLOV, LLC

By:  _____
Maria Temkin

Date:  12/21/04