# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NOREX PETROLEUM LIMITED, | ) ) ) ) ) | Case No.  1:04-mc-00281-CKK (U.S.D.C. for the District of Columbia) |
| Petitioner, | ) ) | |
| v. | ) | For: |
| CHUBB INSURANCE CO. OF CANADA, et al., | ) ) ) | Case No. 0201 11097 (Court of Queen's Bench of Alberta, |
| Respondents. | ) ) | Judicial District of Calgary, Canada) |
| | ) ) ) | |

## NON-PARTY BP AMERICA INC.'S REPLY MEMORANDUM IN
## SUPPORT OF ITS CROSS-MOTION TO QUASH

Daryl A. Libow (D.C. Bar # 446314)
Joseph J. Reilly (D.C. Bar # 480824)
Telephone:  (202) 956-7500
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC  20006-5085


Attorneys for Non-Party
BP America Inc.
1776 I Street, N.W.
Suite 1000
Washington, DC 20006

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

I.      NOREX'S OPPOSITION CONFLATES THE CRITICAL DISTINCTION
        BETWEEN BP AMERICA'S RATIONALES FOR QUASHING THE
        SUBPOENA. ...........................................................................................................2

        A.      The CPI Documents .....................................................................................3

        B.      All Other Documents Sought by the Subpoena .............................................5

II.     NOREX HAS CITED NO AUTHORITY TO EXCUSE ITS DECISION
        TO APPROACH THIS COURT ON AN *EX PARTE* BASIS AND
        WITHOUT DISCLOSURE OF KEY FACTS. ..........................................................7

CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

### CASES

*Al Fayed* v. *Central Intelligence Agency*, 229 F.3d 272 (D.C. Cir. 2000)......................................1

*Al Fayed* v. *United States*, 210 F.3d 421 (4th Cir. 2000) ...............................................................9

*Edelman* v. *Taittinger*, 295 F.3d 171 (2d Cir. 2002) .....................................................................7

*Four Pillars Enterps.* v. *Avery Dennison Corp.*, 308 F.3d 1075 (9th Cir. 2002) ........................7

*In re Application of Mohammed Al Fayed*, 91 F. Supp. 2d 137 (D.D.C. 2000) ...........................1

*In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*,
  848 F.2d 1151 (11th Cir. 1988) ...................................................................................................5

*In re Merck & Co.*, 197 F.R.D. 267 (M.D.N.C. 2000) ...................................................................8

*Intel Corp.* v. *Advanced Micro Devices*, 124 S. Ct. 2466 (2004) .................................................4

*United States ex rel. Pogue* v. *Diabetes Treatment Ctrs. of Am.*,
  238 F. Supp. 2d 270 (D.D.C. 2002) .............................................................................................1

### STATUTES AND LEGISLATIVE HISTORY

28 U.S.C. § 1782...................................................................................................................*passim*

Fed. R. Civ. P. 45.......................................................................................................................1, 5

### OTHER AUTHORITIES

9 MOORE'S FEDERAL PRACTICE § 45App.102 (2004)......................................................................1

## INTRODUCTION

Non-party BP America Inc. ("BP America") provides this short Reply Memorandum in Support of Its Cross-Motion to Quash a Subpoena obtained by Norex Petroleum Limited ("Norex") pursuant to 28 U.S.C. § 1782 without notice to BP America.[1] The Subpoena seeks documents relating to allegations of misconduct by another non-party, Tyumen Oil Company ("TNK"), a business partner of BP America's overseas affiliates in the Russian Federation, on the purported basis that the sought-after documents would somehow aid Norex in a case it filed over two years ago in Alberta, Canada against two insurance companies.

BP America believes that its brief in support of the Cross-Motion (the "Cross-Motion") adequately addresses most of the arguments now appearing in Norex's Opposition to the Cross-Motion ("Norex's Opposition"). Accordingly, this Reply is principally focused on the critical distinction between the two categories of documents at issue here: (i) the approximately 350 pages of documents BP America previously produced

---

[1] Norex's contention that BP America's Cross-Motion is untimely because it was filed after the Subpoena's return date, (Norex's Opp. at 24-25), is without merit. Before the return date, BP America only was required to serve Norex with Written Objections, Fed. R. Civ. P. 45(c)(2)(B), and it did so. While prior versions of Rule 45 did require the filing of any motions to quash by the return date, that requirement was repealed thirteen years ago. 9 MOORE'S FEDERAL PRACTICE § 45App.102 (2004). The cases cited by Norex to support its position on this issue all either (i) involve subpoena recipients who did nothing before the return date or (ii) in one case, contain dicta addressing highly unusual facts. *United States ex rel. Pogue* v. *Diabetes Treatment Ctrs. of Am.*, 238 F. Supp. 2d 270, 278 n.6 (D.D.C. 2002) ("The Court is not here adopting an across-the-board rule ....").

BP America's decision to move to quash in this Court after Norex moved to compel, in fact, follows the same procedure employed successfully by the subpoenaed non-party in one of the only reported § 1782 cases in this district or circuit, *In re Application of Mohamed Al Fayed*, 91 F. Supp. 2d 137, 138 (D.D.C. 2000). That non-party's motion to quash was granted, *id.* at 141, and affirmed on appeal. *Al Fayed* v. *Central Intelligence Agency*, 229 F.3d 272, 277 (D.C. Cir. 2000).

in a U.S. lawsuit that predate the subject matter of the Canadian litigation brought by Norex, and (ii) the unknown (but potentially large) volume of documents held by BP America and its affiliates in the United Kingdom and the Russian Federation that Norex now seeks the opportunity to trawl through in the hope that it *might* find some evidence relevant to its Canadian claims against the two insurance carriers. BP America opposes production of these two categories of documents for distinct reasons — reasons that Norex's Opposition repeatedly attempts to conflate. *See* Section I, *infra*. Finally, this Reply will also briefly address Norex's continued failure to justify the procedural deficiencies underlying its obtaining from this Court, *ex parte*, an order permitting the § 1782 Subpoena. *See* Section II, *infra*.

## I. NOREX'S OPPOSITION CONFLATES THE CRITICAL DISTINCTION BETWEEN BP AMERICA'S RATIONALES FOR QUASHING THE SUBPOENA.

Norex is seeking two very different categories of TNK-related documents. The first category is a small set of records provided by BP America to government agencies and other third parties, and is largely comprised of the roughly 350 pages of documents produced under a confidentiality agreement to the Center for Public Integrity ("CPI") pursuant to a subpoena issued in early 2001 (collectively, the "CPI Documents"). (Cross-Mot. at 9.) The vast majority of the CPI Documents were created in 1999 (or earlier) and they all relate to events connected in some way with the 1999 bankruptcy of the Russian firm Chernogorneft. (*See* Cross-Mot. at 2-4 (explaining this bankruptcy).) This small, easily identifiable group of documents must be contrasted with all of the other documents *possibly* in the files of BP America and its overseas affiliates and improperly sought by Norex, without geographic or date limitation, under the § 1782 Subpoena.

## A. The CPI Documents

BP America seeks to quash the Subpoena with respect to the CPI Documents

on the ground that they are entirely *irrelevant* to Norex's Canadian lawsuit because the sole

relief requested in that case is an insurance recovery for loss "caused as a result of a Sudden

and Unexpected Event" relating to a Norex-controlled entity called ZAO Yugraneft

Corporation ("Yugraneft") in June and July 2001, roughly two years *after* the 1999

Chernogorneft bankruptcy.[2]  (Cross-Mot. at 2-4, 9, 15-18 (describing BP America's

relevancy arguments in full).)  Indeed, Norex admits that CPI served its subpoena on BP

America in January 2001, five months before the "Sudden and Unexpected Event," (Motion

to Compel at 6), and does not deny that BP America completed its response to that subpoena

in May 2001, two months before the event.  (Cross-Mot. at 9.)

While the CPI Documents are not germane even under the liberal U.S.

standard for relevance that Norex urges this Court to apply, (*e.g.*, Norex's Opp. at 15), an

attachment to Norex's Opposition reveals that an even stricter relevancy standard was

adopted in the last few years for the courts of Alberta, Canada, where the underlying

Canadian lawsuit is being litigated.[3]  It therefore appears that in addition to the many other

deficiencies in Norex's § 1782 petition, (*see* Cross-Mot. at 10-13; Section II, *infra*), the

---

[2]     Norex's continued insistence that BP America — the non-party from whom
discovery is being sought — has no standing to object on the basis of relevancy is
fundamentally wrong and is addressed in the Cross Motion.  (Cross-Mot. at 15 n.11.)

[3]     Specifically, materials attached to the Declaration of Thomas H. Ferguson, Q.C.
explain that in 1999 Alberta adopted "a new rule" that "substantially reduce[d] the scope" of
relevance.  (Ferguson Decl., Ex. 5.)  The rule provides that a document "is relevant and
material only if" it "could reasonably be expected (a) to *significantly* help determine one or
more of the issues raised in the pleadings, or (b) to ascertain evidence that could reasonably
be expected to *significantly* help determine one or more of the issues raised in the

(continued ...)

-3-

petition may have "conceal[ed] an attempt to circumvent foreign proof-gathering restrictions." *Intel Corp.* v. *Advanced Micro Devices*, 124 S. Ct. 2466, 2483 (2004). This alone may be a basis for denying discovery altogether. *Id.*

In addition to the clear lack of relevance, BP America, of course, also objects to production of the CPI Documents on the basis of the threshold procedural deficiencies and Norex's apparent bad-faith in obtaining the § 1782 Subpoena that BP America has identified to support the quashing of the Subpoena as a whole, as well as the more fundamental ground that it is inequitable to require a non-party to provide discovery for a foreign proceeding when a potentially dispositive pre-trial motion is pending.[4] (Cross-Mot. at 2, 10-13, 17-20, 22.) Contrary to assertions by Norex that attempt to make BP America seem as if it is raising frivolous contentions regarding the CPI Documents, (Norex's Opp. at 18-21, 24), BP America has not raised with respect to the CPI Documents the arguments relating to burden and extra-territorial use of § 1782 that it has advanced in opposing the retrieval and production of the additional documents sought by the Subpoena. (*See* Section I.B, immediately below).[5]

---

(... continued)

pleadings." (Ferguson Decl., Ex. 5 (quoting Rule 186.1 of the Alberta Rules of Court) (emphasis added).)

[4] With respect to this last point, a new admission by Norex highlights how fundamentally unfair it would be to require a non-party like BP America to provide discovery at this juncture. Norex now concedes that the primary defendant in the Canadian lawsuit, Ingosstrakh Insurance Company Ltd., "still has not produced its records." (Decl. of Alex Rotzang ¶¶ 33, 38, appended to Norex's Opp.)

[5] While none of the documents produced to CPI are privileged, some of them are highly confidential. Because CPI agreed to enter into a strict confidentiality agreement, BP America did not have to burden the court in that case with a motion for a protective order. Norex now argues that BP America has waived its right to obtain a protective order in this Court by "fail[ing] to seek a protective order" in the Cross-Motion, (Norex's Opp. at 7 n.5),

(continued ...)

-4-

### B.  All Other Documents Sought by the Subpoena

Beyond the CPI Documents, Norex's Subpoena seeks to mine an unknown quantity of documents — most of which are likely to be held by BP America's overseas affiliates in the United Kingdom and Russian Federation — by arguing that BP America *may* have collected information concerning allegations of misconduct by TNK *after* 1999. Norex provides nothing but conjecture to justify its request that BP America comb its files for never disclosed, post-1999 documents.  Norex's speculation (*e.g.*, "one could reasonably presume [that BP America] continued to conduct due diligence" about TNK after 1999)[6] and suppositions (*e.g.*, "There is probably no entity in the world whose investigation compares to that conducted by BP") are just charter language for a fishing expedition through a non-party's files, (Norex's Opp. at 4, 17), and therefore the Subpoena should be quashed. *In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988) ("If the judge ... suspects that [a § 1782] request is a 'fishing

---

(... continued)

but once again Norex is wrong.  The Cross-Motion specifically stated that if this Court does not quash the Subpoena in its entirety, then "BP America will seek to negotiate a confidentiality agreement similar to that agreed to in the CPI litigation and, in the event that negotiations fail, will seek a protective order from the Court." (Cross-Mot. at 9 n.3 (citing Fed. R. Civ. P. 45(c)(3)(B)(i)).)

[6]     Even if BP America or its affiliates did conduct due diligence on TNK after 1999, Norex has not offered one reason why that process might have generated information about the subject of its insurance claim, the "Sudden and Unexpected Event" in June 2001 relating to Yugraneft.

expedition' or a vehicle for harassment, the district court should deny the request.").[7]  Even

if the Subpoena is not quashed on this basis alone, the speculative nature of the discovery

being sought by Norex must, of course, be weighed against the manifest burden and expense

imposed on non-party BP America of having to search documents in several countries

covering a period of over five years.

Moreover, the other documents sought by the Subpoena should not be

retrieved or produced for several additional reasons.  First, and unlike the CPI Documents,

many of these documents are in non-U.S. locations such as the Russian Federation and the

United Kingdom.  As explained in the Cross-Motion, § 1782 does not permit U.S. courts to

order discovery of documents located outside of the United States, in part because such a

practice would interfere with the sovereignty of the countries from which documents would

be taken.  (Cross-Mot. at 19-21.)  Norex's assertion that it can end run this prohibition

because BP America's parent in the United Kingdom, BP p.l.c., is "effectively an American

company," (Norex's Opp. at 22), is, of course, absurd.  (As an aside, even if this absurdity

were true, it would be irrelevant to § 1782's geographic restriction on the collection of

documents.  (*See* Cross-Mot. at 20-21 & n.14 and authorities cited therein.).)  And Norex

---

[7]     The stricter relevancy rules that govern the underlying Canadian litigation discussed above similarly preclude such speculative discovery.  *See* the excerpted commentary on the Alberta rules in Ferguson Decl., Ex. 5 ("The [definitions] of 'relevance' and 'materiality' [enacted in 1999] eliminate the old fishing expeditions.  There is no fishing without first evidence that there are fish in the pond and a reasonable amount of fish.  This is the test that must be satisfied to allow records to be discoverable." (internal citations and quotation marks omitted).)

once again has failed to cite a single case in which a court permitted the use of § 1782 to

obtain documents located outside of the United States.[8]

## II.    NOREX HAS CITED NO AUTHORITY TO EXCUSE ITS DECISION TO APPROACH THIS COURT ON AN *EX PARTE* BASIS AND WITHOUT DISCLOSURE OF KEY FACTS.

After BP America successfully opposed Norex's attempt to obtain TNK-

related documents in a lawsuit in the Southern District of New York, Norex had every

reason to believe that BP America would similarly not agree to retrieve or produce the same

documents for the Canadian lawsuit, which alleges a subset of the facts alleged in the New

York action.  Nonetheless, Norex chose to file a § 1782 petition with this Court *ex parte* and

to omit any mention of the New York litigation.[9]

---

[8]    Norex's reliance on *Edelman* v. *Taittinger*, 295 F.3d 171 (2d Cir. 2002) not only is unhelpful, but supports BP America's motion to quash. *Edelman* concerned an attempt to use § 1782 to obtain *testimonial* evidence involving a potential deponent living in France who was served with a subpoena while on a trip to New York City. *Id.* at 174.  According to Norex, *Edelman* explains that "territorial limitations" are imposed by § 1782 "on depositions, but not document discovery." (Norex's Opp. at 22.) *Edelman* actually indicates that precisely the opposite proposition is true.  The court in *Edelman* recognized authority that there is an absolute bar on using § 1782 to obtain *documents* in other countries, but ultimately decided that § 1782 did not always bar the taking of testimonial evidence from foreign individuals. *Edelman*, 295 F.3d at 176-79.  The court's precise holding was that *"regardless of any implicit limits on the location of documentary evidence, … if a person [who resides and works in a foreign country] is served with a subpoena while physically present in the district of the court that issued the discovery order,"* then a court may — in its discretion — compel that person to submit to a deposition. *Id.* at 180.

In addition, the potential exception to the geographic restriction on document collection hypothesized in *Four Pillars Enterps.* v. *Avery Dennison Corp.*, 308 F.3d 1075 (9th Cir. 2002), (*see* Norex's Opp. at 21 & n.12), in which a target of the subpoena is evading § 1782 "by spiriting materials out of the United States," *Four Pillars Enterps.*, 308 F.3d at 1079-80, is obviously not germane here.

[9]    Norex now concedes that the New York court "denied" its motion "to obtain documents from BP" in every respect, (Norex's Opp. at 4-5 & n.3; *cf.* Motion to Compel at 5 (the New York "court granted Norex's discovery requests in part")), but it seeks to justify the failure to disclose the litigation to this Court by characterizing the New York court's

(continued …)

-7-

Norex fails to cite any authority that would excuse its behavior, and its

attempts to distinguish the authority relied upon by BP America are unavailing.  Seeking to

undermine the significance of *In re Merck & Co.*, 197 F.R.D. 267, 269-71 (M.D.N.C. 2000),

which held that Merck's *ex parte* petition under § 1782 was inappropriate, Norex argues that

Merck committed a sin more serious than Norex's because even "the foreign party

defendants in *Merck* were not notified of the petition." (Norex's Opp. at 9.)  But the quoted

description is untrue.  Merck did notice its petition, both to its adversaries in the foreign

litigation (who actually were plaintiffs, not "defendants") *and* to the U.S. target of

discovery, and in contrast to the instant case, *all* of them — including the subpoena's target

— had in fact "expressed no objection" preliminarily to Merck's obtaining at least a limited

amount of discovery.  *In re Merck & Co.*, 197 F.R.D. at 269.[10]

---

(... continued)

rulings (in conclusory terms) as "completely irrelevant." (Norex's Opp. at 2 & n.1, 4-5.)
Moreover, in an attempt to avoid the obvious implications of the New York case for this
§ 1782 action, Norex now misrepresents a recently issued order by the Second Circuit,
erroneously asserting that it "establishes the" trial court's decision to deny Norex discovery
of BP America in that case "was in error." (Norex's Opp. at 5; *see also id.* at 11, 16.)  The
"order" to which Norex refers is a one-page, pre-printed form that merely granted a motion
by Norex "to supplement" the appellate record. (Decl. of Gene M. Burd, Ex. E, appended to
Norex Opp. (hereinafter "Burd Decl.").)  Neither the motion itself — seeking to allow Norex
to supplement the record on appeal of the trial court's dismissal of its case on *forum non
conveniens* with documents Norex obtained outside of the discovery process and which
purportedly allege that TNK has acted in violation of U.S. sanctions laws — nor the order
has anything at all to do with the trial court's decision denying Norex's request to obtain
discovery from BP America. (Burd Decl., Ex. E, Ex. G at 1, 13-14.)

[10]     While Norex trumpets the absence of evidence indicating that its Canadian
adversaries oppose the § 1782 petition, (Norex Opp. at 6, 13, 16), there also is no evidence
that they support it, either.  The fact is that when they were provided with an opportunity to
respond to Norex's petition last summer, they (like this Court) did not have the benefit of BP
America's input because of Norex's failure to provide notice to BP America.  Nor were they
told by Norex's petition that the New York court previously had denied Norex access to the
same BP America documents on grounds that may equally apply to the Canadian case, or

(continued ...)

Finally, Norex also misreads *Al Fayed* v. *United States*, 210 F.3d 421 (4th

Cir. 2000), an opinion that illustrates how judicial resources can potentially be wasted by the

filing of an *ex parte* petition for the issuance of an order authorizing a subpoena that likely

will be contested. In that case, the target of a proposed subpoena fortuitously learned about

the § 1782 petition after the trial court denied the petition but while the Fourth Circuit was

considering whether to reverse. The target intervened, and alerted the appellate court of a

"fact" that the petitioner "had failed to mention." 210 F.3d at 423. The Fourth Circuit

decided to affirm on the basis of that new fact, determining that it "foreclosed" an argument

for reversal advanced by the petitioner. *Id.* at 423-25. Norex argues that if the Fourth

Circuit had been in the dark and "granted" the petition, then the target of the subpoena

"could have raised the same" new fact down the road by moving to quash. (Norex's Opp. at

10.) In such a case, though, both the Fourth Circuit and the trial court would have wasted

their time needlessly deciding the matter the first time around — just as this Court now is

being asked to consider a range of issues that could have been decided at the time of Norex's

initial petition last summer if BP America had been provided with notice.

---

(... continued)

that Norex was seeking to avoid application of the more restrictive evidentiary rules that
govern in the courts of Alberta, Canada.

## CONCLUSION

For the reasons set forth in the Cross-Motion and those set forth above, non-party BP America requests that this Court grant its Cross-Motion to Quash.

Dated:  January 4, 2005

_Daryl A. Libow/jjr_

Daryl A. Libow (D.C. Bar # 446314)
Joseph J. Reilly (D.C. Bar # 480824)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC  20006-5085
Telephone:  (202) 956-7500

Attorneys for Non-Party
BP America Inc.
1776 I Street, N.W.
Suite 1000
Washington, DC 20006

## CERTIFICATE OF SERVICE

I, Joseph J. Reilly, hereby certify that I have, this 4th day of January,

2005, caused the foregoing to be served via first class mail upon:

Bruce Marks, Esq.
Marks & Sokolov, LLC
1835 Market Street, 28th Floor
Philadelphia, PA  19103

J. Robert Black, Q.C.
Brownlee LLP
Suite 2200, Commerce Place
10155 - 102 Street
Edmunton, AB Canada T5J 4GB

Havelock B. Madill, Q.C.
Brownlee LLP
Suite 2200, Commerce Place
10155 - 102 Street
Edmunton, AB Canada T5J 4GB

Gene J. Bodnar, Q.C.
Macleod Dixon LLP
3700 Canterra Tower
400 Third Avenue SW
Calgary, Alberta
Canada T2P 4H2

_____
Joseph J. Reilly