UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NOREX PETROLEUM LIMITED,<br><br>                   Plaintiff,<br><br>v.<br><br>CHUBB INSURANCE CO. OF CANADA, et al,<br><br>                   Defendant. | Civil Action No. 04-mc-281<br>(CKK)(AK) |

**MEMORANDUM ORDER**

Pending before the Court, pursuant to a referral by District Judge Koller-Kotelly, is Plaintiff's Motion to Compel, third party BP America Inc.'s ("BP") Cross-Motion to Quash, and respective oppositions and replies. Pursuant to 28 U.S.C. § 1782, the District Court has previously granted a Motion for Assistance in gathering, by subpoena, information by persons located in this jurisdiction in aid of a case proceeding before the Court of Queen's Bench of Alberta, in Calgary, Canada. (8/24/04 Order.) The subpoenas have been directed toward BP America Inc.

**I.      BACKGROUND**

The case is before this Court solely for a determination of whether the subpoena should

1

be enforced or quashed. The subpoena was issued under authority of this Court, pursuant to 28 U.S.C. § 1782. A brief description of the procedural posture of this case is helpful.

The underlying case upon which this miscellaneous action has been filed is currently pending before the Court of Queen's Bench of Alberta, Judicial District of Calgary, in Canada. The Plaintiff alleges that it was the victim of corrupt and unlawful practices that took place in Russia which ultimately led to its loss of ownership interest in Yugraneft Oil Company. The Plaintiff claims that it had insurable interests in the losses that it incurred and, therefore, is seeking collection as an insured on insurance policies that Plaintiff maintained with three insurance companies; Chubb Insurance Co., Ingrosstrakh Ins. Co, and Great Northern Insurance Co. The Plaintiff also alleges that oilfield equipment was stolen, and is seeking insurance reimbursement on that loss.

According to the Plaintiff, BP shares a similar experience with Plaintiff regarding corrupt practices in Russia, and in its efforts to protect its assets, amassed voluminous documentation of this wrongdoing. It is this documented information that the Plaintiff now seeks via a subpoena.

A complicating factor is BP's resolution of its dispute with several parties alleged to have engaged in corrupt practices in Russia, including, most notably, Tyumen Oil Company, with which BP has now merged.

Further, the issues presented in the Canadian case were previously brought in an action in the Southern District of New York. That Court dismissed the case on *forum non convenience* grounds, the same issue now pending before the Canadian Court.

**II      ANALYSIS**

2

    *A.*    *Standard to Compel Production*

Enforcement of the subpoena is governed by 28 U.S.C. § 1782 and the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure apply in actions brought under 28 U.S.C. § 1782 to the extent that those rules do not expressly conflict with the statute. 28 U.S.C. § 1782.

To determine whether to enforce a subpoena under Fed. R. Civ. P. 45 at play in the instant action, the Court needs to balance, (1) the relevance of the information sought in the underlying case, (2) the requestor's need for the information from the subpoenaed source, (3) the burden on the source to produce the information, and (4) the harm, if any, that disclosure of the requested information would have on the source. *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508 (D.C. Cir. 1996).

Relevancy determinations made for information sought at the discovery phase of litigation is different from the standard used to assess reliability in the context of admissibility as evidence in the resulting trial. *Cofield v. LaGrange*, 913 F.Supp. 608, 614 (D.D.C. 1996). In determining relevance at this stage, the Court applies, "an exceedingly broad" standard which will assess merely whether the information sought is reasonably calculated to lead to the discovery of admissible evidence, not whether the information sought itself would be admissible. *Id.*; *See also*, 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2457 (2d ed. 1994).

The case pending in Canada involves alleged corruption in various judicial and business practices in Russia and allegations of theft of their oilfield equipment.

The Plaintiff makes eleven specific demands for documents in BP's possession, custody, or control. Eight of these requests relate specifically to corruption and or bribery carried out by

Tyumen Oil Company involving transactions occurring in Russia and relied on by the Plaintiff in support of its claims. The sole reason for eight separate requests is that the Plaintiff is seeking documents that BP voluntarily submitted to various entities, governmental and private, referencing corruption and or bribery carried out by Tyumen Oil Company. The remaining three requests are for documents relating to the value, ownership, and insurance information regarding the oilfield equipment central to the Plaintiff's case. As such there exists relevance between the information sought and the topic of the Canadian lawsuit.

The remaining three factors that the Court must balance are disposed of in relatively short order. These factors relate to Norex's need for the information and the negative impacts, if any, that disclosure would have on BP. From the argument presented to the Court, it seems that the information sought is important to Norex's case in chief as well as responding to Ingosstrakh Insurance Company's pending motion to dismiss based on *forum non conveniens*. Norex argues the information sought relates explicitly to the allegations of corruption and bribery, which are central to their claims made in their case in chief.

BP contends that it would be "both burdened and harmed by an order" granting Plaintiff's motion to Compel. (Opposition at 16.) In support of its argument relating to these assertions, BP is silent. The Court, were it to agree, would be basing its decision merely on the conclusory statement by BP that Plaintiff's inquiries are burdensome and harmful. Additionally, there has been no indication from BP as to the number of documents that fall within the Plaintiff's request.

For the reasons articulated above, the documents should be produced. The Court will now discuss the other arguments, none of which are persuasive, raised by BP on the production issue.

B.  *Notice*

BP argues that the subpoena should be quashed because the Plaintiff's initial request for assistance from this Court pursuant to 28 U.S.C. § 1782 was made *ex parte*. (BP Opposition at 10-13.) It appears from the facts that this representation is correct. Nonetheless, the failure to inform BP at this early phase of the document request is not prejudicial to BP or fatal to Plaintiff's request.

BP first contends that the failure to notify them of the § 1782 request constituted a constitutional error. (Id. at 10.) In support of this proposition, BP argues that the failure to notify them of the request, foreclosed them from opposing the application for assistance. (Id. at 11.) Prior notice of the issuance of a subpoena is not required by the Federal Rules, nor prejudicial to BP. Courtesy notification, without more, is not a legal justification for a motion to quash.

Rule 45 affords the respondent a full due process opportunity to contest the subpoena via objections and/or motions to quash, an opportunity BP is now exercising. 9A WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2463.

C.  *Documents Outside of the United States*

BP argues, in the alternative, that this Court cannot grant Plaintiff's Motion to Compel because the documents it seeks are outside the territorial jurisdiction of the United States. (BP Opposition at 19-22.) BP claims that § 1782 may be used only to obtain documents physically kept in the United States. (Id.) This proposition is belied by the text of the statute which is oriented to the location *of the party* that is the target of the subpoena, not the location *of the specific documents* sought. See § 1782. The statute requires merely that the target of the subpoena have within their possession, custody or control the documents sought. This Court

finds the conclusions of the 2nd Circuit persuasive in this regard. That Court has stated,

> "Unlike documentary evidence, § 1782(a) contains an express geographic restriction on access to testimonial evidence. The statute states that a person may be subject to a § 1782(a) order only if he 'resides or is found' in the district in which the issuing court sits. We need look no further therefore than the words of the statute to discern a geographic limitation with respect to testimonial evidence. Documentary evidence is another matter because a subpoena is served on <u>a person who has custody of or access to the documents</u>, not on the papers themselves."

*Edelman v. Taittinger (In Re Edelman)*, 295 F.3d 171 (2d Cir. 2002)(emphasis added). Therefore, the location of the subpoena, not the location of the documents, is the determinant under the statute. There is no dispute that the respondent is within the jurisdiction of this Court, and that the respondent is in possession, custody or control of the requested documents.

    D.    *New York Litigation*

BP argues that this Court should deny Plaintiff's request because a similar request by the Plaintiff, in the action filed in the Southern District of New York was denied. Because the scope of the Canadian litigation focuses on a "Sudden and Unexpected Event" and is narrower than the scope of the New York litigation, which dealt more generally with allegations of misconduct stretching back for many years, BP argues that this Court should also deny Plaintiff's request. (BP Opposition at 4-5.) Such a conclusion would require a factual determination as to the merits of the case, a task not before this Court. The phrase "Sudden and Unexpected Event" implicates the nature of the insurance coverage to be addressed by the Canadian Court, pursuant to the applicable rules of interpretation. This Court's task is to determine whether the request is reasonably calculated to lead to admissible information. As discussed previously, Plaintiff's request is so focused.

### E. Allegations of Bad Faith

BP, throughout its pleadings, impugns both Plaintiff's and Plaintiff's counsel's motives in litigating these issues before this Court. Norex's *real purpose*, according to BP, is to "go on a fishing expedition through BP America's files." (BP Opposition at 6.) More pointedly, BP states that, "Norex is masking its real motives again in this Court," that it has "repeatedly obscured" the facts, that "Norex continues to act without full candor," that "the real purpose of Norex's request" is questionable, that Norex's "attempt to thrawl [sic]" through BP's documents "appears to be merely a further attempt to harass," and that "Norex is proceeding other than in good faith." (BP Opposition.) These remarks are intemperate and transgress the bounds of propriety.

The Court takes allegations of bad faith very seriously, and is ready to address any supported instances of it by members of the bar. It takes as equally serious what appears to be a bare allegation of bad faith, made merely to incite further wrangling. When allegations of bad faith have been levied upon a member of the bar by a fellow member of the bar, some party's conduct has likely run afoul of Rule 11. If the allegations are true, the receiver of the criticism has acted inappropriately. When the allegations are untrue, or not sufficiently supportable, the party making the allegations is to blame. The Court urges both parties to continue to represent their clients vigorously, but to do so professionally and civilly.

### III. CONCLUSION

For the reasons stated above, it is hereby this ___ day of March, 2005

**ORDERED** that the Plaintiff's Motion to Compel is **GRANTED**, and it is

**FURTHER ORDERED** that third party BP's Motion to Quash is **DENIED**, and it is

**FURTHER ORDERED** that third party BP shall make available to Plaintiff all documents responsive to the previously made request upon which this action has been brought, and it is,

**FURTHER ORDERED** that the parties shall create as between them a confidentiality agreement limiting the use of the requested information to the pending case before the Court of Queen's Bench, in Canada.

**SO ORDERED.**

_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE