IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NOREX PETROLEUM LIMITED**<br><br>          Petitioner,<br><br>v.<br><br>**CHUBB INSURANCE COMPANY OF CANADA**<br>          et al<br><br>          Respondents. | No.   1:04-MC-00281-CKK |

**NOREX PETROLEUM LIMITED'S MEMORANDUM OF LAW
IN OPPOSITION TO BP AMERICA INC.'S MOTION
FOR A PARTIAL STAY AND PARTIAL RECONSIDERATION
OF THE COURT'S ORDER DATED MARCH 9, 2005
AND IN SUPPORT OF NOREX'S CROSS-MOTION
TO COMPEL THE PRODUCTION OF ALL REMAINING RESPONSIVE
DOCUMENTS BY APRIL 12, 2005**

**I.     PRELIMINARY STATEMENT**

BP America Inc. ("BP") has moved for partial reconsideration and partial stay of this Court's March 9, 2005 order compelling BP to produce all documents responsive to the subpoena of Norex Petroleum Limited ("Norex") and Norex has filed a cross-motion to compel the production of all remaining responsive documents so that they can be used at a April 14, 2005 deposition in the Canadian Litigation.[1]

The sole issue in BP's motion is whether the Court had the power to compel the production of documents located outside of the United States within BP's admitted "possession,

---

[1] Based on this District's local rules, it appears that a motion for reconsideration is the procedure used to appeal the decision of a magistrate judge to the district court.   In undersigned counsel's experience, a request for a stay is normally presented first to the judge issuing the order, which in this case would be Magistrate Judge Kay. Therefore, Norex respectfully suggests that BP's request for a partial stay and Norex's cross-motion to be resolved by Judge Kay.

custody, or control" pursuant to a Rule 45 subpoena issued under the authority of 28 U.S.C. §1782. BP's motion for reconsideration should be denied because the plain language of §1782 provides that when a person is found within a district, that person may be compelled to produce documents in accordance with the Federal Rules of Civil Procedure, and pursuant to Rule 45, a person may be compelled to produce documents in its "possession, custody, or control" which includes documents located in another district or outside of the United States as a matter of law.

## II.  PROCEDURAL HISTORY

### A.  The Canadian Case

Norex filed claims against the Chubb Insurance Company of Canada ("Chubb"), Ingosstrakh Insurance Company Ltd. ("Ingosstrakh"), and Great Northern Insurance Company (the "Respondents") in Canada (the "Canadian Litigation") for insurance coverage and losses related to oilfield equipment (the "Oilfield Equipment") owned by Yugraneft, a Russian oil company of which Norex was the controlling shareholder, and in which Norex has an insurable interest. The Oilfield Equipment was taken by the Tyumen Oil Company ("TNK") through corruption of Russian court proceedings against Norex and Yugraneft and seized by TNK security forces armed with machine guns. Defendant Ingostrakh moved to dismiss the Canadian Litigation for *forum non conveniens*.

TNK's seizure of the Oilfield Equipment was part of an overall scheme to take over a substantial part of the Russian oil industry through corruption of Russian courts and government officials. BP America Inc. ("BP"), formerly known as BP-Amoco, was also a victim of the scheme and amassed substantial evidence of TNK's bribery and corruption. Some of this evidence was presented to U.S. government officials as part of BP's successful effort to block an Export-Import Bank loan guarantee in favor of TNK until assets in which BP had an interest

were returned.  Ultimately, TNK and BP settled their differences; BP purchased a 50% interest in TNK through the formation of a joint company known as TNK-BP, which is the ultimate parent company of Yugraneft.   The deposition of Professor Solomon, Ingosstrakh's purported expert who professes that Russian courts are adequate and not subject to high risks of corruption, is scheduled for April 14, 2004.

Although Judge Kay made clear in his Opinion that BP overstepped the bounds of propriety in accusing Norex of bad faith, BP has, once again, distorted the record in regard to the Canadian proceeding in an attempt to show that the instant documents may not be needed.[2]   For example, contrary to BP's assertion, Ingosstrakh is not the "primary" defendant in Canada, BP Brief at 5; rather, while it is responsible for the first layer of payment in the amount of $2.6 million, Chubb, as the excess insurer, is responsible for the entire $11.8 million claim.  Further, even if the Canadian court granted Ingosstrakh's *forum non conveniens* motion (for which the instant documents are highly relevant to Norex's opposition), the case would continue against Chubb.  And, as set forth in the declaration of Thomas H. Ferguson, Q.C., filed in support of Norex's Motion to Compel Production of Documents dated December 21, 2004, attached hereto as Exhibit "A", the case would proceed to trial at which the merits of Norex's claims, for which the instant documents are highly relevant, would be heard prior to the Court deciding Chubb's defenses. Ferguson Decl. at ¶¶ 11-14.

### B.   The Instant Petition

On May 27, 2004, Norex filed a Petition For Discovery In Aid of a Foreign Proceeding pursuant to 28 U.S.C. §1782 (the "Petition") to obtain information from BP regarding bribery and corruption in Russia by TNK and the Oilfield Equipment in order to oppose Ingosstrakh's

---

[2] In attempting to explain its intemperate accusations, BP asserts that it had a legitimate concern that Norex would publish the instant documents.  BP Brief at 6-7, fn. 3.  BP fails to inform the Court that prior to filing its motion to compel, Norex offered to enter into a confidentiality agreement if BP produced the documents; BP refused.

3

motion to dismiss and prove the merits of its claims.  The Petition was served upon Respondents and their Canadian counsel, who filed no objections.  On August 24, 2004, this Court granted the motion and on that same day, Norex served a Rule 45 subpoena upon BP, as located within this district, for the production of documents.  On September 17, 2004, BP served objections to the subpoena.  On November 18, 2004, Norex filed a motion to compel.   On December 2, 2004, BP responded and filed a cross motion to quash.  Norex thereafter replied.   The discovery dispute was referred to Magistrate Judge Kay.  On March 9, 2005, Norex's motion was granted and BP's motion to quash was denied.  On March 25, 2005, BP filed the instant motion for partial reconsideration.

### III. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 72(a) and Local Civil Rule 72.2(b), a party may seek reconsideration of a magistrate judge's ruling on a non-dispositive discovery dispute. *See* Fed. R. Civ. P. 72(a); LCvR 72.2.  A magistrate judge's ruling is entitled to deference and may be modified or set aside only if it is found to be "clearly erroneous or contrary to law." *See* Fed. R. Civ. P. 72(a); *Neuder v. Battelle Pac. Northwest Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000); *Arakelian v. National W. Life Ins. Co.*, 126 F.R.D. 1, 2 (D.D.C. 1989).

The "standard of review requires this court to affirm the Magistrate Judge's determination on a nondispositive issue 'unless on the entire evidence the district court is left with the definite and firm conviction that a mistake has been committed.'" *Novartis Pharms. Corp. v. Shalala*, 2000 U.S. Dist. LEXIS 6152, at *3  (D.D.C. April 28, 2000) *quoting Evans, et al. v. Atwood, et al.*, 1999 U.S. Dist. LEXIS 17545 (D.D.C. 1999). This standard has been equated with an abuse of discretion standard. *Evans*, at *1.

IV.     ARGUMENT

   A.  **IT WAS NOT AN ABUSE OF DISCRETION FOR THIS COURT TO GRANT NOREX'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHIN BP'S "POSSESSION, CUSTODY, OR CONTROL"**

      1.  **§1782 Permits the Production of Documents Located Outside of the United States**

Judge Kay expressly considered the issue of compelling the production of documents located outside of the United States and, following the plain language of §1782,[4] rejected BP's claims that §1782 may be only used to obtain documents physically located in the United States stating:

> This proposition is belied by the text of the statute which is oriented to the location of the party that is the target of the subpoena, not the location of the specific documents sought. See §1782. The statute requires merely that the target of the subpoena have within their possession, custody or control the documents sought.

Opinion at 5. The Court further stated: "There is no dispute that the respondent is within the jurisdiction of this Court, and that the respondent is in possession, custody or control of the requested documents." *Id.* at 6. The Court relied on *Edelman v. Taittinger,* 295 F.3d 171, 177 (2d Cir. 2002), which observed that "there may be reason to treat documentary evidence … different than testimonial evidence … Unlike documentary evidence, §1782(a) contains express geographic restrictions on access to testimonial

---

[4] 28 U.S.C. §1782 in pertinent parts provides:

**Assistance to foreign and international tribunals and to litigants before such tribunals**

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign … tribunal … . The order may be made … upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. … To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

5

evidence … Documentary evidence is another matter because a subpoena is served on a person who has custody of or access to the documents, not on the papers themselves."

The Order is consistent with the teaching of the Supreme Court in *Intel v. Advanced Micro Devices, Inc.*, 124 S.Ct. 2466 (2004), which held the plain language of §1782 precluded "categorical limitations" on the statute's reach. *Id.* at 2478. Even BP's oft quoted Professor Hans Smit recognized that *Intel* marked the end of limitations being read onto the statute: "Justice Ginsburg's elegant, eloquent, and most persuasively reasoned decision, disposes of virtually all of the limitations the lower courts had read into Section 1782." Hans Smit, *The Supreme Court Rules on the Proper Interpretation of Section 1782: Its Potential Significance for International Arbitration*, 14 Am. Rev. Int'l Arb. 295, 331 (2003) [sic][5] (hereinafter "Smit, *Proper Interpretation*").

Contrary to the clear mandate of *Intel*, BP seeks to ignore the plain language of the statute and read a limitation onto §1782 to limit the territorial reach of documents to be produced pursuant to a Rule 45 subpoena.[6]

First, BP's approach to interpreting §1782 was flatly rejected by *Intel* and in his concurring opinion, Justice Scalia stated that the "Court's disposition is required by the text of the statute. None of the limitations urged by petitioner finds support in the categorical language of 28 U.S.C. §1782(a)," *Intel* at 2484, and is consistent with the long established rule of statutory interpretation that "where, as here, the words of the statute are unambiguous, the judicial inquiry is complete." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003) (citations and internal quotations omitted).[7] Again, Hans Smit is in accord that no limitation should be read onto the

---

[5] Although the article is dated 2003, it discusses *Intel*, which was decided in 2004.

[6] BP *does not dispute* that a Rule 45(a)(1)(c) subpoena upon a person within the district encompasses documents in the possession, custody, or control of that person located outside the district or the United States.

[7] BP makes *no argument* that Section 1782 is ambiguous.

6

statute and that its plain language is controlling: "I have considerable sympathy for Justice Scalia's concurring opinion to the effect that the plain text of the statute provides all the answers and that the references to legislative history and academic comments in unnecessary." Smit, *Proper Interpretation* at 331.  What the statute says is "the only sure expression of the will of Congress."  *Intel* at 2485 (concurring opinion).   "If Congress had intended to impose such a sweeping restriction on the district court's discretion [which would impose the foreign-discoverability restriction], at a time when it was enacting liberalizing amendments to the statute, it would have included statutory language to that effect.'" *Intel* at 2480 (*quoting In re Application of Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993)).

Second, the pre-*Intel* cases relied upon by BP are of no assistance as neither matter grafted a territorial limitation onto §1782.  *See Kuwait Inv. Auth. v. Sarrio S.A. (In re Sarrio, S.A.)*, 119 F.3d 143, 147 (2d Cir. 1997) ("[I]t is unnecessary for us to decide … the geographic reach of §1782"); *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1080 (2d Cir. 2002) ("We need not rule, however, on the question whether §1782 can ever support discovery of materials outside of the United States").  BP's argument for reliance upon the overruled district court decision in *Sarrio* which relied upon its reading of §1782's legislative history is misplaced, because as noted by Justice Scalia, relying upon the legislative history of §1782 when its language is unambiguous is "not only (as I think) improper but also quite unnecessary." *Intel* at 2484.  Hans Smit echoed this sentiment.  Smit, *Proper Interpretation* at 331.  Notably, in *Edelman,* the Second Circuit observed that it had expressly declined to affirm the district court's interpretation that §1782 did not apply to documents outside of the United States on appeal in *Sarrio*.  *Edelman* at 177.

7

Third, BP's reliance upon the pre-*Intel* case of *Kestral Coal Pty. Ltd. v. Joy Global Inc.*, 362 F.3d 401 (7th Cir. 2004) is equally misplaced. *Kestral* concerned unique circumstances whereby the petitioner sought an end run around the Australian court hearing the foreign proceeding by seeking to compel the American parent, a defendant to the foreign proceeding, to produce documents held by its four foreign subsidiaries, also defendants in the foreign proceeding, in which the Australian judge had ruled that the foreign subsidiaries were not required to produce the documents in question. While *Kestral* questioned whether the American parent could be required to produce documents held by its subsidiaries, its ultimate rationale in reversing the order compelling production was that Justice Muir, the Australian judge, "already has analyzed Kestrel's need for the documents and held that it has none--at least not yet. If, as Justice Muir concluded, Kestrel does not need these documents to make out its claim, then no purpose would be served by their production in the United States under §1782. If, however, the documents become important later, the most sensible recourse is a renewed application to the Australian court." *Id.* at 406.

As relevant here, "[a]s the federal courts have uniformly recognized, 'control is the test with regard to the production of documents [and] is defined not only as possession, but as the legal right to obtain the documents on demand.'" *Kifle v. Parks & Hickory Ass'n*, 1998 U.S. Dist LEXIS 22250, at *3 (D.D.C. October 15, 1998) (Kollar-Kotelly, J) *quoting Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). "'Control' has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought upon demand." *Dietrich v. Bauer*, 2000 U.S. Dist. LEXIS 11729, at *7 (S.D.N.Y. Aug. 16, 2000) (citations omitted.) "This principle applies where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation." *Id.* Contrary to BP's

8

argument, *Gerling Int'l Ins. Co. v. Commissioner*, 839 F.2d 131, 140 (3d Cir. 1988), which it cites, stands for the helpful proposition that "Where the relationship is thus such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." *Id.* at 141.  Here, BP has not denied the ability to control the documents for its business needs and, in fact, had access to these documents for its own lobbying program.

Norex has served a subpoena on BP America, an *American* corporation located in this district, which amassed and utilized the requested documents in its American media and lobbying campaign.  Under BP's theory, a court's ability to compel the production of documents would no longer be based upon its jurisdiction over the person (such as it is now), but would be based on its ability to obtain jurisdiction over the requested documents.  Not only is this contrary to Rule 45's jurisprudence, it would encourage companies – including American companies such as BP America and especially large multi-national corporations, to store documents outside the United States.

Further, under BP's theory, a petitioner which seeks documents from an American company would be forced to utilize procedures across the globe, i.e. in every country in which the subpoenaed person might have documents, such as at least the B.V.I., England, and Russia in the instant case, instead of obtaining them from the controlling party in one proceeding.   Such a waste of the resources of litigants, as well as foreign courts and administrative bodies, is self evident and contrary to the statute's purpose. *Intel v. Advanced Micro Devices, supra.*, 124 S.Ct. at 2476 ("§1782's twin aims … [are] providing *efficient* assistance to participants in international

litigation and encouraging foreign countries by example to provide similar assistance to our courts") (emphasis added, quotation marks omitted).

Fourth, BP's reliance upon academic fears of the U.S. becoming a "clearinghouse for world-wide information gathering" is unfounded as this law, as currently applicable, has been on the books for more than 40 years, and there is absolutely nothing to suggest that this has, or will, occur. Further, such fears are easily allayed because it is within the court's discretion whether to compel the production of documents, both within and outside of the United States. Instantly, the court correctly found (and certainly did not abuse in discretion in finding) that the documents sought are highly relevant to the Canadian proceeding, within the "possession, custody, or control" of BP, and not burdensome to produce.

> **2. This Court Did Not Abuse Its Discretion in Finding that the Documents Located Outside of the United States were in BP's "Possession, Custody, or Control"**

In the Order, this Court determined that "there is no dispute" that BP is within the jurisdiction of this Court and has "possession, custody or control" of the requested documents. Opinion at 6.   This finding should not be disturbed.

First, as *BP did not raise this issue for reconsideration*, it made no showing of any abuse of discretion by Judge Kay in making this finding. *See* BP Brief at 1 ("the sole issue now brought … for reconsideration concerns the March 9 Order's … ruling that §1782 allows U.S. courts to compel the production of documents held *outside of the United States*").

Second, Judge Kay's determination was nevertheless well founded because BP admitted and demonstrated "possession, custody or control" of the requested documents located outside of the United States when it "directed its employees to ensure that the documents requested by the Subpoena are properly preserved and, on a voluntary basis, its ultimate parent, B.P. p.l.c., a U.K. company, has directed employees of BP America's overseas affiliate to do the same." *See* BP

10

Objections at 3, attached hereto as Exhibit "B". In addition, BP acknowledged the continued preservation of documents sought by Norex in the New York matter.[8] BP Objections at 5, Exhibit "B". Obviously, such preservation is not possible without having <u>control</u> of the documents.

Third, in the underlying motion papers, BP never submitted evidence disputing its "possession, custody or control" of the requested documents. *See* Non-Party BP America Inc.'s Statement of Points of Law and Authority in Opposition to Norex Petroleum Limited's Motion to Compel and in Support of BP America Inc.'s Cross-Motion to Quash, dated December 2, 2004.

### 3. This Court Did Not Abuse Its Discretion In Ordering BP to Produce the Documents at Issue

As explained above, §1782 authorizes compelling the production of documents through the Federal Rules of Civil Procedure, which per Rule 45, permits compelling the production of documents located outside of the United States that are within the "possession, custody or control" of the party.

First, the decision whether to exercise such power is within the sound discretion of this Court. *Esses v. Hanania (In re Esses)*, 101 F.3d 873, 876 (2d Cir. 1996) ("Section 1782 grants district courts wide discretion to determine whether to grant discovery"). Plainly, this Court did not abuse its discretion, as explained above.

Second, BP's argument that the instant Order represents "an end-run around the sovereign prerogatives of the United Kingdom" is nonsense. Putting aside that BP makes no specific argument that production of the documents in question would be limited or somehow precluded by UK law, American courts have long rejected the notion that entities which have

---

[8] As described in BP's Brief, Norex had filed litigation in New York against TNK and other Defendants and, as relevant hereto, sought documents pursuant to subpoena, both in the United States and abroad, from BP America, which represented that it had preserved them, demonstrating its control over them.

11

chosen to do business in the U.S., as BP America has done, are immune from producing documents within their "possession, custody or control" located abroad. *See Gerling Int'l Ins. Co. v. Commissioner*, 839 F.2d 131, 140 (3d Cir. 1988) ("The location of the documents, whether within the territorial jurisdiction of the court or not, is irrelevant."); *Marc Rich & Co., A.G. v. United States*, 707 F.2d 663, 667 (2d Cir. 1983) ("Neither may the witness resist the production of documents on the ground that the documents are located abroad."); *Dietrich v. Bauer*, Docket No. 95 Civ. 7051, 2000 U.S. Dist. LEXIS 11729, at *6 (S.D.N.Y. Aug. 16, 2000) ("It is also immaterial that the documents sought may be located abroad, as the test for production of documents is control, not location.") (citations omitted).

### B. BP FAILS TO SATISFY THE REQUIREMENTS FOR A STAY

As BP concedes, in order to obtain a stay of the Order, it must meet the burden of establishing**:**

> (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? Without such a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review. (2) Has the petitioner shown that without such relief, it will be irreparably injured? . . . (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? . . . (4) Where lies the public interest? . . .

*Washington Metropolitan Area Transit Com. v. Holiday Tours, Inc.* 559 F.2d 841, 843 (D.C. Cir. 1977) *quoting Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921, 925 (1958). BP fails this test.

First, BP has not made a "strong showing" that it is likely to prevail on its motion for reconsideration. The language of the statute and teachings of *Intel* are clear.

Second, BP has failed to detail any injury, let alone "irreparable" injury, that would befall it by the production of the documents, disingenuously arguing that irreparable harm would occur

because the so-called *status quo ante* could not be "restored".  However, disturbing the *status quo ante* by providing the production of documents is hardly irreparable harm; if so, every discovery order would be subject to stay.  BP's claims of "substantial burden" for collection and review of the documents, which it has already acted to preserve, were squarely rejected by Judge Kay in the March 9, 2005 Order, and <u>not</u> raised in the instant motion for reconsideration. Opinion at 4.

Third, Norex would be harmed by the stay as the requested documents are needed for the deposition of Professor Solomon for which the requested documents are relevant is scheduled for April 14, 2005.

Fourth, the public interest per §1782 and *Intel* is the "efficient" assistance to participants before foreign tribunals.  BP's request for a stay is counter to this purpose, and only seeks to delay the production of documents in its "possession, custody or control".

### C. NOREX'S CROSS-MOTION TO COMPEL THE PRODUCTION OF ALL REMAINING RESPONSIVE DOCUMENTS PRIOR TO THE APRIL 14, 2005 DEPOSITION SHOULD BE GRANTED

Although BP is correct that the Order did not set forth an explicit date for production of responsive documents, Norex's motion to compel, which the Court granted, provided for production within 10 days.   Given that the Motion was granted, it is hard to interpret the Court's order other than to compel production within this time period, which did not occur.

In any case, the subpoena was served on BP on August 24, 2004, more than 7 months ago.  In response to the subpoena, BP represented that it had acted to ensure preservation of the requested documents, including those overseas.   On March 9, 2005, this Court granted Norex's motion to compel.   BP has had more than sufficient time to collect the responsive documents;

13

production should be compelled by April 12, 2005, so that the documents can be reviewed before and used at the April 14, 2005 deposition.

## V.     CONCLUSION

For the foregoing reasons, BP's Motion should be denied and Norex's cross-motion to compel production of all remaining responsive documents by April 12, 2005 should be granted.

|  |  |
|---|---|
| | By:    /s/ Bruce S. Marks  <br>Bruce S. Marks, Esq.<br>Thomas Sullivan, Esq.<br>Gene M. Burd, Esq.<br>MARKS & SOKOLOV, LLC<br>1835 Market Street<br>6th Floor<br>Philadelphia, PA 19103<br>215-569-8901 |
| Dated: April 2, 2005 | Attorneys for Petitioner<br>Norex Petroleum Limited |