**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NOREX PETROLEUM LTD,

      Petitioner,

      v.

CHUBB INSURANCE CO. OF CANADA,
*et al*.,

      Respondent.

Misc. Action No. 04-0281  (CKK)

**MEMORANDUM OPINION**
(May 23, 2005)

This action concerns the ability of a party engaged in foreign litigation to obtain discovery from a domestic non-party where the documents at issue are held in a foreign country by the non-party's foreign parent corporation.  At issue is the proper interpretation of 28 U.S.C. § 1782, which establishes a mechanism by which United States district courts may provide discovery assistance to litigants in foreign proceedings.  Petitioner Norex Petroleum Limited ("Norex") has claims pending in a Canadian court against several insurance companies, and pursuant to 28 U.S.C. § 1782, seeks documentary evidence from BP America Inc. ("BP America"), a non-party to the Canadian litigation.  Although BP America has provided records held in the United States, it maintains that 28 U.S.C. § 1782 does not permit Norex to seek production of documents held outside the United States by BP America's parent corporation.  This Court originally referred this issue to a magistrate judge for resolution, who granted Norex's motion to compel production of all documents sought, both foreign and domestic.  BP America has now filed a Motion for Partial Reconsideration of the magistrate judge's order with respect to those documents held outside the

United States. Norex has filed a Cross-Motion to Compel these documents.

After careful consideration of the parties' briefs, the statute and the relevant law, as well as the original memorandum opinion and order of the magistrate judge, the Court finds that it would be inappropriate to grant Norex discovery of the disputed documents. Accordingly, the Court shall grant BP America's Motion for Partial Reconsideration and deny Norex's Motion to Compel.[1]

## I.     BACKGROUND

### A.     *Factual and Procedural Framework*

The instant action arises against the backdrop of a suit pending before the Queen's Bench of Alberta, Canada. In that case, Norex Petroleum filed claims against Chubb Insurance Company, Ingosstrakh Insurance Company Ltd., and Great Northern Insurance Company for insurance coverage and losses related to oilfield equipment owned by Yugraneft, a Russian oil company of which Norex was the controlling shareholder. Norex Mot. to Compel ("Mot. to Compel") at 1. By Norex's account, Tyumen Oil Company ("TNK"), a business enterprise with a "scheme to take over a substantial part of the Russian oil industry through corruption of the Russian courts and government officials," illegally took control of Norex's interest in Yugraneft by corrupting Russian bankruptcy and court proceedings and affecting an armed seizure of the Yugraneft oilfield equipment in 2001. *Id*. at 1-2, Ex. C (Statement of Claim in Canadian Suit).

---

[1]BP America's reconsideration motion was accompanied by a motion to stay the proceedings pending the Court's reconsideration of the magistrate judge's order. The Court finds that since it has now resolved the motion for reconsideration, the motion for a stay is moot. In addition, Norex moved for sanctions against BP America in light of BP America's failure to produce the disputed documents. In light of the present ruling, the Court finds that Norex's motion for sanctions shall be denied.

Norex filed suit against Chubb, Ingosstrakh and Great Northern in the Canadian court on

July 17, 2002, seeking payment of insurance claims.  As part of the Canadian litigation,

Ingosstrakh filed a motion to dismiss for *forum non conveniens*, arguing that a Russian court

would serve as an adequate alternative forum.  *Id*. at 3-4.  The Canadian litigation remains

ongoing.[2]

Again by Norex's account, "BP was a victim of the same corrupted Russian bankruptcy

and amassed substantial evidence of TNK's bribery and corruption."  *Id*. at 2.  Norex states that

in "1999, through corrupted Russian proceedings, TNK took control of the assets of

Chernogorneft, a subsidiary of Sidanco, a Russian oil company partially owned and managed by

BP, through bribery of officials and corrupted court proceedings in Russia."  *Id*. at 4.  Although

"[u]ltimately, TNK and BP settled their differences," Norex states that "[s]ome of this evidence

was presented to U.S. government officials as part of BP's successful effort to block a U.S.

Export-Import Bank loan guarantee in favor of TNK until assets in which BP had an interest

were returned."  *Id*. at 2.

The Court notes that, although throughout its filings Norex refers generally to "BP," its

---

[2]Norex also filed suit against TNK and other defendants in the Southern District of New
York.  Mot. to Compel at 5.  That suit was dismissed for *forum non conveniens*, a decision which
was appealed.  *Id*. at 5; *see also* Opp. and Mot. to Quash at 4, Ex. 1 (*Norex Petroleum Ltd. v.
Access Indus.*, 304 F. Supp. 2d 570 (S.D.N.Y. 2004)).  However, before this suit was dismissed,
Norex served document requests on non-party BP.  *See* Mot. to Compel Ex. M (S.D.N.Y.
Discovery).  The parties dispute how to properly characterize the magistrate judge's ruling in
New York on those discovery requests.  Norex states that "[t]he court granted Norex's discovery
requests in part and compelled BP to preserve certain documents."  *Id*. at 5.  BP America, on the
other hand, explains that the magistrate judge's ruling held only that "given BP's apparent
willingness to preserve [the documents], the issuance of a preservation subpoena seems
reasonable."  Opp. and Mot. to Quash at 7, Ex. 6 (S.D.N.Y. Magistrate Judge's Order of Mar. 14,
2003).

action in this Court is addressed to BP America.  *See id*. at 1.  In its Opposition to Norex's

Motion to Compel and Cross-Motion to Quash ("Opposition and Motion to Quash"), BP

America states that the events in Russia with respect to Chernogorneft involved BP p.l.c., BP

America's U.K.-based parent.  Opp. and Mot. to Quash at 2.

### B.     *Norex's Discovery Request Under 28 U.S.C. § 1782*

On May 27, 2004, Norex filed its Petition for Discovery in Aid of a Foreign Proceeding

Pursuant to 28 U.S.C. § 1782.  This Court granted Norex's petition, noting that 28 U.S.C. § 1782

did not preclude BP America from filing a motion to quash in response to the discovery requests.

*Norex v. Chubb*, Misc. No. 04-281 (D.D.C. Aug. 24, 2004) (order granting Petition for

Discovery).  On November 18, 2004, Norex filed its Motion to Compel, seeking documents from

BP America that BP America had failed to produce in response to Norex's subpoena.  BP

America opposed Norex's Motion to Compel, and filed its own Cross-Motion to Quash the

subpoena.

### C.     *The Magistrate Judge's Ruling*

On February 14, 2005, the Court referred this dispute to Magistrate Judge Alan Kay for a

ruling pursuant to Local Civil Rule 72.2.  On March 9, 2005, Magistrate Judge Kay ruled in favor

of Norex, granting Norex's Motion to Compel, and denying BP America's Motion to Quash.  *See*

*Norex*, Misc. No. 04-281 (D.D.C. March 9, 2005) (order granting Motion to Compel, denying

Motion to Quash).  In discussing the question of Norex's request for an order compelling the

production of documents that are located outside of the United States, Magistrate Judge Kay

found that 28 U.S.C. § 1782 permits the discovery of documents outside the United States, so

long as the party that is the target of the subpoena is within the jurisdiction of the Court.  *See id*.

at 5.  Magistrate Judge Kay, relying to some degree on language from the Second Circuit's

decision in *Edelman v. Taittinger*, 295 F.3d 171 (2d Cir. 2002), wrote that "[t]he statute requires

merely that the target of the subpoena have within their possession, custody or control the

documents sought."  *Id*. at 5-6.  Remarking that "the location of the subpoena, not the location of

the documents, is the determinant under the statute," Judge Kay found that "[t]here is no dispute

that [BP America] is in possession, custody or control of the requested documents."  *Id*. at 6.

Accordingly, he granted Norex's request for discovery from BP America of documents held

outside the United States.

> **D.**       ***Motion for Partial Reconsideration***

Displeased with Magistrate Judge Kay's ruling, BP America filed its Motion for Partial

Reconsideration on March 25, 2005.  Norex opposed this motion, and filed its own Cross-Motion

to Compel the Production of all Remaining Responsive Documents.  The parties fully briefed

these motions.  In its Motion for Partial Reconsideration, BP America challenges only "the

March 9 Order's unprecedented -- and BP America submits, incorrect -- ruling that § 1782

allows U.S. courts to compel the production of documents held *outside the United States* by a

foreign parent and other foreign affiliates of the subpoenaed U.S. entity."  Mot. for Partial

Recons. ("Mot. for Recons.") at 1.  BP America contends that the caselaw surrounding 28 U.S.C.

§ 1782 requires the Court to find that the ruling of the magistrate judge was in error, and that

Norex cannot discover documents held abroad

## II.     LEGAL STANDARD

This matter was referred to Magistrate Judge Kay under Local Civil Rule 72.2, which

permits referral of certain matters to magistrate judges for determination. *See* L. Civ. R. 72.2(a). That Rule provides that "[a]ny party may request the judge to reconsider a magistrate judge's ruling under paragraph (a) by filing a motion to reconsider . . . ." L. Civ. R. 72.2(b). The Rule further provides that "[u]pon a motion for reconsideration or *sua sponte*, a judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be clearly erroneous or contrary to law." L. Civ. R. 72.2(c).

## III.   DISCUSSION

### A.    *Standards for Considering Discovery Requests Pursuant to 28 U.S.C. § 1782*

Section 1782 of Title 28 of the United States Code, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," provides in relevant part that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28 U.S.C. 1782(a). The statute further provides that, "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." *Id*. The "twin aims" of § 1782(a) are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 124 S.Ct. at 2476 (citation omitted).

The Court finds that, in light of the complexity of the issue that has arisen on BP America's Motion for Partial Reconsideration, a more fulsome discussion of the caselaw surrounding § 1782 than is available in the magistrate judge's order is warranted. At the outset, a

request for discovery made under § 1782 presents two primary inquiries.  A district court considers first, whether it is authorized to grant the request, and second, whether it should exercise its discretion to do so.  *See Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 124 S.Ct. 2466, 2482 (2004) ("a district court is not required to grant a § 1782(a) discovery request simply because it has the authority to do so.").  Generally, courts consider three requirements to determine whether a district court is authorized to grant a discovery request under § 1782: (1) whether the person from whom discovery is sought resides or is found in the district where the action has been filed; (2) whether the discovery sought is for use in a proceeding before a foreign or international proceeding; and (3) whether the application is made by a foreign or international tribunal or "any interested person."  *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (citation omitted).  In the instant case, there is no dispute that Norex has served its discovery request on BP America, which is located within this District, nor is there any dispute that the requested discovery is for use in a foreign proceeding, or that the application is made by an appropriate interested party in that proceeding.

Assuming a district court has the authority to grant a discovery request under § 1782, the court then considers whether to exercise its discretion to do so.  "This discretion, however, is not boundless.  Rather . . . district courts must exercise their discretion under § 1782 in light of the twin aims of the statute," which have been described as "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts . . . ."  *Id*. at 84 (citations omitted).

The Supreme Court has discussed several "factors that bear consideration" by a district court "in ruling on a § 1782(a) request." *Intel*, 124 S.Ct. at 2483.  First, the Supreme Court has stated that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id*.  The Supreme Court's rationale is that the foreign tribunal has jurisdiction over parties before it, while "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*.  Second, a district court should "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id*.  Third and fourth, a court "could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and "may . . . reject[] or trim[]" any "unduly intrusive or burdensome requests . . . ." *Id*.

> **B.**    ***Caselaw Suggests That Extraterritorial Application of 28 U.S.C. § 1782 Would Not Be Appropriate***

The instant action deals with the application of § 1782 in the narrow context of documents held abroad, as opposed to documents that are physically present in the district where the § 1782 action is brought.  The Court must consider whether there exists a limitation on the statute preventing its extraterritorial application.  BP America argues that § 1782 does not authorize the production of documents located outside the United States.  *See* Mot. for Recons. at 7-11; BP America Reply in Support of Mot. for Recons. ("BP America Reply") at 2-3.  Norex

8

argues that no such limitation exists.  Norex Opp. to Mot. for Recons. ("Norex Opp.") at 5-10;

Norex Reply Mem. in Further Support of its Cross-Mot. to Compel ("Norex Surreply") at 4-5.

In conducting this examination, the Court examines caselaw that is illuminating although

not definitive, starting with *In re Sarrio S.A.*, No. 9-372, 1995 WL 598988 (S.D.N.Y. Oct. 11,

1995).  In *In re Sarrio S.A.* ("*Sarrio I*"), the district court considered a § 1782 application by a

Spanish corporation, Sarrio S.A., seeking production of documents from Chase Manhattan

Corporation and Chase Manhattan Bank, N.A. (collectively "Chase") for use in Sarrio S.A.'s suit

filed in Spain against the Kuwait Investment authority ("KIA") and three Spanish corporations.

Counsel for non-party Chase, anticipating a subpoena requesting documents "related to a

transaction carried out by Chase's European branches," requested that those documents be sent to

him in the United States for review.  *Id*. at *1.  After the documents were provided to counsel for

Chase, which is headquartered in New York City, the subpoena was served, requesting, *inter

alia*, the documents sent from the European branches to counsel in the United States.

Determining that these documents were only in the United States for review by counsel, and as

such were subject to the attorney-client privilege, the court considered the documents to be

located in the Chase branches in Europe.  *Id*. at *3

The district court, noting that the question of whether § 1782 "empowers this Court to

require the production of documents from the foreign files of a witness is not easily decided,"

remarked that the statutory language "does not indicate that discovery of documents is limited to

evidence located in the United States."  *Id*. at *2.  However, the court found that the background

to the statute suggested a different result:  "The legislative history . . . reflects that the primary

intent of the 1964 amendments to Section 1782 was 'to clarify and liberalize existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary *evidence in the United States*.'" *Id*. (quoting S.Rep. No. 1580, 88th Congress, 2nd Sess. (1964)) (emphasis added by *Sarrio I* court).  The court also cited Professor Hans Smit, who prepared the final version of the statute, in finding that "the purpose of the statute is only to provide evidence from witnesses and documents located in the United States," in part because "if Section 1782 could be used to obtain discovery [of] evidence located in a foreign country it would become an instrument for interfering with the regular court procedures of the foreign country," and because such an approach would encourage "a heavy influx of discovery applications under Section 1782." *Id*.  In light of these two authorities, the court stated that "it seems clear that, despite its unrestrictive language, Section 1782 was not intended to provide discovery of evidence maintained within a foreign jurisdiction." *Id*.

The district court's decision in *Sarrio I* was subsequently appealed to the Second Circuit. *See Chase Manhattan Corp. v. Sarrio S.A.*, 119 F.3d 143 (2d Cir. 1997) (*Sarrio II*).  For procedural reasons, the Second Circuit reversed and remanded the case without reaching the issue of § 1782's "geographic reach." *Id*. at 147.  The Second Circuit noted in dicta, however, that although "[o]n its face § 1782 does not limit its discovery power to documents located in the United States," the Senate report and policy concerns cited by the district court indicated that "despite the statute's unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the United States." *Id*.

The next case the Court considers is the Ninth Circuit's decision in *Four Pillars*

*Enterprises Company v. Avery Dennison Corporation*, 308 F.3d 1075 (9th Cir. 2002).  In that case, a Taiwanese corporation, Four Pillars, sought discovery in California of documents that Avery Dennison possessed in Asia for use in civil suits Four Pillars was pursuing against Avery Dennison in China and Taiwan.  The magistrate judge had ruled on the initial application, finding that he did "not view the purpose of § 1782 as encompassing the discovery of material located in foreign countries."  *Id*. at 1079.  The Ninth Circuit found that "[t]here is some support for the magistrate judge's view," citing the Second Circuit's opinion in *Sarrio II*, in which the Second Circuit noted the "persuasiveness of [the] district court's view that Congress intended § 1782 to reach only evidence located in the United States."  *Id*.  The Ninth Circuit affirmed the magistrate judge's denial of Four Pillars' request for documents held in Asia, but found that "[w]e need not rule . . . on whether § 1782 can ever support discovery of materials outside the United States," because of the circumstances of the case.  *Id*. at 1080.  The Ninth Circuit found that the documents requested were located in China, where the Chinese courts with jurisdiction over the parties could make appropriate discovery rulings, and "[i]n the absence of any showing that Avery Dennison was evading § 1782 by spiriting materials out of the United States," the Court could affirm the magistrate judge's ruling without deciding the question of § 1782's geographic reach.  *Id*.

Although these cases dealing with documentary evidence suggest that documents held outside the United States might be beyond the scope of § 1782, the Second Circuit has found that testimonial evidence is subject to its own standard.  In *Edelman v. Taittinger*, 295 F.3d 171 (2d Cir. 2002) a French company sued a minority shareholder in France.  The minority shareholder

sought to depose Claude Taittinger, a member of the French company's board of directors,[3] who

was served with a subpoena issued pursuant to § 1782 while visiting New York City.  Taittinger

returned to France, and the district court was faced with the question of whether § 1782 could be

used to compel his deposition.  The Court in *Edelman* discussed the decision in *Sarrio I*, and the

Second Circuit's language supporting the lower court's reasoning in *Sarrio II*, but ultimately

found that "[n]otwithstanding the seemingly broad rule announced in *Sarrio I* that § 1782 only

applies to evidence located in the united States, there may be reason to treat documentary

evidence, which was at issue in that case, different from testimonial evidence . . . ."  *Id*. at 177.

The Second Circuit remarked that "[c]ommon sense makes us think that documents are

maintained in a particular place, but the same is not true for individuals.  What a person will

testify to is located wherever that person is found."  *Id*.  Noting that the statutory language places

"an express geographic restriction on access to testimonial evidence," the court noted that

"[d]ocumentary evidence is another matter because a subpoena is served on a person who has

custody of or access to the documents, not on the papers themselves."  *Id*.  Ultimately, the

Second Circuit held that "regardless of any implicit limits on the location of documentary

evidence, we hold that if a person is served with a subpoena" for testimonial evidence "while

physically present in the district of the court that issued the discovery order, then for purposes of

§ 1782(a) he is 'found' in that district" and can be required to appear for a deposition."  *Id*. at

180.

     The Seventh Circuit has also had the opportunity to sidestep the relevant inquiry facing

---

[3]Mr. Taittinger "is also the head of Taittinger, S.A., another French company . . . famous
to the champagne cognoscenti."  *Edelman*, 295 F.3d at 174.

this Court.  In *Kestrel Coal v. Joy Global*, 362 F.3d 401 (7th Cir. 2004), an Australian company

sued Joy Global, an American company, and four of its British and Australian subsidiaries in an

Australian court.  The Australian court denied a request by the plaintiff for discovery from the

four subsidiaries because it believed the documents were unnecessary, and the plaintiff filed a

motion under § 1782 in the Eastern District of Wisconsin.  The plaintiff sought to compel Joy

Global to obtain documents from its foreign subsidiaries in Australia and Britain, and produce

them in Wisconsin for the plaintiff to use in its litigation in Australia.  Although the district court

granted the plaintiff's motion, the Seventh Circuit reversed.  Judge Frank Easterbrook quoted

Professor Hans Smit's language noting that "Section 1782 was not intended to enable litigants to

obtain in Spain evidence located in Spain that could not be obtained through proceedings in

Spain," because "Section 1782 should not be used to interfere with the regular court processes in

another country."  *Id*. at 404 (quoting Hans Smit, *American Assistance to Litigation in Foreign

and International Tribunals*, 25 Syracuse J. Int'l L. & Commerce 1, 11 (1998)).  Judge

Easterbrook then wrote:

> We need not determine whether § 1782 ever permits a district judge to require
> evidence to be imported from a foreign nation so that it may be handed over here
> and then exported.  Professor Smit's negative answer has some support, *see Four
> Pillars Enterprises Co. v. Avery Dennison Corp.* 308 F.3d 1075, 1079-80 (9th Cir.
> 2002); *In re Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997), but neither of these
> decisions is definitive.  The statement in *Sarrio* is dictum, and *Four Pillars* held
> that the district court in entitled to deny a request that documents outside the
> United States be fetched but did not hold that such a request must necessarily be
> rebuffed.  Once again there are other grounds of decision.  The documents not
> only are outside the United States but are also outside Joy Global's files.  They are
> in the custody of Joy Global's subsidiaries, which are not party to this proceeding
> under § 1782.

*Kestrel*, 362 F.3d at 404.  Ultimately, the Seventh Circuit held that under both § 1782 and the

applicable Federal Rules of Civil Procedure, the distinction between the parent company and its subsidiaries prevented the discovery of the foreign subsidiaries' documents simply by serving the United States parent company. *Id*. at 405.

This body of caselaw suggests that § 1782 is not properly used to seek documents held outside the United States as a general matter. Although no court has stated unreservedly that the approach taken in *Sarrio I* was the only possible interpretation of the statute, the circuits that have discussed it have done so without finding any error in the reasoning employed in *Sarrio I*. Indeed, each of the circuit cases cited above cite to this reasoning, and none indicates any grounds on which to find the reasoning flawed. It is clear, at a minimum, that the Court has found no case in which § 1782 has been used to permit the extraterritorial application of § 1782.

The only case that could arguably be read to challenge the view that § 1782 applies only to documents held within the United States is *Edelman*. Although Magistrate Judge Kay relied briefly on language from *Edelman* in granting Norex the documentary discovery it sought, *see Norex*, Misc. No. 04-281 (D.D.C. March 9, 2005) (order granting Motion to Compel, denying Motion to Quash) at 5-6, the Court finds that such a reading of *Edelman* is ultimately unpersuasive. The statements in *Edelman* addressing documentary evidence are dicta, because that case concerned only testimonial evidence. Furthermore, the court in *Edelman* did not question the reasoning in *Sarrio I*; rather, it merely drew a distinction between the approach taken in *Sarrio I* to documentary evidence and the approach the court was taking with respect to an individual's testimonial evidence. *See Edelman*, 295 F.3d at 177. The excerpt quoted by Magistrate Judge Kay does not suggest otherwise. In discussing the statute's "resides or is

found" language, the Second Circuit stated that "we need look no further . . . than the words of the statute to discern a geographic limitation with respect to testimonial evidence," but noted that "[d]ocumentary evidence is another matter because a subpoena is served on a person or has custody or access to the documents, not on the papers themselves.  For that reason neither court in the *Sarrio* case addressed the 'resides or is found' language of the statute."  *Id*.  The Second Circuit was merely pointing out that a geographic limitation on documentary evidence was not stated explicitly in the statutory language in the same way that "[t]he statute states that a *person* to a § 1782(a) order only if he 'resides or is found' in the district in which the issuing court sits." *Id*.  In drawing this distinction, the court in *Edelman* did not undercut the rationale in the *Sarrio* case.  Indeed, the *Edelman* court describes *Sarrio I* and *Sarrio II* without commenting critically on it one way or the other.  *Id*. at 176-77.

C.     **The Supreme Court's Decision in <u>Intel Corporation v. Advanced Micro Devices</u> Does Not Compel a Different Result**

The parties argue at some length over whether the Supreme Court's 2004 ruling in *Intel v. Advanced Micro Devices* requires a different result.  *See* Norex Opp. at 6-7; BP America Reply at 4-5; Norex Surreply at 4-5.  In that case, Advanced Micro Devices ("AMD") had filed an antitrust complaint against Intel Corporation with the Directorate-General for Competition of the Commission of the European Communities.  AMD then filed a § 1782 request in the Northern District of California, seeking an order requiring Intel to produce various documents in the United States.  The Supreme Court made a number of findings that, while noteworthy, are

inapplicable to the instant case.[4]  Despite the fact that the Supreme Court did not deal with the

question of documents held abroad, Norex quotes broad statements in *Intel*, largely out of

context, in support of its position that *Intel* permits the use of § 1782 for discovery of documents

outside of the United States.  *See* Norex Opp. at 6-7.

Norex claims that *Intel* "held the plain language of § 1782 precluded 'categorical

limitations' on the statute's reach."  *Id*. at 6 (quoting *Intel*, 124 S.Ct. at 2478).  However, Norex

fails to recognize that the Supreme Court's language was directed at *specific* categorical

limitations advocated by one party in that case and not at issue here.  Indeed, the language quoted

by Norex was directed at Intel's arguments that the Court should find limitations on the statute

with respect to what qualifies as an "interested person," a "tribunal," or a "proceeding," and

whether the statute included a foreign-discoverability requirement in order for discovery to be

authorized by a United States court.  *See Intel*, 124 S.Ct. at 2478 ("[We] reject the categorical

limitations Intel would place on the statute's reach.").  Despite Norex's mischaracterization to

the contrary, the Supreme Court did not issue a blanket rejection of limitations on the statute's

reach.  Furthermore, Norex relies on Justice Antonin Scalia's textualist approach, quoting his

view that "the Court's disposition is required by the text of the statute.  None of the limitations

urged by petitioner finds support in the categorical language of 28 U.S.C. § 1782(a)."  *See* Norex

---

[4]The Supreme Court held in *Intel* that:  (1) a complainant before a body such as the European Commission qualifies as an "interested person" within the meaning of the statute, even though it is not a "litigant" per se, *Intel*, 124 S.Ct. at 2478; (2) the Commission qualified as a "tribunal," *id*. at 2479; (3) the "proceeding" for which the party seeks discovery need not necessarily be pending, *id*. at 2479-80; and most notably (4) § 1782 does not "categorically bar a district court from ordering production of documents" if the evidence sought would not be discoverable under the law of the foreign jurisdiction, *id*. at 2480-82.

Opp. at 6 (quoting *Intel*, 124 S.Ct. at 2484 (Scalia, J., concurring).  Norex fails to mention,

however, that this language is from Justice Scalia's concurrence, not the majority opinion, and

consequently does not state the whole Court's view on whether limitations on § 1782's usage

must be explicit in the statutory language.

The Court recognizes that the factors for a district court's consideration discussed by the

*Intel* Court cut both for and against permitting discovery.  *See* Section III.A, *supra* (quoting *Intel*,

124 S.Ct. at 2483).  BP America is not a party to the foreign proceeding, and as such is not

subject to the jurisdiction of the Canadian court for discovery purposes.  This Court has no

information on the "receptivity of the [Canadian court] to U.S. federal-court judicial assistance,"

*Intel*, 124 S.Ct. at 2483, and as a consequence does not know whether the Canadian court would

find the requested discovery necessary or even useful.  Similarly, the Court has no information on

whether the Canadian court maintains "proof-gathering restrictions" that would adversely impact

Norex's discovery ambitions, but the parties' briefs do not suggest that Norex may be trying to

circumvent any such restrictions in the Canadian court.  However, the Court notes that it appears

the Canadian litigation may not even be at the stage in which discovery would be appropriate.

*See* BP America Mot. for Recons. at 5-6 (indicating a pending motion to dismiss).  The Court is

wary of granting discovery under § 1782 when it appears that the party seeking discovery may be

using the United States statutes and federal court system to "jump the gun" on discovery in the

underlying foreign suit.  Finally, whether Norex's specific requests are "unduly intrusive or

burdensome," *Intel*, 124 S.Ct. at 2483, is not central to the Court's present inquiry into whether

permitting discovery pursuant to § 1782 is appropriate in principle.

The fact remains that the Supreme Court's decision in *Intel* did not address the issue of extraterritorial application with respect to § 1782, and the Court's language rejecting "categorical limitations" was directed at the specific limitations at issue in that case.  Although it is possible that the Supreme Court would reach a similar result were it to consider extraterritorial application of § 1782 at some future date, this Court must work with the body of caselaw available to it at present.  The cases discussed *supra* suggest that extraterritorial application of § 1782 would not be in keeping with the aims of the statute, and indeed that documents held outside the United States are beyond the statute's intended reach.  Nothing in the Supreme Court's *Intel* decision addresses this issue or suggests otherwise.

> **D.     *Norex Has Not Demonstrated That BP America Has Possession, Custody or Control Over the Documents Sought***

Whether or not there is in fact a prohibition, either blanket or situation-specific, on employing § 1782 to discover documents located outside the United States, these documents are not discoverable for another reason based in the statute's invocation of the Federal Rules of Civil Procedure.  Section 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal," and that "[t]o the extent that the order does not prescribe otherwise, . . . the document or other thing [shall be] produced[] in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. 1782(a).  Looking to Federal Rule of Civil Procedure 45(a), which addresses the form and issuance of subpoenas, a subpoena must "command each person to whom it is directed . . . to produce and permit inspection and copying of designated books, documents or tangible things in the possession,

custody or control of that person . . . ."  Fed. R. Civ. P. 45(a)(1)(C).  Similarly, Rule 34(a) states

that "[a]ny party may serve on any other party a request . . . to produce . . . any designated

documents . . . which are in the possession, custody or control of the party upon whom the

request is served."  Fed. R. Civ. P. 34(a).

   After briefly addressing the question of whether Norex could discover documents held

abroad, the magistrate judge stated without explanation that "[t]he statute requires merely that the

target of the subpoena have within [its] possession, custody or control the documents sought,"

and that "there is no dispute that respondent is within the jurisdiction of this Court, and that the

respondent is in possession, custody or control of the requested documents."  *Norex*, Misc. No.

04-281 (D.D.C. March 9, 2005) (order granting Motion to Compel, denying Motion to Quash) at

5-6.  The parties dispute whether BP America is "in possession, custody or control" of the

documents Norex seeks.  Norex argues that this Court should not disturb Magistrate Judge Kay's

determination on this issue, in part because Norex claims BP America "admitted and

demonstrated 'possession, custody or control' of the requested documents located outside of the

United States . . . ."  Norex Opp. at 10.  Norex bases this assertion on the fact that BP America

stated in its objections to the subpoena that "BP America has . . . directed its employees to ensure

that the documents requested by the Subpoena are properly preserved and, on a voluntary basis,

its ultimate parent, BP p.l.c., a U.K. company, has directed employees of BP America's overseas

affiliates to do the same."  *Id*. at 10-11, Ex. B (BP Objections at 3).

   BP America takes a different view.  In BP America's reply, it points out that its Motion

for Partial Reconsideration contests only the production of documents "held outside the United

States by a foreign parent and other foreign affiliates of the subpoenaed U.S. entity."  BP

America Reply at 5; Mot. for Recons. at 1 (emphasis removed).  BP America also notes that it

has consistently denied having custody or control over the documents held outside the United

States.  *See* BP America Reply at 5 n.3.  Furthermore, BP America argues that Norex has failed

to present any support for its assertion that BP America has custody or control over the foreign

documents sought.  *Id*. at 5.

Examining the applicable caselaw, the Court finds that Norex has failed to refute BP

America's arguments that it does not have possession, custody or control over the foreign

documents.  "The burden of establishing control over the documents sought is on the party

seeking production."  7 Moore's Federal Practice § 34.14(2)(b) (2004).  "[C]ontrol is the test

with regard to the production of documents [and] is defined not only as possession, but as the

legal right to obtain the documents on demand."  *Searock v. Stripling*, 736 F.2d 650, 653 (11th

Cir. 1984); *see also Kifle v. Parks & History Ass'n*, No. 98-048, 1998 WL 1109117 (D.D.C.

October 15, 1998).  In the instant case, BP America states that the documents maintained outside

the United States are not within its possession, custody or control, but rather they are within the

control of the parent company, BP p.l.c. and foreign affiliates.  *See* Mot. for Recons. at 1-2.

BP America's position is supported by *Kestrel v. Joy Global*, discussed in Section III(B),

*supra*.  In that case, the plaintiff served a subpoena for documentary evidence on an American

parent company, seeking documents held by that company's foreign subsidiaries.  The Seventh

Circuit found that the plaintiff was not entitled to the documents because the documents were not

only outside the United States, but outside the parent company's files.  *Kestrel*, 362 F.3d at 404.

The court went on to state that "[o]ne uses [Rule] 34 to get documents from firms that possess them, not from their corporate affiliates," and that "[p]rior decisions have assumed this when managing international discovery; judges have taken it as so well established that the legal difference between the obligations of corporations and the obligations of their investors has been applied without much discussion."  *Id*. at 405 (citing *Gerling Int'l Ins. Co. v. CIR*, 839 F.2d 131 (3d Cir. 1988).  The *Kestrel* court found that § 1782(a) "neither instructs, nor permits, courts to disregard the distinction between the corporation that owns a set of documents, and a different corporation that owns stock in the first entity," in the absence of finding that the party seeking documents has demonstrated the requirements for piercing the corporate veil, showing that corporate forms have not been adhered to, or that the parent company "has broken a unitary enterprise into slivers in order to hide assets or bamboozle creditors."  *Id*.

The Third Circuit's decision in *Gerling v. Commissioner of Internal Revenue*, 839 F.2d 131 (3d Cir. 1988), to which Norex cites, *see* Norex Opp. at 9, does not counsel a different result. The Third Circuit stated that the question of control over documents superseded the question of whether the documents were located within a court's territorial jurisdiction.  *See id*. at 140.  The court explained that when the subpoenaed corporation is the parent of "the corporation possessing the records, courts have found the requisite control where a subsidiary corporation acts as a direct instrumentality of and in direct cooperation with its parent corporation, and where the properties and affairs of the two [were] . . . inextricably confused as to a particular transaction."  *Id*. (citation omitted).  In the reverse context, "[w]here the litigating corporation is the subsidiary and the parent possesses the records, control has been found to exist where the

'alter ego' doctrine warranted piercing the corporate veil," and "the subsidiary was an agent of the parent in the transaction giving rise to the suit and in litigating the suit on the parent's behalf." *Id.*

In the instant case, Norex has not suggested that piercing the corporate veil between BP America and BP p.l.c., a U.K. corporation, would be merited.  Nor does Norex suggest that BP America is attempting to perpetrate any manner of fraud, either in its adherence to corporate structure or indeed in hiding documents beyond a subpoena's likely reach.  Furthermore, in *Kestrel*, the subpoena was served on a parent company, whereas in the instant case the subpoena was served on the American subsidiary of the parent company.  If the courts are unwilling to direct a parent company to retrieve documents from a subsidiary which it owns, it is even less reasonable to find that a subsidiary is in a position to retrieve documents held by the parent company.  Norex cites little caselaw in support of its argument to the contrary.  *See* Norex Opp. at 8-11.  Distilled to its essence, Norex's argument is that BP America has the authority to retrieve the documents held abroad, as evidenced by the fact that BP p.l.c., the U.K. parent company, voluntarily preserved the potentially responsive documents held abroad.  *See* Norex Opp. at 8-11.  However, the fact that BP p.l.c. may have voluntarily preserved documents indicates nothing relevant to the Court's inquiry about the legal relationship between BP America and its parent company.  It merely indicates that BP p.l.c. chose not to presume how this Court would rule on the instant question.  The fact remains that Norex has presented the Court with no evidence suggesting that the relationship between BP America and its foreign parent merits a finding that BP America has control over documents held by its parent and the parent's foreign

subsidiaries.

**IV.   CONCLUSION**

In light of the foregoing discussion, the Court finds that it shall exercise its discretion to grant BP America's Motion for Partial Reconsideration, and deny Norex's Cross-Motion to Compel.  The facts of this case militate against ordering that the requested documents, which are held abroad by a foreign parent company, be produced by BP America, an American subsidiary. Norex's requested document production does not appear to be within the realm of discovery contemplated by § 1782, the statute governing discovery in aid of foreign proceedings. Furthermore, the Court finds that Norex, the party seeking discovery, has not demonstrated that BP America has possession, custody or control of the documents at issue.  Consequently, this Court finds that permitting Norex to discover the documents at issue would not be appropriate.

_____ /s/ _____
COLLEEN KOLLAR-KOTELLY
United States District Judge